UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARK HULBERT, SR.,          )
                            )
          Plaintiff,        )
     v.                     )
                            )
DARRYL CHEEKS and CHICAGOLAND )
FOODS MILITARY CONSORTIUM, INC., )
an Illinois corporation,    )
                            )
          Defendants.       )   Case No. 07 CV 0423
                            )
CHICAGOLAND FOODS MILITARY  )   Judge Shadur
CONSORTIUM, INC., an Illinois )
corporation,                )
                            )
          Defendant/Counter-Plaintiff, )
     v.                     )
                            )
MARK HULBERT, SR.,          )
                            )
          Plaintiff/Counter-Defendant, )
     and                    )
                            )
DIANE HULBERT,              )
                            )
          Third-Party Defendant. )
                            )

**F I L E D**

6-17-2010
JUN 1 7 2010

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## PLAINTIFF'S MOTION TO PROVE UP
## DAMAGES AND FOR FINAL JUDGMENT

Plaintiff Mark Hulbert, Sr. ("Mr. Hulbert") by and through his attorney Kevin P.

McJessy, pursuant to this Court's June 3, 2010, hereby submits this petition to prove up damages

and for entry of final judgment against Defendants Darryl Cheeks ("Mr. Cheeks") and

Chicagoland Foods Military Consortium, Inc. ("CFMC") (Mr. Cheeks and CFMC are

collectively referred to as "Defendants"). In support of his motion, Mr. Hulbert states as follows:

1.    Mr. Hulbert filed a complaint alleging that Mr. Cheeks was liable for, *inter alia*, breach of fiduciary duty, breach of contract, misappropriation, violation of 820 ILCS §115/9, false light and defamation.

2.    Mr. Hulbert has filed, along with this motion, his declaration testifying to Mr. Cheeks' wrongful conduct and the declaration of his retained opinion witness, John Shoults. *See* Declaration of Mr. Hulbert, Exhibit A; Declaration of John Shoults, Exhibit B.

3.    To summarize Mr. Hulbert's somewhat lengthy declaration, Mr. Hulbert testified that Mr. Cheeks assumed complete control of CFMC's books and records to the exclusion of Mr. Hulbert, that Mr. Cheeks refused to produce the books and records of CFMC, that Mr. Cheeks constructively terminated Mr. Hulbert, and that Mr. Cheeks used his position as president, treasurer and certified public accountant for CFMC to funnel money out of CFMC to himself, to his family, to his friends and to his other companies.

4.    In addition, Mr. Cheeks assumed control over Mr. Hulbert's retirement account and misappropriated the $125,000 in that account for his own benefit and the benefit of other companies owned by him.

5.    Finally, Mr. Cheeks made written statements which were distributed to other parties without any privilege that were defamatory per se to Mr. Hulbert because those statements imputed an inability on the part of Mr. Hulbert to perform his job responsibilities and a want of integrity as an officer and director of CFMC.

6.    John Shoults, a certified public accountant and retained opinion witness, reviewed the complete set of financial records for CFMC. Those records revealed "ongoing regular material transfers of funds from CFMC to Chicagoland Barbecue, Inc. [] without justification,"

and the use of a non-arms length transaction between CFMC and CBI as a "means to divert substantial assets from CFMC to CBI and then, in turn, to Mr. Cheeks or to his family and friends." *See* Report pp. 1-2 attached as Exhibit 1 to Decl. of John Shoults, Exhibit B. Moreover, Mr. Cheeks transferred assets to other companies owed by him, including DKL, Desmond A. Taylor & Associates, Ltd., Black Rhino Financial and Shire Group, and to his family and friends. *See* Report p. 2 attached as Exhibit 1 to Decl. of John Shoults, Exhibit B.

7.     Mr. Shoults testified that, based on his professional opinion, Mr. Hulbert suffered between $225,000 and $360,000 in damages based upon a 40% allocation to Mr. Hulbert which is consistent with Mr. Hulbert's ownership in CFMC based on his 40% ownership of CFMC. *See* Report p. 2 attached as Exhibit 1 to Decl. of John Shoults, Exhibit B. *United States v. McMillan*, 600 F.3d 434, 456-57 (5th Cir. 2010) (testimony of CPA based on his review of company's books and records and his findings regarding the booking of those assets and the effect on equity was appropriate factual testimony), *citing, United States v. Riggs*, 490 F.3d 208, 224 (2nd Cir. 2007). *Compare, Freesen, Inc. v. Boart Longyear Co.*, 2009 WL 4923598 *1-2 (Dec. 8, 2009, C.D. Ill.) (Scott, J.) (certified public accountant properly qualified to serve as opinion witness on the issue of damages); *Drebing v. Provo Group, Inc.*, 519 F.Supp.2d 811, 816-17 (N.D.Ill. 2007).

8.     Mr. Hulbert has incurred $53,730 in attorneys' fees in this matter. A detailed explanation of the attorneys' fees incurred by Mr. Hulbert is attached hereto as Exhibit C. *See* Declaration of K. McJessy ¶4, Exhibit C. The shareholder agreement provides for an award of attorneys' fees in the event he is the prevailing party in this lawsuit. *See* Declaration of Mark Hulbert, Sr. ¶8, Exhibit A.

9.    Mr. Hulbert requests that based on his own testimony, the testimony of Mr. Shoults, and the testimony of his counsel, this Court enter judgment in his favor in the amount of $278,730 which is comprised of the minimum or most conservative calculation of the damages to Mr. Hulbert based on the books and records of CFMC $225,000 plus $53,730 in attorneys' fees and costs incurred by Mr. Hulbert.

WHEREFORE, Mark Hulbert, Sr. respectfully requests that the Court enter judgment on all counts of Mark Hulbert Sr.'s second amended in his favor in the amount of $278,730.

MARK HULBERT, SR.

By:   s/ Kevin P. McJessy
          One of His attorneys

Kevin P. McJessy
MCJESSY, CHING & THOMPSON, LLC
3759 North Ravenswood, Suite 231
Chicago, Illinois 60613
(773) 880-1260
(773) 880-1265 (facsimile)
mcjessy@MCandT.com

# CERTIFICATE OF SERVICE

I, Kevin P. McJessy, an attorney, certify that I caused an unredacted copy of the foregoing **Plaintiffs' Motion to Prove Up Damages and for Final Judgment** to be served upon

Darryl Cheeks
Chicagoland Foods Military Consortium, Inc.
1480 Renaissance Dr.
Suite 410
Park Ridge, IL 60068

via U.S. Mail, postage prepaid, deposited in the United States Mail Depository located at 3759 N. Ravenswood, Chicago, Illinois, 60613 on June 15, 2010.

s/ Kevin P. McJessy
Kevin P. McJessy

# 07 CV 0423

# Exhibit A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARK HULBERT, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| DARRYL CHEEKS and CHICAGOLAND | ) | |
| FOODS MILITARY CONSORTIUM, INC., | ) | |
| an Illinois corporation, | ) | |
| | ) | |
| Defendants. | ) | Case No. 07 CV 0423 |
| | ) | |
| CHICAGOLAND FOODS MILITARY | ) | Judge Shadur |
| CONSORTIUM, INC., an Illinois | ) | |
| corporation, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| MARK HULBERT, SR., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| and | ) | |
| | ) | |
| DIANE HULBERT, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

## DECLARATION OF MARK HULBERT, SR.

I, Mark Hulbert, Sr., hereby declare under penalty of perjury pursuant to the laws of the United States, as follows:

1.     I am a resident of Dane County, Wisconsin.  I am domiciled in Wisconsin and I am a citizen of Wisconsin.

2.     I am a shareholder and officer of Chicagoland Foods Military Consortium, Inc. ("CFMC").

3.     Darryl Cheeks is a shareholder and officer of CFMC.

4. CFMC was formed in 2003 and is involved in the sale of food products to the military. CFMC is an Illinois corporation with its principal place of business located at 1480 Renaissance Drive, Park Ridge, Illinois.

5. The original owners of CFMC were Mr. Cheeks and myself. Mr. Cheeks owns 600,000 shares or 60% of CFMC and I own 400,000 shares or 40% of CFMC Class A shares. The Class A shares are the only voting shares in CFMC.

6. There is a shareholders agreement between Mr. Cheeks and myself. A copy of the shareholders agreement is attached as Exhibit A.

7. The shareholders agreement for CFMC provides in part that

The parties to this Agreement agree to act in the best interests of the Corporation and in accordance with the terms of this Agreement. Further, the parties agree to refrain from engaging in any activity or conduct that would be unlawful or in any manner compromise the integrity and reputation of the Corporation or any of the Shareholders.

8. The shareholders agreement for CFMC further provides in part:

Each of the parties to this Agreement shall be entitled to enforce its rights under this Agreement specifically, to recover damages and costs (including reasonable attorney=s *(sic)* fees) caused by any breach of any provision of this Agreement, and to exercise all other rights existing in its favor.

9. Between October 2006 and December 2006, Mr. Cheeks took complete control of CFMC's books and records, unilaterally decided to stop paying my salary and medical insurance and completely shut me out of the operation of CFMC.

10. At the time I was forced out of CFMC in the fall of 2006, I was a member of the board of directors and the secretary of CFMC.

11. I have not received any notice of a shareholders' meeting or notice of a board of directors' meeting since at least February 2006 except for once in December 2006 I learned of a notice whereby Mr. Cheeks sought to have me removed from CFMC and to have his father

2

appointed as an officer or director. To my knowledge, this notice was not proper, this meeting never occurred and no action was ever taken by the CFMC, its shareholders or directors. To my knowledge, I am still a shareholder and member of the board of directors.

12. To my knowledge, Mr. Cheeks is the president and treasurer of CFMC and he is a director of CFMC.

13. Mr. Cheeks' accounting firm has also acted as the certified public accountant of CFMC.

14. Except for the production of records in this lawsuit, Mr. Cheeks has maintained complete control of CFMC's books and records and refused to provide the books and records to me despite my requests.

15. Chicagoland Barbeque, Inc. ("CBI") is an Illinois corporation with its principal place of business located at 1480 Renaissance Drive, Park Ridge, Illinois. CBI was formed in 1996 and is involved in the distribution of barbeque meat products such as barbeque pork and beef, as well as other food products. CBI was owned in part by Mr. Cheeks and in part by myself. Mr. Cheeks had sole and complete control of CBI's books and records.

16. Mr. Cheeks also separately owns or has owned other companies including Taylor Cheeks & Associates, Black Rhino and DKL.

17. Taylor Cheeks & Associates was an Illinois accounting firm in which Mr. Cheeks was a partner.

18. Black Rhino is an Illinois accounting firm owned by Mr. Cheeks.

19. DKL was an Illinois restaurant company that owns and operates two restaurants with barbeque-theme foods. One restaurant was located in Columbus, Ohio and the other was located in central Illinois.

20.     Black Rhino, DKL, CFMC and CBI all maintained space in the offices paid for by CFMC located at 1480 Renaissance Drive, Park Ridge, Illinois, 60068.

21.     Since CFMC was formed and through November 2006, I worked full time for CFMC.

22.     Based on my observations while I worked for CFMC, Mr. Cheeks spent little time working for CFMC; instead, he devoted nearly all of his time to Taylor Cheeks & Associates, Inc., Black Rhino and DKL.

23.     The records that Mr. Cheeks turned over in this lawsuit show that he has engaged in a pattern and practice of gross mismanagement and self-dealing transactions for his personal benefit and made intentional misrepresentations to me relative to the operation and financial management of CFMC.

24.     For example, Mr. Cheeks had repeatedly represented to me that he was not taking any money out of CFMC. This was a gross, intentional misrepresentation.

25.     As another example, although Mr. Cheeks and I had agreed that the profits from CFMC would be divided on an equal basis, the report prepared by John Shoults, an expert witness and Certified Public Accountant engaged by me in this lawsuit, shows that Mr. Cheeks took far more than fifty percent (50%) of the profits out of CFMC.

26.     As another example, Mr. Cheeks also paid large amounts of money to Taylor Cheeks & Associates, Black Rhino, DKL, and CBI or paid expenses on behalf of those companies for his own benefit. These financial transactions are summarized in the report prepared by my expert certified public accountant, John Shoults.

27.     Mr. Cheeks further established an irrevocable Deferred Compensation Trust ("Trust") with Anthony James Asset Management. Consistent with our agreement that the

4

profits of CFMC would be divided on an equal basis, equal amounts were invested in the Trust for Mr. Cheeks and myself. A true and accurate copy of a Trust statement and two cancelled checks representing transfers to the Trust are attached hereto as Exhibit B.

28.     After I turned 55, I requested that the Trust be turned over to me, however, Mr. Cheeks refused to do so. In 2006, the assets in the Trust had a value in excess of $115,000. When I directed Anthony James to liquidate the Trust and turn the assets over to me in October 2006, I learned that Mr. Cheeks had already ordered that the Trust be liquidated and turned over to his control. This action was taken by Mr. Cheeks without my knowledge or consent.

29.     Furthermore, Mr. Cheeks constructively terminated me in direct breach of the parties' shareholder agreement. From October to December 2006, Mr. Cheeks took the following actions: Mr. Cheeks terminated my medical insurance, stopped paying my wages, stopped reimbursing me for company expenses, and liquidated the Trust.

30.     In addition, the corporate tax returns prepared by Mr. Cheeks' accounting firm show that in 2003, my ownership interest in CFMC was reduced from 40% to 31%. I did not consent to this change in ownership and I was not paid any compensation for this change in ownership.

31.     On or about January 15, 2007, Mr. Cheeks wrote the statement attached hereto as Exhibit C ("January Statement"). He then distributed the January Statement to the class B shareholders of CFMC who received it sometime thereafter. I became aware of this statement long after the filing of this lawsuit.

32.     On or about February 1, 2007, Mr. Cheeks wrote the statement attached as Exhibit D ("February Statement") and incorporated herein by reference.

5

33. Mr. Cheeks made the following statements in the January Statement and February

Statement:

> The past couple of years have been very strenuous (particularly 2006) between Chicagoland Barbecue, Inc., Chicagoland Foods Military Consortium (The Chicagoland Companies) and Mark Hulbert Sr. Therefore, a process has been put into place to remove Mark Hulbert Sr. as a part of The Chicagoland Companies.
> . . .
> In 2004, Mark Hulbert Sr. (Mark) approached me on a personal basis and asked me to hire his son March Jr. (Jr.) in logistics.
> . . .
> It did not take long for issues to arise (within one week) with Jr. Immediately, he began to have conflict with several people in the office. One of his conflicts led to personnel from another office asking if they should call the police. His attendance was poor and he seemingly brought a myriad of personal problems to work with him ranging from migraine headaches to allegations of alcoholism to disappearing in the middle of the day with no way to reach him. His work product was mediocre at best.
> . . .
> Although these problems were mounting, they were exacerbated by Mark allegedly having asked Jr. to act as a spy in the office and report on the deeds of other employees. This almost made the situation with Jr. untenable as he was having numerous conflicts with employees and even having shouting matches with his father in the middle of the office. . . . [Mark] was seemingly interested in little more than protecting his son, while he and his son were doing little more than alienating themselves from everyone in the company, including me.
>
> In late 2005, Mark had been pressing me, for about six months, to create a company around Jr.'s military status. Jr. is a disabled veteran. . . . . As a result, we created Veteran's Choice Foods (VCF) to act as a marketing arm of CFMC. . . .
>
> Mark's behavior became very suspect and unpredictable. On one hand, he proclaimed the virtues of CFMC and VCF was there to support it, but his behavior suggested that he was attempting to erect a new military concern off the back of CFMC. He would make statements such as, "CFMC will not make it without VCF. No one wants to do business with CFMC now that they know they can purchase from VCF." Soon, everyone in the company began to see what was occurring. At every opportunity, Mark was seemingly attempting to convert all or most of CFMC's business over to VCF. Mark was changing labeling, telling customers not to order from CFMC, shielding new customer contacts from me and others in the sales organization (IKEA), and trying to make sure that Jr. had full control of the company even in areas that I was supposed to be overseeing. He allegedly even told one of our employees, when it related to a financial matter, that "Darryl does not have the authority to make that decision" and that she would

have to clear that directive with Jr., the CEO. The writing was on the wall; Mark was apparently trying to create a power base for himself believing that his son's role as CEO would override agreements and contracts. When he discovered that he did not have the legal basis to do this and that his activities had largely been discovered, he and Jr. became very hostile and aggressive towards me and others in the company.

Unfortunately, the situation with VCF, described above, only touches on a portion of the reasons that Mark's relationship with The Chicagoland Companies had to end. . . . .

Although CFMC will be profitable from an EBITDA standpoint, we are down on sales by close to $2 million. This, in large part, is due to the fact that Mark evidently took his eye off of building and maintaining our current customer base in 2006 and attempted to create his own empire in VCF. Over the last several months, I have been documenting the need to eventually terminate Mark. Some of the steps I have taken are as follows:

    . . .

- I have e-mails and notes from our customers indicating that Mark apparently purposely diverted accounts that did not have a SDVOB component to them.
- I have letters from third parties that Mark threatened in his tirade of activities.
- I have documented evidence that Mark attempted to blackmail me.
- I have financials that support the conclusion that Mark did not perform his duties.
- I have e-mails which provide evidence supporting the allegations that Mark used his son as a company spy.

I am asking you, as my investors, to raise $50,000 for the benefit of defending this suit against Mark. As I have put in $400,000 of my own funds over the past two years, I simply can not afford to swing another $60,000 myself.
. . . .
Included in this communication is a detailed explanation of the termination of Mark Hulbert, Sr. . . . . Through a series of very sad events (explained in the document), his employment with our company had to be terminated. . . .
. . . .
Due to the termination of Mark Hulbert, Sr. . . . .

34. The January Statement and February Statement imputed to me a want of integrity in the discharge of my office or employment. The statements impugning my job performance are false. The statements assert that my work was poor, that I was using another company—

Veteran's Choice Foods LLC—to steal or "convert" business away from CFMC, that I was wrongfully changing labeling on food products and that I was "terminated" are all false.

35.     The statements were delivered to persons identified as investors in CFMC in January 2007 and February 2007. The statements were made to persons who are my friends, business associates, and potential business associates.

36.     I have personal knowledge of the matters stated in this declaration and could testify competently to them.

37.     I have reviewed the report prepared by John Shoults. I agree with his report. I believe that his report accurately states the damages I have incurred.

FURTHER AFFIANT SAYETH NOT.

*Mark H Sr.*
_____
Mark Hulbert, Sr.

# 07 CV 0423

# Exhibit A

# SHAREHOLDERS' AGREEMENT

by and among

## CHICAGOLAND FOODS MILITARY CONSORTIUM, INC.

Darryl Cheeks and Mark Hulbert

And

The Class B Shareholders

as of July 5, 2003

# SHAREHOLDERS' AGREEMENT

**THIS SHAREHOLDERS' AGREEMENT** is made and entered into as of this 5th day of July, 2003, by and among Chicagoland Foods Military Consortium, Inc., an Illinois corporation (the "Corporation"), and Darryl Cheeks and Mark Hulbert (collectively, the "Class A Shareholders") and the holders of the Class B Shares of Common Stock (collectively, the "Class B Shareholders"). The Class A Shareholders and the Class B Shareholders shall be referred to collectively as the "Shareholders".

**WHEREAS**, the Class A Shareholders are the legal and beneficial owners of all of the issued and outstanding Class A shares of common stock of the Corporation, as set forth on Schedule A attached hereto;

**WHEREAS**, the Corporation has authorized Class B shares of common stock in the amount of 1,000,000;

**WHEREAS**, the Shareholders desire to promote their mutual best interests and the interests of the Corporation and to provide for continuity and harmony in the management and policies of the Corporation by imposing certain obligations and restrictions upon themselves and the Corporation as permitted by the Illinois Business Corporation Act of 1983, as amended (the "Act");

**WHEREAS**, the Shareholders agree that the stock of the Corporation shall be voted so as to implement certain agreements with respect to their respective rights and obligations as Shareholders as permitted by the Act; and

**WHEREAS**, the Shareholders believe it to be in the best interests of the Corporation that they be restricted in their right to dispose of their shares of stock of the Corporation.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements hereinafter

1

set forth, the parties hereto agree as follows:

1. **Authorized Shares.** The authorized shares of the Corporation shall be divided into two (2) classes of shares of common stock. Class A shares of common stock shall have voting rights and consist of two million (2,000,000) shares with par value of $.001. Class B shares of common stock shall not have voting rights and consist of one million (1,000,000) shares with par value of $.001. Additional shares of common stock in the Corporation may only be authorized by a majority vote of the Class A Shareholders.

2. **Voting Attributes of Shares.** In addition to any other requirements imposed by the Act, any action which requires the vote of the Shareholders of the Corporation and any other action on which the Shareholders of the Corporation may vote, must be authorized by a majority vote (for purposes of this Agreement majority shall mean greater than fifty percent (50%) of the Class A Shareholders. The Class B Shareholders of the Corporation shall not be entitled to vote on any actions by the Corporation, pursuant to the Articles of Incorporation dated June 6, 2003.

3. **Management and Operations Provisions.** Each of the Class A Shareholders agrees to take all necessary action including, without limitation, the voting of their shares of stock of the Corporation, the execution of written consents, the calling of special meetings, the removal of directors, the filling of vacancies on the Board of Directors, the waiving of notice and the attending of meetings, so as to cause (i) the number of members of the Board of Directors to be two (2) and (ii) the Board of Directors of the Corporation at all times to include Darryl Cheeks and Mark Hulbert as long as each is a Class A Shareholder. The Board of Directors shall be elected by a majority of the Class A Shareholders.

4. **Officers.** The officers of the Corporation shall be as follows:

2

| Darryl Cheeks | President and Treasurer |
|---|---|
| Mark Hulbert | Secretary |

Changes in titles and duties of the persons named above, as well as their removal from office, shall be governed by Section 5 below except to the extent such matters are dealt with in any employment agreement by and between the Corporation and any of such persons, in which case the employment agreement shall control and supersede any inconsistent provision in this Agreement.

### 5.  Voting Requirements.

5.1 Actions by Class A Shareholders.  Except to the extent that the Act requires a greater majority, all action requiring shareholder approval or requiring approval by the Class A Shareholders acting pursuant to Sections 2 and 3 above shall be approved by the affirmative vote of the holders of a majority of the Class A shares of common stock entitled to vote thereon; provided, however, that except as otherwise required by the Act (i) no Offering Shareholder (as hereinafter defined) shall be entitled to vote on the exercise by the Corporation of its option to purchase any or all of the Offered Shares (as hereinafter defined); provided further, however, that if the vote of the Offering Shareholder should at any time in the future be required under the Act, the Offering Shareholder shall vote in favor of the Corporation's exercise of its purchase option unless the purchase by the Corporation of the Offered Shares would be illegal or unless a majority of the Class A Shareholders request that the Corporation not exercise the option.

5.2     Actions Requiring Unanimous Consent.  Certain Officer and Executive decisions as defined herein shall require the unanimous affirmative vote or consent of all of the Class A Shareholders: (i) removal of Officers; (ii) encumbrance of all or substantially all of the Corporations assets; and (iii) sale of all or substantially all of the Corporation's assets.

3

6.    **Mutual Indemnification.** In the event of a default by the Corporation under any obligation or indebtedness of the Corporation incurred by the Corporation in connection with its business of sales of food products and services to the United States military and approved by the Class A Shareholders pursuant to Section 5, which any of the Shareholders personally guarantees or for which any Shareholder becomes personally liable pursuant to the terms of such approval, and one of the Shareholders (the "Indemnified Shareholder") pays to the creditor or lender of the Corporation an amount greater than his pro rata share of such obligation or indebtedness in satisfying the obligation or indebtedness of the Corporation, then the other Shareholders shall indemnify, hold harmless, and promptly pay to the Indemnified Shareholder such sums as necessary so that each Shareholder bears no more than his respective pro rata share of any obligation or indebtedness. Each Shareholder's pro rata share of any obligation or indebtedness shall be determined by multiplying the total amount due on such obligation or indebtedness by the percentage of the total issued and outstanding shares of stock of the Corporation, which such Shareholder owns at the time of the payment.

7.    **Restriction on Transfer of Stock.** During the term of this Agreement, no Shareholder shall sell, transfer, assign, bequeath, pledge or otherwise encumber, or otherwise divest himself of ownership or control of any shares of stock of the Corporation which he now owns or which he may acquire in the future, whether voluntarily or by operation of law (the foregoing transactions being hereinafter referred to individually as a "Transfer" and collectively as "Transfers") without the prior written consent of the Class A Shareholders, except in accordance with the terms and provisions of this Agreement.

8.    **Right of First Refusal.**

4

**8.1**   Notice. If any Shareholder (the "Offering Shareholder") desires to transfer all or any portion of his shares of stock of the Corporation pursuant to a bona fide offer made to him by a third party, the Offering Shareholder shall give sixty (60) days written notice of the proposed Transfer to the Corporation and to the Class A Shareholders (the "Notice"). The Notice must set forth the name of the proposed transferee, the number of shares to be transferred (the "Offered Shares"), the price per share, and all other terms and conditions of the proposed Transfer.

**8.2**   First Option to Corporation. Upon receipt of a Notice of a proposed Transfer, the Corporation shall have the option, for a period of thirty (30) days, to purchase the Offered Shares at the price and on the terms and conditions stated in the Notice. The Corporation shall exercise its option by giving written notice within the thirty (30) day period to the Offering Shareholder.

**8.3**   Second Option to Class A Shareholders. If the Corporation does not exercise its option to purchase all of the Offered Shares, the Class A Shareholders shall have the option, for a period of thirty (30) days following the expiration or waiver of the Corporation's option, to purchase on a pro rata basis in accordance with the number of shares of stock of the Corporation owned by each such Class A Shareholder, all, but not less than all, of the Offered Shares at the price and on the terms and conditions stated in the Notice. The Class A Shareholders shall exercise such option by giving written notice to the Offering Shareholder within the thirty (30) day period following the lapse or waiver of the Corporation's option.

**8.4**   Third Option to Class B Shareholders. If the Corporation does not exercise its option to purchase all of the Offered Shares, the Class B Shareholders shall have the option, for a period of thirty (30) days following the expiration or waiver of the Corporation's option, to purchase on a pro rata basis in accordance with the number of shares of stock of the Corporation owned by each such

5

Oct 17 06 10:35a                                          p. 11

Class B Shareholder, all, but not less than all, of the Offered Shares at the price and on the terms and conditions stated in the Notice. The Class B Shareholders shall exercise such option by giving written notice to the Offering Shareholder within the thirty (30) day period following the lapse or waiver of the Corporation's option.

9.    **Transfer of Offered Shares after Lapse of Option.** If neither the Corporation nor any of the Class A Shareholders elects to purchase the Offered Shares, the Offering Shareholder shall have the right to transfer the Offered Shares to the prospective transferee named in the Notice. This Transfer may be made only at the price and in accordance with the terms and conditions stated in the Notice. Any shares of stock of the Corporation transferred by the Offering Shareholder to the prospective transferee named in the Notice shall be subject to the terms of this Agreement, and the transferee receiving such shares and any subsequent transferees shall be subject to and bound by this Agreement in the same manner and with the same effect as the Offering Shareholder would be bound had he not transferred such shares. No Transfer of Shares of Stock of the Corporation shall be effective until the transferee agrees in writing to be bound by the terms of this Agreement. If the Offering Shareholder fails to sell the Offered Shares within thirty (30) days following the expiration of the Class A Shareholders' option to purchase the Offered Shares, the Offered Shares shall again become subject to all of the restrictions of this Agreement.

10.    **Option Upon Involuntary Transfer.**

10.1    First Option to Corporation. If any of the shares of stock owned by a Shareholder are transferred by operation of law to any person other than the Corporation for any reason other than death or disability (such as, but not limited to, a Shareholder's trustee in bankruptcy or a purchaser at any creditors' or court sale, the Corporation shall have the option to purchase the stock so transferred

6

(the "Transferred Shares") within sixty (60) days of the date upon which it first obtains actual notice of the transfer.

    10.2   <u>Second Option to Class A Shareholders</u>. If the Corporation does not exercise its option to purchase all of the Transferred Shares pursuant to this Section 10, the Class A Shareholders shall have the option, for a period of thirty (30) days following the expiration of or waiver of the Corporation's option to purchase the Transferred Shares, to purchase on a pro rata basis in accordance with the number of shares of stock of the Corporation owned by each such Class A Shareholder, all, but not less than all, of the Transferred Shares.

    10.3   <u>Third Option to Class B Shareholders</u>. If the Corporation does not exercise its option to purchase all of the Transferred Shares pursuant to this Section 10, the Class B Shareholders shall have the option, for a period of thirty (30) days following the expiration of or waiver of the Corporation's option to purchase the Transferred Shares, to purchase on a pro rata basis in accordance with the number of shares of stock of the Corporation owned by each such Class B Shareholder, all, but not less than all, of the Transferred Shares.

    10.4   <u>Purchase Price</u>. The price for any Transferred Shares purchased pursuant to this Section 10 shall be determined in accordance with the provisions of Section 16.1 hereof and shall be payable in the manner provided for in Section 17 hereof.

    11.   **<u>Death or Disability of Class A Shareholders.</u>**

    11.1   <u>Transfers Upon Death or Disability</u>. On the death or permanent mental disability (not merely a physical disability) of any Class A Shareholders (the **"Deceased/Disabled Class A Holder"**), the Deceased/Disabled Class A Holder's Shares shall be transferred or purchased by the Corporation in accordance with the provisions of this Section 11.1.

7

(a)     Upon the death or permanent disability of any Class A Shareholder, the
Corporation shall be required to transfer, and the executor, administrator, guardian or other
representative of the Deceased/Disabled Class A Holder shall be required to accept all of the
Shares held by the Deceased/Disabled Class A Holder on the date of death or permanent
disability, as applicable (the "Deceased/Disabled Class A Holder's Shares"). Upon
completion of the transfer the executor, administrator, guardian, or other representative of
the Deceased/Disabled Class A Holder shall retain all voting rights afforded to the Class A
Shareholders in the Corporation.

(b)     The executor, administrator, guardian or other representative of the
Deceased/Disabled Class A Holder is not required to transfer the Deceased/Disabled Class A
Holder's Shares back to the Corporation. In the event that the executor, administrator,
guardian or other representative of the Deceased/Disabled Class A Holder determines that a
sale back to the Corporation is necessary, the Corporation may, but is not obligated to, in
order to fund the purchase under the provisions of Section 11.1(b), elect to purchase
insurance policies on the life of any or all of the Class A Shareholders. The Corporation shall
be the owner and named beneficiary on any such insurance policies and shall have the right to
exercise all rights of ownership with respect to such policies. If insurance on the life of a
Class A Shareholder is owned by and payable to the Corporation and is in force and effect on
the date of a Class A Shareholder's death, then upon receipt of the Deceased Holder's Shares
by the Corporation, the Corporation shall to the extent of such insurance proceeds pay the
estate of the Deceased Holder the Purchase Price in cash or certified check. The balance (the
excess of the Purchase Price over the insurance proceeds) of the Purchase Price, if any, shall

8

be deferred and payable pursuant Section 17.2. Such indebtedness shall be evidenced by a promissory note of the Corporation payable to the order of the Deceased Holder's estate.

    (c)    In the event a Class A Shareholder becomes permanently disabled the Corporation shall pay to the Disabled Class A Holder or his personal representative, a portion of the Purchase Price for the Disabled Class A Holder's Shares equal to 25 percent (%) thereof in cash. The balance of the Purchase Price shall be deferred and payable pursuant Section 17.2. Such indebtedness shall be evidenced by a promissory note of the Corporation payable to the order of the Disabled Class A Holder or his personal representative.

**11.2**   Voting to Exercise. A proposed transferor of Class A Shares, as a Class A Shareholder and director of the Corporation, shall refrain from voting in favor of or against the Corporation's exercise of any transfer or purchase option granted to the Corporation by this Agreement at any meeting of the Class A Shareholders or directors called for such purpose.

**11.3**   Transfers in Violation of Agreement. The Corporation shall not record the Transfer of any Shares on its records if the Transfer would be in violation of this Section 11 or would not be in compliance with this Agreement in any other respect. A Transfer in violation of this Section 11 or any other provision of this Agreement shall be void ab initio.

**12.**   **Disability or Death of Class B Shareholders.**

**12.1**   Transfers Upon Death or Disability. On the death or permanent disability of any Class B Shareholder (the "**Deceased/Disabled Class B Holder**"), the Deceased/Disabled Holder's Class B Shares shall be transferred by the Corporation in accordance with the provisions of this Section 12.1.

    (a)    Upon the death or permanent disability of any Class B Shareholder, the Corporation shall be required to transfer, and the executor, administrator, guardian or other

9

representative of the Deceased/Disabled Class B Holder shall be required to accept all of the Shares held by the Deceased/Disabled Class B Holder on the date of death or permanent disability, as applicable (the "Deceased/Disabled Class B Holder's Shares").

(b)   In order to fund the purchase under the provisions of Section 12.1(a), the Corporation may, but is not obligated to, elect to purchase insurance policies on the life of any or all of the Class B Shareholders. The Corporation shall be the owner and named beneficiary on any such insurance policies and shall have the right to exercise all rights of ownership with respect to such policies. If insurance on the life of a Shareholder is owned by and payable to the Corporation and is in force and effect on the date of a Class B Shareholder's death, then upon receipt of the Deceased Class B Holder's Shares by the Corporation, the Corporation shall to the extent of such insurance proceeds pay the estate of the Deceased Class B Holder the Purchase Price in cash or certified check. The balance (the excess of the Purchase Price over the insurance proceeds) of the Purchase Price, if any, shall be deferred and payable pursuant Section 17.2. Such indebtedness shall be evidenced by a promissory note of the Corporation payable to the order of the Deceased Holder's estate.

(c)   In the event a Shareholder becomes permanently disabled the Corporation shall pay to the Disabled Class B Holder or his personal representative, a portion of the Purchase Price for the Disabled Class B Holder's Shares equal to 5 percent (%) thereof in cash. The balance of the Purchase Price shall be deferred and payable pursuant Section 17.2. Such indebtedness shall be evidenced by a promissory note of the Corporation payable to the order of the Disabled Class B Holder or his personal representative.

12.2   Transfers in Violation of Agreement. The Corporation shall not record the Transfer of

10

any Shares on its records if the Transfer would be in violation of this Section 12 or would not be in compliance with this Agreement in any other respect. A Transfer in violation of this Section 12 or any other provision of this Agreement shall be void ab initio.

13. **Termination of Employment.**

13.1 Convert to Class B Stock. In the event the Corporation terminates for cause the employment of either Darryl Cheeks or Mark Hulbert or in the event that either Darryl Cheeks or Mark Hulbert voluntarily terminates his employment with Corporation under any circumstances (except as otherwise provided in Section 14 hereof), all shares of stock owned by Darryl Cheeks or Mark Hulbert shall be converted to Class B Common Shares unless they receive a written waiver by the majority of the Class A Shareholders.

13.2 Cause of Termination. Darryl Cheeks and Mark Hulbert may only be terminated by a majority vote of the Class A Shareholders for the following reasons: (a) conviction of a felony; (b) an act of misconduct, gross negligence or fraud, to be determined by the Board of Directors; or failure to comply with duties outlined by the Board of Directors or this Agreement.

14. **Employment Covenants and Responsibilities.**

14.1 Employment responsibilities of Darryl Cheeks and Mark Hulbert.

(a) Darryl Cheeks shall be responsible for the following: (i) financial activity, legal agreements and contracts; (ii) product pricing; and (iii) human resources and personnel issues.

(b) Mark Hulbert shall be responsible for the following: (i) marketing programs; (ii) sales initiatives; and (iii) supplier and customer relations.

14.2 Covenant not to Compete. In the event that either Darryl Cheeks or Mark Hulbert resigns or is terminated pursuant to this Agreement and continuing for three (3) years after such

11

resignation or termination (the "Restrictive Period"), both parties shall refrain from:

   (a) creating, working or consulting for any entity that competes with Chicagoland

Food Military Consortium, Inc. in the sales of food products and services to the United States

military;

   (b) accepting a job or any type of position for which they are paid with any supplier,

independent contractor or customer of the Corporation;

   (c) soliciting any customer or supplier of the Corporation; and

   (d) disclosing any confidential or trademark information of the Corporation

In addition to the above three (3) year covenant not to compete, the parties agree that upon

resignation or termination they shall assist the Corporation by providing and releasing all account

information as it relates to the customers, suppliers and financial documents of the Corporation.

Further the parties agree to assist in the transfer of all account responsibilities to the Corporation for a

period of six (6) months after the resignation or termination (the "Transition Period"). Account

responsibilities during the Transition Period shall include but are not limited to transfer of customers,

clients, suppliers, account information, transfer of files related to customers, clients, and suppliers,

confidential information, key contacts, locations, and known recipes.

   Each of the parties to this Agreement shall be entitled to enforce its rights under this

Agreement specifically, to recover damages and costs (including reasonable attorney=s fees) caused

by any breach of any provision of this Agreement, and to exercise all other rights existing in its favor.

The parties hereto agree that money damages would not be an adequate remedy for any breach of the

covenant not to compete. Corporation shall, in addition to other rights and remedies existing in its

favor, be entitled to specific performance and/or injunctive or other relief from any court of

competent jurisdiction in order to enforce, or prevent any violations of, the provisions hereof. In addition, in the event of an alleged breach or violation of the covenant not to compete by Darryl Cheeks or Mark Hulbert, the Restrictive Period shall be tolled until such breach or violation has been duly cured. The parties agree that the restrictions contained in Section 14 are reasonable.

15. **Retirement of Darryl Cheeks or Mark Hulbert.** In the event that either Darryl Cheeks or Mark Hulbert retire, each shall be entitled to retain their Class A shares of common stock together with all voting rights of the Class A Shareholders and shall not be required to sell such shares back to the Corporation or have such shares converted to Class B shares of common stock.

16. **Transfer Upon Bankruptcy.** In the event a Shareholder admits his inability to pay his debts generally as they become due, files a petition to take advantage of any insolvency act, makes an assignment for the benefit of creditors or has a petition in bankruptcy or for the appointment of a receiver filed against him (and fails to have such petition dismissed or vacated within sixty (60) days from the date thereof), then such Shareholder (the "Insolvent Shareholder") shall, within ten (10) days after the occurrence of such event, give notice of the occurrence of such event to the Corporation. The Corporation shall purchase (to the extent allowable by law) any or all of the shares of stock of the Corporation owned by the Insolvent Shareholder, and the Insolvent Shareholder shall sell such shares for the purchase price as determined under Section 17.1 hereof and in the manner provided for in Section 14 hereof.

17. **Purchase Price.**

17.1 **Book Value.** The purchase price for any shares of stock to be purchased and sold pursuant to the provisions of Sections 7 through 12 hereof shall be the book value of such shares as of the end of the month immediately preceding the occurrence of the event giving rise to the

13

purchase, as determined by the Corporation's regular accountants in accordance with generally accepted accounting principles consistently applied.

17.2 Fair Market Value. The purchase price for any shares of stock to be purchased and sold pursuant to the provisions of Sections 7 through 12 hereof shall be the Fair Market Value of such shares as of the end of the month immediately preceding the occurrence of the event giving rise to the purchase, as determined as follows:

(a) The party or parties whose shares are to be purchased ("Sellers") may reach agreement with the purchaser or purchasers thereof ("Buyers") as to the Fair Market Value of the shares (the "Agreed Fair Market Value"). Any such agreement among Sellers owning and Buyers purchasing a majority of such shares shall be binding and conclusive and shall establish the Agreed Fair Market Value for all Buyers and Sellers.

(b) If the parties cannot reach agreement as provided in Section 17.2(a) as to the Fair Market Value within thirty (30) days after the occurrence of the event giving rise to the purchase, any Seller or Buyer may request a determination of the Fair Market Value of the shares to be purchased by appraisal according to the procedure set forth in Section 17.2(c) (the "Appraised Fair Market Value"); provided, however, that only one appraisal of the Corporation's stock shall be performed if there are multiple Buyers or Sellers involved in a transaction.

(c) For purposes of Section 17.2(b), the Appraised Fair Market Value shall mean the amount equal to the price at which a willing buyer and a willing seller, neither under compulsion, would buy and sell the Corporation's stock being appraised, and shall be determined by an appraiser who shall be approved by the Buyers and Sellers; provided,

14

however, in valuing the Corporation's stock, the appraiser shall not include the net amount of any insurance proceeds payable to the Corporation pursuant to life insurance policies carried on the life of a deceased Seller, but shall include only the cash surrender value thereof immediately prior to the death of such Seller. The appraiser shall apply an appropriate discount (not to exceed 20%) if the shares represent a minority interest in the Corporation or lack marketability. If the parties cannot agree upon an appraiser as aforesaid within fifteen (15) days after the expiration of the thirty (30) day period for determining the Agreed Fair Market Value under Section 17.2(a), any Buyer or Seller may by written notice to all others elect to require that the Buyers and Sellers each select an appraiser by majority vote of Buyers and Sellers, respectively, and the two (2) appraisers so selected shall select the appraiser who shall determine the Appraised Fair Market Value for purposes of this Section 17.2. Such appraisal shall be performed as soon as practicable. The Buyers shall equally divide and bear one-half (1/2) of the cost of any appraisal performed pursuant hereto in proportion to the number of shares purchased by each, and the Sellers shall equally divide and bear the balance of the cost of such appraisal in proportion to the number of shares sold by each.

18.    **Payment of Purchase Price.**

18.1    Closing. The consummation of any purchase and sale of shares pursuant to Sections 7 through 16 shall take place within thirty (30) days following the later of the occurrence of the event, the giving of a notice regarding the occurrence of the event, or the exercise of an option to purchase, at the Corporation's place of business or at such other place as the parties to the purchase and sale may agree in writing. The purchase price for any shares of stock purchased pursuant to the provisions of Sections 7 through 16 hereof shall be paid as determined by the Corporation either (i)

one hundred percent (100%) by certified or cashier's check; or (ii) ten percent (10%) by certified or cashiers check and the balance by delivery of a promissory note payable in seven (7) consecutive equal annual installments commencing with the first anniversary of the date of sale.

18.2    Terms of Note. The unpaid principal balance of any note issued by the Corporation or by a purchasing Shareholder, as the case may be, pursuant to this Section 18 shall bear interest at a rate equal to the "prime rate" of interest charged by the Corporation's depository on the date of the purchase and sale of the shares, adjusted annually; provided, however, that the interest rate shall not be less than the "applicable federal rate", as that term is defined in Section 1274(d) of the Internal Revenue Code of 1986 or its successor provisions. The note shall provide that the Corporation or the purchasing Shareholder, as the case may be, shall have the right to prepay at any time or from time to time any or all installments due under the note without penalty or premium, but with interest accrued on the prepaid principal amount to the date of prepayment. The note also shall provide that a default in the payment of any installment of principal or interest for a period in excess of twenty (20) days or any other default under the note, at the note holder's option, shall cause all unmatured installments of principal and interest to become due and payable immediately.

19.    Insufficient Surplus. If the Corporation's surplus is insufficient to make a required payment or partial payment of the purchase price for any shares of stock to be purchased and sold hereunder then: (a) the entire available surplus shall be used to purchase part of the shares; (b) the Corporation shall promptly take reasonable lawful measures, whether by revaluing up assets, reducing capital, or otherwise, to create as much additional surplus as needed to permit the purchase of the remaining shares; and (c) when its surplus is adequate, the Corporation shall purchase the remainder of the shares at the price required by this Agreement.

16

**20.**    **Transfer of Shares.**

**20.1**    **Tender of Payment and Shares.** Upon tender of payment to a Shareholder of the purchase price for his shares of stock of the Corporation, whether payment be made in cash or in cash plus a promissory note, the selling Shareholder or the legal representative of the deceased Shareholder shall assign and deliver to the Corporation or to the purchasing Shareholder the certificate or certificates representing the shares owned by the selling Shareholder or by the deceased Shareholder, free and clear of all liens, claims and encumbrances.

**20.2**    **Failure to Transfer.** If, for any reason, a Shareholder or his personal or legal representative, or anyone acting by or through him, fails to assign and deliver the certificate or certificates evidencing the shares of stock which are to be purchased pursuant to the terms hereof, the Corporation is authorized to make, execute and deliver any and all assignments, transfers, and other documents necessary or expedient for the transfer of the shares on its books and to cause the shares to be transferred and to cause new certificates to be issued therefore upon the cancellation of the certificates representing the shares to be sold. Thereafter, the rights of such Shareholder shall be limited to the receipt and collection of the purchase price for the shares of stock of the Corporation in accordance with the terms hereof.

**21.**    **Endorsement on Share Certificates.** Upon the execution of this Agreement, the certificates of shares representing the shares of stock of the Corporation owned by the Shareholders shall be surrendered to the Corporation and endorsed as follows:

     This certificate is transferable only upon compliance with the provisions of the Shareholders' Agreement by and among the Corporation and [Shareholder Name]], affecting the shares represented hereby, a copy of which is on file in the office of the

17

Secretary of the Corporation. After endorsement, the certificates shall be returned to the Shareholder, who shall be entitled to exercise all rights of ownership of such shares, subject to the terms of this Agreement. All shares of stock of the Corporation hereafter issued to the Shareholders shall bear the same endorsement.

22. **Specific Performance.** The parties to this Agreement hereby declare that it is impossible to measure in money the damages, which will accrue to a party by reason of a failure of another party to perform any of the obligations under this Agreement. Therefore, in the event of any controversy concerning the rights or obligations to purchase or sell any of the shares of the Shareholders, the right or obligation shall be enforceable in a court of equity by a decree of specific performance. Such remedy shall be cumulative and not exclusive, and it shall be in addition to any other remedy available to the Shareholders, their personal representatives, or the Corporation.

23. **Term.** This Agreement shall terminate, and the certificates representing the shares of stock subject to this Agreement shall be released from the terms of this Agreement, upon the occurrence of any of the following events:

    (a)    cessation of the Corporation's business;

    (b)    bankruptcy, receivership, or dissolution of the Corporation;

    (c)    the purchase by the Corporation of all of the shares of all of the Shareholders and the payment in full of the purchase price therefore; or

    (d)    the voluntary written agreement of the Corporation and all of the Class A Shareholders who are then bound by the terms of this Agreement.

Upon the termination of this Agreement, each Shareholder shall surrender to the Corporation the certificates representing his shares of stock of the Corporation and the Corporation shall issue to him

18

new certificates for an equal number of shares without the endorsement set forth in Section 21 hereof.

### 24. Conduct of Class A Shareholders.

**24.1** **Integrity and Reputation of Corporation.** The parties to this Agreement agree to act in the best interests of the Corporation and in accordance with the terms of this Agreement. Further, the parties agree to refrain from engaging in any activity or conduct that would be unlawful or in any manner compromise the integrity and reputation of the Corporation or any of the Shareholders. Any breach of this Section 24.1 shall be grounds for removal of a Shareholder upon the unanimous vote or written consent of the Class A Shareholders.

**24.2** **First Option to Purchase Shares.** In the event a Shareholder violates Section 24.1 above and/or is convicted of a crime by a lawful court of the United States (the "Convicted Shareholder"), the Corporation and the Class A Shareholders can purchase his shares of stock in accordance with the provisions of this Section 24. The Corporation shall have the first option to purchase the shares of stock owned by the Convicted Shareholder, within sixty (60) days of the date of the violation or conviction. The Corporation shall exercise its option by giving written notice to the Convicted Shareholder or his legal representative within the sixty (60) day period.

**24.3** **Second Option to Purchase Shares.** If the Corporation does not exercise its option to purchase the shares of stock owned by the Convicted Shareholder, the Class A Shareholders shall have the option, for a period of thirty (30) days following the expiration of or waiver of the Corporation's option to purchase, on a pro rata basis in accordance with the number of shares of stock of the Corporation owned by each such Class A Shareholder, all, but not less than all, of the shares of stock owned by the Convicted Shareholder, within the thirty (30) day period following the lapse or waiver of the Corporation's option.

19

24.4   Purchase Price.  The price for any shares purchased pursuant to this Section 24 shall be determined in accordance with the provisions of Section 17.1 hereof and shall be payable in the manner provided for in Section 18 hereof. The parties to this Agreement agree to act in the best interests of the Corporation and in accordance with the terms of this Agreement. Further, the parties agree to refrain from engaging in any activity or conduct that would be unlawful or in any manner compromise the integrity and reputation of the Corporation or any of the Shareholders.

25.    Benefit.  This Agreement shall be binding upon the parties, their heirs, legal representatives, successors, and assigns.

26.    Governing Law.  This Agreement shall be construed in accordance with the internal laws of, and not the law of conflicts of, the State of Illinois.

27.    Modification.  No change or modification of this Agreement shall be valid unless it is in writing, is signed by all of the Class A Shareholders and the Corporation.

28.    Entire Agreement.    This Agreement supersedes all prior agreements and understandings between the parties regarding the subject matter hereof.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date and year first written above.


_Darryl Cheeks_
Darryl Cheeks, Class A Member


_Mark Hulbert_
Mark Hulbert, Class A Member

## Schedule A

<u>Class A Shareholder</u>                                      <u>Number of Shares Owned</u>

Darryl Cheeks                                                            600,000

Mark Hulbert                                                             400,000

# 07 CV 0423

# Exhibit B

# James Asset Advisory, L.L.C.

Chicago Lama Foods, Inc.
1480 Renaissance
Suite 305
Parkridge, IL 6008-1154
ATTN.: Darryl L. Cheeks
Acct. # ──── : Non Qualified Deferred Compensation Trust

## Consolidated Account Statement
### 05/06/06

| Security | Current Value | 2006 Return | Realized Gain/Loss | Unrealized Gain/Loss | Life of Security Return % | Buy Date | Sell Date |
|---|---|---|---|---|---|---|---|
| - FBO D. Cheeks | $149,478 | 2.8% | N/A | 25,005 | 18.8% | 01.05.04 | --- |
| - FBO M. Halbert | 119,858 | 2.9% | N/A | 15,958 | 13.9% | 01/04/04 | --- |
| **Totals** | **$269,336** | | | | | | |

## Asset Allocation Folio Major Holdings

Exxon Mobil(XOM) International Business Machines(IBM) 3M Corp.(MMM) Nike Corp.(NKE) Cummins 7% 6/15/11
American Airlines(AMR) Citigroup, Inc.(C) Ford Motor Corp.(F) Verizon MD Inc. 5.125% 6.15.33  BASF AG(BF)
Exelon Corp.(EXC) International Lease Financial MTN BE 3.1% 1/23/08 Bayerische Landesbank 3% 4/15/09
European Investment Bank 3.375% 6/12/13 General Electric Capital Corp., 6.5% 12/10/07  Aust. & NZ Banking
Group .875% 12.22.08 Yahoo!(HOO) Schnitzer Steel In.(SCHN) Cano Petroleum Inc.(CPX) Boeing Corp. 4.75%
08.25.08 Starwood Hotels & Resorts Worldwide Inc.(HOT) XM Satellite Radio(XMSR) Sirius Satellite Radio(SIRI)
US Treasury Bills
(Asset Allocation percentages adjusted based on risk profile model)

**Risk Profile Model - Moderately-Aggressive**

5% Large Cap Growth Stocks
2% Large Cap Value Stocks
5% Domestic Corporate Bonds
10% Small Cap Growth Stocks
10% Small Cap Value Stocks
5% Inter-Term Govt. Bonds
5% Long Term Govt. Bonds
5% Mortgage Backed Bonds
5% High Yield Bonds
5% US Treasury Bills
10% Other Assets

**Risk Profile Benchmarks**

Gross Return 9%
Standard Deviation 7.91%
Sharpe Ratio 6.55
Portfolio Yield 2.85%

**Current Portfolio Alpha Adjustments**

10% International Bonds
25% Large Cap Growth Stocks
20% Small Cap Growth Stocks

Pao 1 of 1

jamesasset@msn.com    877-JAM-ASSET (toll free)    928.395.6803 fax

# James Asset Advisory, LLC.

**2006 YTD Contributions**
NONE

**2006 Transactions**
03/13/06 - Folio dividend payment $1,439 - $1.77 per share on 8,472 shares - reinvested

**Facts and Figures**
*Year to date ending figures for the major indices -*

Dow Jones Industrial Average    11,307.14 plus 2.66%
NASDAQ Composite - 2,163.87 minus 4.93%
S & P 500 Index - 1,363.85 plus 1.29%
Russell 2000 Index - 717.96 plus 5.66%
Wilshire 5000 Market Index - 12,755.47 plus 1.90%
10 Year Treasury Note - 5.31% YTD minus 3.18
30 Year Treasury Bond  5.03% YTD minus 2.22%

Page 3 of 3

**CHICAGOLAND FOODS MILITARY**
**CONSORTIUM, LLC.**
9049 HEATHWOOD CIRCLE
NILES, IL. 60714

PRIVATEBANK AND TRUST COMPANY
CHICAGO, IL 60602
2-648/710

50403

12/26/2003

Pay to the
Order of    James Asset Advisory, LLC.                                    $ **100,000.00

One Hundred Thousand and 00/100*****************************************************************************Dollars 🔒 📷

James Asset Advisory, LLC.

memo    Non-Qualified Deferred Compensation Trust Contribution for
MARKHULBERT                                                    *Darryl Cheeks*                    MP

---

**CHICAGOLAND FOODS MILITARY**
**CONSORTIUM, LLC.**
9049 HEATHWOOD CIRCLE
NILES, IL. 60714

PRIVATEBANK AND TRUST COMPANY
CHICAGO, IL 60602
2-648/710

50402

12/26/2003

Pay to the
Order of    James Asset Advisory, LLC.                                    $ **100,000.00

One Hundred Thousand and 00/100*****************************************************************************Dollars 🔒 📷

James Asset Advisory, LLC.

memo    Non-Qualified Deferred Compensation Trust Contribution for D
DARRYL CHEEKS                                                    *Darryl Cheeks*                    MP

# 07 CV 0423

# Exhibit C



**January 15, 2007**

RE: Termination of Mark Hulbert Sr.

**Dear Chicagoland Investor:**

It is with great regret that I send this communication. The past couple of years have been very strenuous (particularly 2006) between Chicagoland Barbecue, Inc., Chicagoland Foods Military Consortium (The Chicagoland Companies) and Mark Hulbert Sr. Therefore, a process has been put into place to remove Mark Hulbert Sr. as a part of The Chicagoland Companies.

*A Little History:*

In 2004, Mark Hulbert Sr. (Mark) approached me on a personal basis and asked me to hire his son Mark Jr. (Jr.) in logistics. Mark was fully aware that we had not budgeted an FTE position for logistics but explained to me that his son was in a great deal of personal trouble and Mark needed him close as he considered it to be a life and death situation. Although we did not have the position budgeted, I agreed because of my friendship and partnership with Mark.

It did not take long for issues to arise (within one week) with Jr. Immediately, he began to have conflict with several people in the office. One of his conflicts led to personnel from another office asking if they should call the police. His attendance was poor and he seemingly brought a myriad of personal problems to work with him ranging from migraine headaches to allegations of alcoholism to disappearing in the middle of the day with no way to reach him. His work product was mediocre at best. There were several things he did very well and several things he completely dropped the ball on.

Although these problems were mounting, they were exacerbated by Mark allegedly having asked Jr. to act as a spy in the office and report on the deeds of other employees. This almost made the situation with Jr. untenable as he was having numerous conflicts with employees and even having shouting matches with his father in the middle of the office. As you might imagine, this began to cause a tremendous strain on my relationship with Mark as he was seemingly interested in little more than protecting his son, while he and his son were doing little more than alienating themselves from everyone in the company, including me.

CORPORATE OFFICE
1480 Renaissance Dr., Ste. 410, Park Ridge, IL 68068
847.297.4642 Office    847.297.5378 Fax
www.chicagolandfoods.com

Now it should be noted that even with all of these situations occurring, I did the Huibert's one more favor. In 2005, I was interviewing for a new receptionist and about to make an offer when Jr. told me that his fiancée (Sarah) was looking for a job. I held up the process and interviewed Sarah. Sarah did not have very much experience but was very personable and Jr.'s fiancée. As a result, I still hired the person that I was going to hire for the receptionist's position and put her into a different role. Additionally, I hired Sarah as our receptionist to give her a chance to better herself. That was not all. I put my own money into the company to pay for Sarah's salary as we had not budgeted for two positions.

In late 2005, Mark had been pressing me, for about six months, to create a company around Jr.'s military status. Jr. is a disabled veteran. President Bush signed into law a new status for set asides called "Service Disabled Veteran Owned Business (SDVOB)." Mark sold me on the premise that Chicagoland Foods Military Consortium (CFMC) would be well served if we could create a military company that could garner business for this special set aside. As a result, we created Veteran's Choice Foods (VCF) to act as a marketing arm of CFMC. VCF is owned: 52% Jr., 35% me and 12% Mark. We formed the company in February '06. My role was to head all finances, Mark to head marketing and sales and Jr. to set the vision and deal with the government. One good thing, in retrospect, is that it took Jr. out of the office and away from The Chicagoland Companies. I personally funded VCF's initial start up.

Well, it did not take long for us to begin experiencing problems here too. Although I provided VCF with all of its funding, banking relationships and a very important initial contact, Mark began acting as if I was ancillary to the company. Anticipating this behavior, I had VCF and CFMC sign a teaming agreement which laid out VCF's purpose and role as it related to CFMC. This agreement (which I provided several of you at our last meeting) restricted the scope of VCF to only that of supporting CFMC as that is what we had agreed. Additionally, we drafted a members' agreement (between the three owners) which further restricted VCF and all the owners as to how the company was to be run and controlled. I made sure that I had exclusive control over all finances and that I could not be removed as a director as I funded the company and gave it its initial start.

Mark's behavior became very suspect and unpredictable. On one hand, he proclaimed the virtues of CFMC and that VCF was there to support it, but his behavior suggested that he was attempting to erect a new military concern off the back of CFMC. He would make statements such as, "CFMC will not make it without VCF. No one wants to do business with CFMC now that they know they can purchase from VCF." Soon, everyone in the company began to see what was occurring. At every opportunity, Mark was seemingly attempting to convert all or most of CFMC's business over to VCF. Mark was changing labeling, telling customers not to order from CFMC, shielding new customer contacts from me and others in the sales organization (IKEA), and trying to make sure that Jr. had full control of the company even in areas that I was supposed to be overseeing. He



allegedly even told one of our employees, when it related to a financial matter, that "Darryl does not have the authority to make that decision" and that she would have to clear that directive with Jr., the CEO. The writing was on the wall; Mark was apparently trying to create a power base for himself believing that his son's role as CEO would override agreements and contracts. When he discovered that he did not have the legal basis to do this and that his activities had largely been discovered, he and Jr. became very hostile and aggressive towards me and others in the company.

Unfortunately, the situation with VCF, described above, only touches on a portion of the reasons that Mark's relationship with The Chicagoland Companies had to end. Jr.'s out of control behavior and the situation with VCF was only the beginning of the demise of my relationship with Mark. Both Mark and I became very aware that our relationship was rapidly deteriorating. We had several conversations about how we could part ways and change the structure of our companies. We even got to a point where I agreed to take over Mark's stock and in return, I would assume all of his debt for The Chicagoland Companies. This failed miserably because I put in several stipulations, in the talking points letter, which required Mark to still work for the company under some very tight parameters. This infuriated Mark as he believed that I had told him that I would simply take on his debt of over $180,000 for stock that has no marketable value. He wanted to be able to walk away, after having hurt CFMC tremendously, and not have any responsibility for helping it to recover. I had never agreed to that. Instead of working the situation out with me, he decided to get an attorney involved for the purpose of seeing whether he could find something that I had done inappropriately with the companies and then sue me. Well, that is what he is attempting to do.

### *Where Things Stand:*

Although CFMC will be profitable from an EBITDA standpoint, we are down on sales by close to $2 million. This, in large part, is due to the fact that Mark evidently took his eye off of building and maintaining our current customer base in 2006 and attempted to create his own empire in VCF. Over the last several months, I have been documenting the need to eventually terminate Mark. Some of the steps I have taken are as follows:

- I have affidavits from every employee and some past employees discussing Mark's behavior, lack of organization, acts of alleged misconduct and lack of professionalism within The Chicagoland Companies.
- I have e-mails and notes from our customers indicating that Mark apparently purposely diverted accounts that did not have a SDVOB component to them.
- I have letters from third parties that Mark threatened in his tirade of activities.
- I have documented evidence that Mark attempted to blackmail me.



- I have financials that support the conclusion that Mark did not perform his duties.
- I have e-mails which provide evidence supporting the allegation that Mark used his son as a company spy.
- I have correspondence between Mark and me as well as financial records that strongly suggest Mark has been untruthful with his attorneys regarding allegations that he has levied against me and the company.

Mark's back is against the wall, and he is behaving as such. He is desperate and is working with an attorney to sue me and the company. Over the past several months, he and his attorneys have made so many allegations and threats that I can not even mention them all. They have included everything from turning the companies over to receivership to suing me and the company for over $450,000 for acts of misconduct (which is ludicrous).

Our Chicagoland Attorney (Russel Winick) has informed me that in order to defend this suit and thus effectively remove Mark from the companies that it will probably cost upwards of $60,000. In addition to making you aware of the situation with Mark, I need your help. Mark's behavior has put a tremendous financial and time strain on me and the companies. While we have a profitable outlook for 2007, our cash flow has been greatly hampered due to this fight that has taken needed building time away from our organization. While a settlement with Mark has been attempted, it seems unlikely due to the magnitude of his completely unjustified demands. I nor Chicagoland have done anything to deserve this. Mark has demonstrated a disdain for me, our employees and you, our investors. Mark has even gone as far as to communicate that he was not in favor or aware of having you as investors although he made presentations to you and signed your stock certificates. It is maddening!

*What I Need From You:*

I am saddened and embarrassed that I even need to have this communication with you. Because of the magnitude of defending Mark's threatened and anticipated lawsuit, The Chicagoland Companies need some help. I have taken our reserve cash ($200,000) and earmarked it for recovery and future growth. I have also instituted several cost cutting measures to make sure that The Chicagoland Companies have life. Some of these cuts include:

- Reducing my salary to $20,000 per year (It was previously $45,000)
- Reducing salaries for every employee of the companies
- Restructuring our lines of credit to reduce our monthly payments
- Streamlining our travel
- Only sending samples to mission critical accounts
- Putting promotional programs on a strict ROI basis
- Tying broker payments to increased service levels



These are just to name a few. I am asking you, as my investors, to raise $50,000 for the benefit of defending this suit against Mark. As I have put in over $400,000 of my own funds over the past years, I simply can not afford to swing another $60,000 myself. I have committed to putting in $10,000 immediately. It would be great if you would make an additional investment in The Chicagoland Companies, but if you are adverse to this, I would be willing to take it in the form of a loan payable back to you over the next two years. It is my hope that some of you would be willing to invest or lend the company at least $5,000 or more for this cause. If you would rather invest money towards a settlement with Mark, rather than a defense of a lawsuit, our attorney estimates that approximately $100,000.00 would be necessary, although some portion of that might be payable over a year or two.

Please call me to discuss this matter as soon as possible. Thank you.

Sincerely,

Darryl L. Cheeks, President & CEO
The Chicagoland Companies



# 07 CV 0423

# Exhibit D



February 1, 2007

### RE: Post Holiday Meeting: The Chicagoland Companies

Dear Valued Investor,

As you are aware, The Chicagoland Companies (TCC) met with our investors on Saturday, January 27, 2007 to say thank you again for your wonderful support of our companies in 2006. I am sorry that you were not there. We had a great time with wonderful food and fellowship. We took a brief moment (about 25 minutes) to give an update on the progress of both companies. As a result, I wanted to provide those of you who were not there with a recap of my presentation.

### *Review of 2006*

Although we have not closed the books for 2006, our sales numbers are coming in around $4M on the year. This is down by close to $2M from 2005 due to the loss of a very major product from the UGR-A program and a problem that we encountered with Mark Hulbert Sr. (*See separate attachment*). The product loss was not due to poor performance but due to the fact that every product in the UGR-A program has a fixed life span which lasts about two years. Our product (Country Style Ribs) was on the menu for over three years. So, we were very blessed. We will be profitable from an EBITDA standpoint but may not be from a net income standpoint (once we have accounted for depreciation, amortization, taxes and interest). If there is a distribution, it will be very small this year. This, however, will not affect those of you who have signed as guarantors for the $225,000 CFMC loan.

As it relates to term debt, TCC has total debt outstanding of around $525,000. This is down from close to $1M from 2005. We are making progress and have no intentions of utilizing any additional senior debt instruments.

I also introduced new faces to the company:

- Crystal Houston ~ Controller
- Nate Jenkins ~ Project Manager
- Tonisha Brown ~ Marketing & Sales Coordinator

CORPORATE OFFICE
1480 Renaissance Dr., Ste. 410, Park Ridge, IL 60068
847.297.4642 Office        847.297.5378 Fax
www.chicagolandfoods.com

Included in this communication is a detailed explanation of the termination of Mark Hulbert Sr. As many of you are aware, Mark served as my partner, Executive V.P. and Chief Marketing & Sales Officer for TCC. Through a series of very sad events (explained in the document), his employment with our company had to be terminated. As a result, Mark has chosen to file a frivolous suit against me personally and CFMC. He is not only attempting to get money, but he is also attempting to dissolve the company which would jeopardize your investment. I and the company plan to rigorously defend this suit and feel very positive about a good outcome. I do however need your help, and have outlined it in the memo.

### *Outlook for 2007*

Due to the termination of Mark Hulbert Sr., we have put a new leadership model in place that has really begun to uncover some wonderful opportunities. Ron Hemmelgarn, Director of Operations, will be promoted to V.P. of Sales & Marketing. Michael Dice, Territory Sales Manager, will be promoted to Director of Sales. Tonisha Brown, Marketing Coordinator, will be promoted to Director of Marketing.

Although we slumped a great deal in the last five months of 2006, 2007 looks very promising for TCC. We have regained some ground in the UGR-A program and are about to submit several products for inclusion on their Table II Menu Guide. Additionally, a new Assembler (Sopako) for the program is being approved and they desire to partner with CFMC. Also, in 2006, we began pursuing a new direction where we are now taking advantage of our MBE (Minority Business Entity) status. We are currently presenting to several organizations who are interested in developing a relationship with TCC.

### *Other Investor Issues*

Many of you always want to know when you will be receiving your K-1's. We will do our best to have those to you by March 15, 2007. During the 2007 year, I would like to hold two more meetings as I want to enhance the communication between management and the investors as well as keep you apprised of our situation with Mark Hulbert Sr. I will look forward to speaking with you very soon.

God Bless,

Darryl Cheeks



07 CV 0423

# Exhibit B

# CHICAGOLAND BARBEQUE INC
## PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Sort | Payee | Description | Amount | Total |
|---|---|---|---|---|---|---|
| 07/31/2003 | | INS | Ohio National Life | Payment for Policy #: ▮▮▮ (Jan) | (56.05) | |
| 08/18/2003 | | INS | Ohio National Life | Payment for Policy #: ▮▮▮ (Jan) | (188.58) | |
| 08/31/2003 | | INS | Ohio National Life | Payment for Policy #: ▮▮▮ (Jan) | (56.05) | |
| 09/30/2003 | | INS | Ohio National Life | Payment for Policy #: ▮▮▮ (Jan) | (56.05) | |
| 10/16/2003 | | INS | Ohio National Life | Payment for Policy #: ▮▮▮ (Jan) | (188.58) | |
| 10/31/2003 | | INS | Ohio National Life | | (56.05) | |
| 11/18/2003 | | INS | Ohio National Life | Payment for Policy #: ▮▮▮ (Jan) | (188.58) | |
| 11/30/2003 | | INS | Ohio National Life | | (56.05) | |
| 12/17/2003 | | INS | Ohio National Life | Mark & Darryl (Life Ins.) | (188.58) | |
| 12/31/2003 | | INS | Ohio National Life | Payment for Policy #: ▮▮▮ (Jan) | (56.05) | (2,588.19) |
| 02/03/2003 | 10892 | M | | Inv.#: 13193 | 3,124.71 | 3,124.71 |
| 04/18/2003 | 10887 | P | Russel G. Winick & Associates, P.C. | Inv.#'s: 14024, 13836, 13539, 13413, 13359, 13305,13244 & (1319: | (400.00) | |
| 11/21/2003 | 11106 | P | Russel G. Winick & Associates, P.C. | | (250.00) | |
| 12/12/2003 | | P | Russel G. Winick & Associates, P.C. | VOID: Inv.#: 13193 (Ck was returned, they say we owe $0) | - | (650.00) |
| 01/20/2003 | 042871 | R | Sutherlands Service Inc. | Inv.#: 73836 | 3,350.00 | |
| 01/22/2003 | 10784 | R | Dickerson Foods, Inc. | Inv.#: 1206 | (331.63) | |
| 01/22/2003 | 10772 | R | Shamrock Foods Company | Inv.#:CB093036 | (45.00) | |
| 01/23/2003 | 02987767 | R | US Food Service-Detroit | Inv.#: 73839 | 5,748.10 | |
| 01/27/2003 | 38925 | R | Service Foods, Inc. | Inv.#: 73843 | 1,198.00 | |
| 01/31/2003 | 21678 | R | Endeavor | ▮▮▮ | 520.77 | |
| 01/31/2003 | 37804 | R | Lipari Distributors | Inv.#: 73840 | 5,760.99 | |
| 02/03/2003 | 1009588 | R | US Food Service-Columbia, MD | Inv.#: 73815 | 4,160.00 | |
| 02/10/2003 | | R | AmeriQual Packaging | Entry to reimburse CPMC | 4,160.00 | |
| 02/10/2003 | 38275 | R | Service Foods, Inc. | ▮▮▮ | 1,528.23 | |
| 02/10/2003 | 39128 | R | | ▮▮▮ | 1,797.00 | |
| 02/10/2003 | 2133826 | R | US Food Service-Glen Dale Hgts | Entry to reimburse CPMC | 2,960.59 | |
| 02/19/2003 | 38873 | R | Lahatt Food Service | Inv.#: 73851 | 4,160.00 | |
| 02/19/2003 | 2142333 | R | Lipari Distributors | Inv.#:CB09S435 | 3,914.11 | |
| 03/03/2003 | 40841 | R | US Food Service-Glen Dale Hgts | Inv.#: 73853 | 3,006.90 | |
| 03/05/2003 | 40492 | R | Shamrock Foods Company | VOID: Product out of code | (28.50) | |
| 03/17/2003 | 10845 | R | Lipari Distributors | Product out of date | 5,914.88 | |
| 03/19/2003 | 10846 | R | Lankford-Sysoo Food Services, LLC | ▮▮▮ | (1,200.00) | |
| 03/19/2003 | 2151658 | R | US Food Service-Glen Dale Hgts | Inv.#: 73855 | 5,790.00 | |
| 03/22/2003 | 03042665 | R | US Food Service-Detroit | Inv.#: 73860 | 4,530.03 | |
| 03/24/2003 | 519371 | R | Sysco-Atlanta | Inv.#: 73856 | 4,092.00 | |
| 04/07/2003 | | R | | ▮▮▮ | ▮▮▮ | |
| 04/11/2003 | | R | | ▮▮▮ | ▮▮▮ | |
| 04/14/2003 | 044827 | R | Sutherlands Service Inc. | Inv.#: 2803.5 | 3,500.00 | |
| 04/14/2003 | 048442 | R | L&L Foods Inc. | Inv.#: 73863 | 2,427.65 | |
| 04/14/2003 | 42300 | R | Lipari Distributors | Inv.#: 73866 | 3,170.31 | |
| 04/21/2003 | 42707 | R | Lipari Distributors | Inv.#: 73964 | 1,954.20 | |
| 04/21/2003 | 03067883 | R | US Food Service-Detroit | Inv.#: 73868 | 2,995.00 | |
| 04/22/2003 | 22523 | R | Endeavor | Inv.#: 73869 | 485.27 | |
| 05/05/2003 | 2170453 | R | US Food Service-Glen Dale Hgts | Inv.#: 73867 | 6,647.94 | |
| 05/07/2003 | 43661 | R | Lipari Distributors | Inv.#: 73874 | 3,455.83 | |
| 05/27/2003 | 03102867 | R | US Food Service-Detroit | ▮▮▮ | 5,746.00 | |
| 06/03/2003 | 45470 | R | Lipari Distributors | ▮▮▮ | 4,102.92 | |
| 06/03/2003 | 45369 | R | Lipari Distributors | ▮▮▮ | 1,663.17 | |
| 06/03/2003 | 046197 | R | Sutherlands Service Inc. | ▮▮▮ | 3,491.00 | |
| 06/10/2003 | 22859 | R | Endeavor | ▮▮▮ | 503.02 | |
| 06/10/2003 | 2183774 | R | US Food Service-Glen Dale Hgts | Inv.#: 73878 (April Samples Deducted 295.18) | 2,939.42 | |

EXHIBIT I

# CHICAGOLAND BARBEQUE INC
## PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Sort | Payee | Description | Amount | Total |
|---|---|---|---|---|---|---|
| 06/16/2003 | 46497 | R | Lipari Distributors | Inv.#:73875 | 4,701.30 | |
| 06/23/2003 | 46971 | R | Lipari Distributors | Inv.#:73877 | 9,682.90 | |
| 06/23/2003 | 526503 | R | Sysco-Atlanta | Inv.#:73879 | 4,752.00 | |
| 06/30/2003 | 2188386 | R | US Food Service-Glen Dale Hgts | Inv.#:73884 | 6,802.20 | |
| 07/01/2003 | 47411 | R | Lipari Distributors | Inv.#:4600 | 2,636.00 | |
| 07/11/2003 | 527908 | R | Sysco-Atlanta | ▇▇▇▇▇ | 4,708.00 | |
| 07/14/2003 | 23077 | R | Endeavor | | 425.17 | |
| 07/14/2003 | 41299 | R | Service Foods, Inc. | | 3,294.50 | |
| 07/17/2003 | 046955 | R | Sutherlands Service Inc. | | 5,250.00 | |
| 07/21/2003 | 48820 | R | Lipari Distributors | Inv.#: 73889 & 73890 | 5,497.51 | |
| 07/23/2003 | 10975 | R | Lankford-Sysco Food Srvs, LLC. | Inv.#: 301022071 | (25.50) | |
| 07/24/2003 | 529036 | R | Sysco-Atlanta | | 4,708.00 | |
| 07/30/2003 | 23122 | R | Endeavor | | 75.00 | |
| 08/04/2003 | 49399 | R | Lipari Distributors | | 4,976.76 | |
| 08/04/2003 | 0317106 | R | US Food Service-Detroit | | 5,900.51 | |
| 08/06/2003 | 1163446 | R | US Food Service-Glen Dale Hgts | | 4,530.59 | |
| 08/11/2003 | 6163 | R | Grace Ronanelli | | 22.50 | |
| 08/11/2003 | 2402 | R | Mariana Martinez | | 36.00 | |
| 08/25/2003 | 50924 | R | Lipari Distributors | | 1,797.00 | |
| 09/05/2003 | 51568 | R | Lipari Distributors | | 5,453.91 | |
| 09/16/2003 | 031116 | R | Sutherlands Service Inc. | | 1,750.00 | |
| 09/16/2003 | 1200607 | R | US Food Service-Glen Dale Hgts | (Short Paid - I faxed/old A/P LMOVM) | 2,624.40 | |
| 09/16/2003 | 1209973 | R | US Food Service-Glen Dale Hgts | | 3,408.94 | |
| 09/24/2003 | 031504 | R | Sutherlands Service Inc. | | 3,500.00 | |
| 10/02/2003 | 1221488 | R | US Food Service-Glen Dale Hgts | | 2,734.60 | |
| 10/03/2003 | 11026 | R | Spartan Stores | Accrual Billing for July | (66.00) | |
| 10/03/2003 | 11027 | R | Spartan Stores | Accrual Billing 6/15/03-7/12/03 | (61.50) | |
| 10/06/2003 | 03230180 | R | US Food Service-Detroit | ▇▇ & ▇▇▇▇ | 2,883.51 | |
| 10/08/2003 | | R | | ▇▇▇▇ | 8,000.00 | |
| 10/10/2003 | 1236083 | R | US Food Service-Glen Dale Hgts | | 5,925.00 | |
| 10/15/2003 | 049655 | R | L&L Foods Inc. | | 2,356.17 | |
| 10/15/2003 | 5997.57 | R | Lipari Distributors | | 5,997.57 | |
| 10/15/2003 | 11039 | R | Spartan Stores | Accrual Billing | (57.00) | |
| 10/15/2003 | 11043 | R | Spartan Stores | Inv.#: 460 | (76.50) | |
| 10/15/2003 | 536466 | R | Sysco-Atlanta | Inv.#: 73913 | 1,957.50 | |
| 10/31/2003 | 11062 | R | Spartan Stores | Inv.#: SR | (342.00) | |
| 11/11/2003 | 55989 | R | Lipari Distributors | 1st Pmt. to Reimburse for Ck #: ▇▇▇▇ | 4,871.11 | |
| 11/16/2003 | 11070 | R | Nash Finch Company- | 1st Pmt. to Reimburse for Ck #: ▇▇▇▇ | (250.00) | |
| 11/21/2003 | 11085 | R | Nash Finch Company- | 1st Pmt. to Reimburse for Ck #: ▇▇▇▇ | (500.00) | |
| 11/25/2003 | 11095 | R | Nash Finch Company- | 1st Pmt. to Reimburse for Ck #: ▇▇▇▇ | (500.00) | |
| 11/25/2003 | 11090 | R | Spartan Stores | VOID: Inv.#: Oct. 2003 (This Covers 10/6-10/31) Never Cleared | | |
| 11/25/2003 | 032688 | R | Sutherlands Service Inc. | 1st Pmt. to Reimburse for Ck #: ▇▇▇▇ | 3,500.00 | |
| 12/05/2003 | 11097 | R | Nash Finch Company- | 1st Pmt. to Reimburse for Ck #: ▇▇▇▇ | (500.00) | |
| 12/05/2003 | 11099 | R | Spartan Stores | Inv.#: Oct. 2003 (This Covers 11/3/03-11/28/03) | (66.00) | |
| 12/12/2003 | 58000 | R | Lipari Distributors | | 4,971.01 | |
| 12/12/2003 | 11104 | R | Nash Finch Company- | 1st Pmt. to Reimburse for Ck #: ▇▇▇▇ | (500.00) | |
| 12/23/2003 | 11119 | R | Nash Finch Company- | To Reimburse for Ck #: ▇▇▇▇ | (250.00) | |
| 12/23/2003 | 1300114 | R | US Food Service-Glen Dale Hgts | Inv. 73923 | 5,241.11 | |
| 12/31/2003 | 11131 | R | Nash Finch Company- | 1st Pmt. to Reimburse for Ck #: ▇▇▇▇ | (250.00) | |
| 01/07/2003 | | RP | Nash Finch Company- | Unreconciled Pmt. from Nash Finch | 6,695.43 | |
| | | | | | | 235,595.07 |

EXHIBIT I

28

# CHICAGOLAND BARBEQUE INC
## PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Sort | Payee | Description | Amount | Total |
|---|---|---|---|---|---|---|
| 01/24/2003 | | RP | | To record pmt. from CFMC for Military Acct. Sales | 11,000.00 | |
| 01/30/2003 | | RP | | To record pmt. from CFMC for Military Acct. Sales | 30,000.00 | |
| 03/17/2003 | | RP | | | 4,980.32 | |
| 04/01/2003 | | RP | | | 14,000.00 | |
| 04/22/2003 | | RP | Chicagoland Foods Military Consortium | | 7,252.47 | |
| 05/27/2003 | | RP | Chicagoland Foods Military Consortium | | 15,000.00 | |
| 06/02/2003 | | RP | | Operating Loan to CBI | 15,000.00 | |
| 07/01/2003 | | RP | | Ameriqual Pmt. | 4,784.00 | |
| 08/20/2003 | | RP | Chicagoland Foods Military Consortium | To record reduction in note from CFMC | 10,005.00 | |
| 10/10/2003 | | RP | | Pay down on purchase of military accts. | 5,000.00 | |
| 10/23/2003 | | RP | | Inv. 7000202 for CFMC | 8,320.00 | |
| 11/03/2003 | | RP | Chicagoland Foods Military Consortium | Deposit | 2,500.00 | |
| 11/05/2003 | | RP | Chicagoland Foods Military Consortium | Deposit | 7,000.00 | |
| 11/17/2003 | | RP | Chicagoland Foods Military Consortium | Deposit | 13,000.00 | |
| 11/20/2003 | | RP | Chicagoland Foods Military Consortium | Deposit | 5,000.00 | |
| 12/15/2003 | | RP | | Mis-Applied US Food Cks 11/17 & 11/20 | 82,489.10 | |
| 12/19/2003 | | RP | Chicagoland Foods Military Consortium | Pay back of mis-applied cks | (35,000.00) | |
| 12/31/2003 | | RP | Chicagoland Foods Military Consortium | Deposit | 5,700.00 | |
| | | | | Deposit | 10,000.00 | 207,726.32 |
| 04/03/2003 | 10876 | T | Georgia Dept. of Revenue | Tax Pmt 1/1/00-9/31/00 (SSN/STI █████) | (555.43) | |
| 11/24/2003 | 1089 | T | IL Secretary of State | Annual report franchise tax & filing fees Corp File #: D | (358.06) | (913.49) |
| 01/09/2003 | 10763 | V | BCK, LLC | Inv.#: 2368 | (1,030.20) | |
| 01/16/2003 | 10765 | V | Home Market Foods- | Inv.#: 2369, 2436 & (3434 Partial) | (10,000.00) | |
| 01/22/2003 | 10766 | V | Home Market Foods- | Inv.#: 2434 & (2484 Partial) | (4,964.50) | |
| 01/22/2003 | 10767 | V | Acosta | Brokerage Pmt. for 10/16/02-11/15/02 | (286.60) | |
| 01/22/2003 | 10792 | V | Acuity | Policy #: ███████ | (142.00) | |
| 01/22/2003 | 10793 | V | Advantage Warns | Inv.#: cb115 Quarterly Installment | (165.00) | |
| 01/22/2003 | 10794 | V | Arrow-IL | Inv.'s: 207772 & 207773 | (465.32) | |
| 01/22/2003 | 10790 | V | Carriage House Foods | Inv.#'s: 14228 & 14239 | (4,908.92) | |
| 01/22/2003 | 10768 | V | Encore Services | Inv.#'s: 21705 & 021989A | (499.10) | |
| 01/22/2003 | 10781 | V | FFE Transportation Services | Inv.#'s: 1271871 & 1274011 | (571.84) | |
| 01/22/2003 | 10777 | V | Gordon Food Service- | Inv.#: 751845 | (74.00) | |
| 01/22/2003 | 10778 | V | JBI Sales & Associates | Inv.#: 101802 | (72.97) | |
| 01/22/2003 | 10779 | V | John Berryman | Inv.#: 021204-01 | (126.60) | |
| 01/22/2003 | 10774 | V | Kinkos, Inc. | Acct.#: ███████ | (208.48) | |
| 01/22/2003 | 10775 | V | Krellkamp Trucking, Inc. | Inv.#: 872307 | (220.50) | |
| 01/22/2003 | 10771 | V | Runco | Inv.#: 303555-0 | (96.57) | |
| 01/22/2003 | 10769 | V | United Parcel Service | Shipper #: F371A2 | (233.38) | |
| 01/22/2003 | 10773 | V | We Market Success, Inc. | Brokerage Pmt. for 10/16/02-11/15/02 | (162.38) | |
| 01/24/2003 | 10770 | V | Home Market Foods- | Inv.#: 2484 & (2479 Partial Pmt.) | (3,213.00) | |
| 01/31/2003 | 10800 | V | Carriage House Foods | Inv.#: 14244 | (2,243.04) | |
| 02/05/2003 | 10796 | V | Advanta Business Cards | Acct.#: ███████ | (250.00) | |
| 02/05/2003 | 10797 | V | Arrow-IL | Inv.#: 209295 | (138.84) | |
| 02/05/2003 | 10803 | V | Enterprise Marketing | Brokerage from 12/1/02-12/31/03 | (167.55) | |
| 02/05/2003 | 10804 | V | FFE Transportation Services | Inv.#: 1307678 | (359.32) | |
| 02/05/2003 | 10806 | V | Krellkamp Trucking, Inc. | Inv.#: 870515 | (150.00) | |
| 02/05/2003 | 10809 | V | Mt. Horeb Telephone Company | 608-437-6313 | (89.34) | |
| 02/05/2003 | 10810 | V | Noristar Foods | Inv.#: A165 | (535.55) | |
| 02/05/2003 | 10811 | V | NOSVA | Acct.#: ███████ | (401.44) | |
| 02/05/2003 | 10813 | V | Peer Foods | Inv.#: 00156555 (Partial) | (3,500.00) | |
| 02/05/2003 | 10815 | V | Runco | Inv.#'s: 303555-1 & 303975-0 | (70.45) | |

EXHIBIT I

# CHICAGOLAND BARBEQUE INC
## PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Sort | Payee | Description | Amount | Total |
|---|---|---|---|---|---|---|
| 02/05/2003 | 10818 | √ | United Parcel Service | Acct.#: ▉ | (430.16) | |
| 02/05/2003 | 10819 | √ | We Market Success, Inc. | Inv.#: FS-0055-CHI | (371.43) | |
| 02/12/2003 | 10820 | √ | Home Market Foods- | Final Pmt. on Inv.#: 2479 & Partial Pmt. on Inv.#: 2502 | (5,307.50) | |
| 02/17/2003 | 10823 | √ | Home Market Foods- | VOID: Final Pmt. on 2502, 2581, 2579, & Partial Pmt. on 2577 | - | |
| 02/17/2003 | 10821 | √ | Home Market Foods- | VOID: Check printed incorrectly | | |
| 02/17/2003 | 10822 | √ | Wells Fargo/Rymer Meat | Pmt. for settlement amt. w/ Rymer | (5,000.00) | |
| 02/18/2003 | 10825 | √ | Home Market Foods- | Final Pmt. on 2502, 2581, 2579, & Partial on 2577 | (8,339.50) | |
| 02/18/2003 | 10824 | √ | Home Market Foods- | VOID: | - | |
| 02/20/2003 | 10826 | √ | Family Fare, Inc. | Inv.#'s: 4963, 5048 & 5259 | (1,500.00) | |
| 03/03/2003 | 10827 | √ | Home Market Foods- | Inv.#: 2577 Partial Pmt. | (4,600.00) | |
| 03/04/2003 | 10828 | √ | Home Market Foods- | Inv.#'s: (2577-Final Pmt.), 2609, 2608 & 2653 | (10,400.00) | |
| 03/05/2003 | 10829 | √ | Acuity | Policy #: ▉ | (142.00) | |
| 03/05/2003 | 10830 | √ | Advanta Business Cards | Acct.#: ▉ | (100.00) | |
| 03/05/2003 | 10831 | √ | Arrow-IL | Inv.#: 210382 | (109.98) | |
| 03/05/2003 | 10835 | √ | FFE Transportation Services | Inv.#: 1220001 | (162.50) | |
| 03/05/2003 | 10837 | √ | Kreilkamp Trucking, Inc. | Inv.#: 870515 | (112.50) | |
| 03/05/2003 | 10839 | √ | NOSVA | Acct.#: ▉ | (971.36) | |
| 03/05/2003 | 10834 | √ | Premium Proflen Products-Denison | Inv.#: 13650 | (70.25) | |
| 03/05/2003 | 10843 | √ | United Parcel Service | ▉ | (108.36) | |
| 03/17/2003 | 10844 | √ | Wells Fargo/Rymer Meat | VOID: Re-issue check/original ck was sent 3/17 Cust. didn't recv. a | | |
| 03/22/2003 | | √ | Acuity | | 142.00 | |
| 03/25/2003 | 10847 | √ | Advanta Business Cards | | (1,000.00) | |
| 03/25/2003 | 10848 | √ | Arrow-IL | | (313.23) | |
| 03/25/2003 | 10853 | √ | Drake Packaging Solutions | Inv.#: 3610 | (250.00) | |
| 03/25/2003 | 10855 | √ | Enterprise Marketing | Brokerage from 1/1/03-1/31/03 | (153.87) | |
| 03/25/2003 | 10866 | √ | FFE Transportation Services | Inv.#: 1322986 | (258.80) | |
| 03/25/2003 | 10858 | √ | Litehouse Foods | Inv.#: 476465 | (500.00) | |
| 03/25/2003 | 10861 | √ | Peer Foods | Inv.#: 00155555 | (500.00) | |
| 03/25/2003 | 10852 | √ | Premium Proflen Products-Denison | Inv.#: 10649 | (3,470.00) | |
| 03/25/2003 | 10864 | √ | United Parcel Service | | (83.79) | |
| 03/27/2003 | 10867 | √ | Wells Fargo/Rymer Meat | To record settlement amt. w/ Rymer | (5,000.00) | |
| 04/03/2003 | 10870 | √ | Advanta Business Cards | Acct.#: ▉ | (225.16) | |
| 04/03/2003 | 10873 | √ | Custom Ribs | Inv.#: 13643 | (500.00) | |
| 04/03/2003 | 10874 | √ | Drake Packaging Solutions | Inv.#: 3610 | (100.00) | |
| 04/03/2003 | 10875 | √ | FFE Transportation Services | Inv.#: 1322987 | (178.88) | |
| 04/03/2003 | 10877 | √ | JBI Sales & Associates | Brokerage from 11/16-12/15 | (296.79) | |
| 04/03/2003 | 10872 | √ | Premium Proflen Products-Denison | Inv.#: 10666 | (1,765.39) | |
| 04/03/2003 | 10881 | √ | United Parcel Service | Inv.#: 0000F371A2113 | (11.19) | |
| 04/04/2003 | 10882 | √ | Advanta Business Cards | Acct.#: ▉ | (68.84) | |
| 04/11/2003 | 0000108443 | √ | Abbot Sysco | Inv.#: 73861 | 4,566.31 | |
| 04/11/2003 | | √ | | Reimbursement on Deductable | 105.50 | |
| 04/14/2003 | 10884 | √ | Wells Fargo/Rymer Meat | To record settlement amt. w/ Rymer | (5,000.00) | |
| 04/16/2003 | 10886 | √ | Hecky Powell | | (1,220.18) | |
| 04/18/2003 | 10887 | √ | Acuity | Policy #: ▉ | (172.80) | |
| 04/18/2003 | 10906 | √ | Advanta Business Cards | Acct.#: ▉ | (2,000.00) | |
| 04/18/2003 | 10904 | √ | Drake Packaging Solutions | Inv.#: 3610 | (135.26) | |
| 04/18/2003 | 10905 | √ | Enterprise Marketing | Brokerage from 2/1/03-2/28/03 | (147.92) | |
| 04/18/2003 | 10900 | √ | FFE Transportation Services | Inv.#: 1368612 | (396.15) | |
| 04/18/2003 | 10901 | √ | FFE Transportation Services | Inv.#: 1369951 | (184.04) | |
| 04/18/2003 | 10897 | √ | Gordon Food Service- | Inv.#: 773373 | (38.00) | |

EXHIBIT I

CHICAGOLAND BARBEQUE INC
PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Payee | Sort | Description | Amount | Total |
|---|---|---|---|---|---|---|
| 04/18/2003 | 10895 | Home Market Foods- | v | Inv.#: 3076 | (1,540.00) | |
| 04/18/2003 | 10896 | Home Market Foods- | v | Inv.#: 3075 | (3,348.00) | |
| 04/18/2003 | 10899 | NOSVA | v | Acct.#: | (960.25) | |
| 04/18/2003 | 10894 | Peer Foods | v | Inv.#: 00156555 | (500.00) | |
| 04/18/2003 | 10903 | Premium Protien Products-Denison | v | Inv.#: 10714 | (2,259.92) | |
| 04/18/2003 | 10891 | Runco | v | Inv.#: 308390-0 | (114.83) | |
| 04/18/2003 | 10888 | United Parcel Service | v | Inv.#: 0000F371A2113 | (1.41) | |
| 05/01/2003 | 50061 | Pre-Paid Legal Services | v | | (85.00) | |
| 05/13/2003 | 10889 | Acosta-MI | v | Elec- ■ & CBBQ | (445.00) | |
| 05/13/2003 | 10918 | C.C.S. | v | File #: ■ & | (262.20) | |
| 05/13/2003 | 10916 | FFE Transportation Services | v | Inv.#: 198104 | (610.75) | |
| 05/13/2003 | 10917 | Gordon Food Service- | v | Inv.#'s: 3085 & 3097 | (29.95) | |
| 05/13/2003 | 10914 | Home Market Foods- | v | Inv.#'s: 3085 & 3097 | (3,280.00) | |
| 05/21/2003 | 10911 | Home Market Foods- | v | Inv.#: 2653, 2681, 2680, 2730 & (2733 Partial) | (12,000.00) | |
| 05/23/2003 | 10921 | Arrow-IL | v | Inv.#: 214303 | (350.11) | |
| 05/23/2003 | 10922 | FFE Transportation Services | v | Inv.#: 1388786 | (207.23) | |
| 05/23/2003 | 10923 | FFE Transportation Services | v | Inv.#: 1388787 | (166.42) | |
| 05/23/2003 | 10926 | NOSVA | v | Acct.#: 00156555 | (670.95) | |
| 05/23/2003 | 10927 | Peer Foods | v | | (500.00) | |
| 06/03/2003 | | Pre-Paid Legal Services | v | | (75.00) | |
| 06/04/2003 | 10931 | Acuity | v | Policy #: | (130.60) | |
| 06/04/2003 | 10932 | Advanta Business Cards | v | | (1,000.00) | |
| 06/04/2003 | 10933 | Advantage Wams | v | Inv.#: cb116 Quarterly Installment | (165.00) | |
| 06/04/2003 | 10934 | FFE Transportation Services | v | Inv.#: 1433403 | (358.80) | |
| 06/04/2003 | 10935 | JBJ Sales & Associates | v | Brokerage from 3/16/03-4/15/03 | (296.15) | |
| 06/04/2003 | 10937 | United Parcel Service | v | | (110.32) | |
| 06/04/2003 | 10938 | We Market Success, Inc. | v | Acct. # | (300.10) | |
| 06/12/2003 | 10939 | Home Market Foods- | v | Brokerage Pmt. from 12/16/02-1/15/03 | (6,097.00) | |
| 06/17/2003 | 10940 | Home Market Foods- | v | (Final Pmt. on Inv.#:2733) Inv.#: 2756 & (2778 Partial Pmt.) | (11,322.00) | |
| 06/23/2003 | 200784 | Abbot Sysco | v | (Final Pmt. on Inv.#: 2778) Inv.#'s: 2788, 2806, 2830 & (Partial Pmt | 5,173.41 | |
| 06/23/2003 | 10942 | Acosta-MI | v | Inv.#: 73876 | (335.49) | |
| 06/23/2003 | 10943 | Acuity | v | Policy #: | (130.60) | |
| 06/23/2003 | 10949 | FFE Transportation Services | v | Brokerage Pmt. for 4/1/03-4/30/03 | (162.50) | |
| 06/23/2003 | 10951 | Peer Foods | v | Inv.#: 1445470 | (500.00) | |
| 06/23/2003 | 10947 | Premium Protion Products-Denison | v | Inv.#: 00156555 | (1,958.15) | |
| 07/02/2003 | 10941 | Acosta-MI | v | Inv.#: 10874 | (318.20) | |
| 07/02/2003 | 10954 | Advanta Business Cards | v | Brokerage Pmt. for 5/1/03-5/15/03 | (1,000.00) | |
| 07/02/2003 | 10956 | FFE Transportation Services | v | Acct.#: | (357.59) | |
| 07/02/2003 | 10957 | FFE Transportation Services | v | Inv.#: 1448951 | (333.79) | |
| 07/02/2003 | 10958 | Litehouse Foods | v | Inv.#: 1450215 | (431.18) | |
| 07/02/2003 | 10962 | NOSVA | v | Inv.#'s: 476465, 482753, 482968 & 484535 | (898.86) | |
| 07/03/2003 | 0 | Pre-Paid Legal Services | v | Acct.#: | (4,852.00) | |
| 07/03/2003 | | Home Market Foods- | v | Inv.#'s: Final pmt. on 2869 & (2878 Partial) | (75.00) | |
| 07/07/2003 | 803133 | Gordon Food Service | v | | 1,944.15 | |
| 07/12/2003 | 10965 | Home Market Foods- | v | Inv.#: 2921 | (5,284.50) | |
| 07/18/2003 | 807874 | Gordon Food Service | v | | 5,780.35 | |
| 07/18/2003 | 10966 | Premium Protien Products-Denison | v | Acct.#: ■, ■ & ■ | (11,503.03) | |
| 07/23/2003 | 10967 | Advanta Business Cards | v | Acct.#: | (1,000.00) | |
| 07/23/2003 | 10958 | Advantage Wams | v | Inv.#: cb117 Quarterly Installment | (165.00) | |
| 07/23/2003 | 10969 | Ashland Cold Storage | v | Inv.#: 56350 | (30.00) | |

EXHIBIT 1

# CHICAGOLAND BARBEQUE INC
## PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Sort | Payee | Destination | Amount | Total |
|------|---------------|------|-------|-------------|--------|-------|
| 07/23/2003 | 10972 | v | FFE Transportation Services | Inv.#: 1448951 | (357.59) | |
| 07/23/2003 | 10973 | v | FFE Transportation Services | Inv.#: 1469925 | (178.06) | |
| 07/23/2003 | 10979 | v | United Parcel Service | Inv.#: 0000F371A2263 | (39.75) | |
| 08/01/2003 | 10980 | v | Home Market Foods- | Inv.#: 2878, 2896, 2955 & (3006 Partial) | (6,207.50) | |
| 08/05/2003 | | v | Pre-Paid Legal Services | | (75.00) | |
| 08/07/2003 | 10981 | v | Advanta Business Cards | Acct.#: | (1,000.00) | |
| 08/07/2003 | 10985 | v | FFB Transportation Services | Inv.#: 1484346 | (236.12) | |
| 08/07/2003 | 10986 | v | FFB Transportation Services | Inv.#: 1484345 | (181.13) | |
| 08/07/2003 | 10987 | v | FFB Transportation Services | Inv.#: 1487347 | (202.34) | |
| 08/07/2003 | 10988 | v | H.P. Distributors | Inv.#: 282 | (375.00) | |
| 08/07/2003 | 10983 | v | Premium Protien Products-Denison | Inv.#: 10991 | (4,262.02) | |
| 08/07/2003 | 10990 | v | Runco | Inv.#: 31301S-0 | (83.65) | |
| 08/11/2003 | | v | Arrow-IL | | 2,382.54 | 2,458.25 |
| 08/11/2003 | 10992 | v | Hedy Powell | Royalties for 1/1/03-6/30/03 | (1,350.00) | |
| 08/28/2003 | 10993 | v | Acosta-MI | Brokerage Pmt. for 6/1/03-7/15/03 | (468.56) | |
| 08/28/2003 | 10994 | v | Advanta Business Cards | Acct.#: | (400.00) | |
| 08/28/2003 | 10995 | v | Ashland Cold Storage | Inv.#: 56655 | (29.00) | |
| 08/28/2003 | 10999 | v | Family Farm, Inc. | Inv.#: 5486 | (342.00) | |
| 08/28/2003 | 11000 | v | FFB Transportation Services | Inv.#: 1496469 | (357.08) | |
| 08/28/2003 | 11002 | v | JBJ Sales & Associates | Brokerage from 5/16-6/15 | (278.06) | |
| 08/28/2003 | 11003 | v | Litehouse Foods | Inv.#: 485483 | (1,102.17) | |
| 08/28/2003 | 11009 | v | NOSVA | Acct.#: | (941.75) | |
| 08/28/2003 | 10997 | v | Premium Protien Products-Denison | Inv.#: 11072 | (1,448.37) | |
| 08/28/2003 | 11012 | v | United Parcel Service | Inv.#: 0000F371A2263 | (67.29) | |
| 09/05/2003 | 11004 | v | Home Market Foods- | Final Pmt. on inv.#: 3006 & Partial Pmt. on inv #: 3030 | (5,612.90) | |
| 09/05/2003 | | v | Pre-Paid Legal Services | | (75.00) | |
| 09/09/2003 | 204178 | v | Abbott Sysco | | 2,458.25 | |
| 09/22/2003 | 11013 | v | Home Market Foods- | Inv.#: 3030 | (2,800.00) | |
| 10/03/2003 | 11015 | v | Advanta Business Cards | Acct.#: | (2,500.00) | |
| 10/03/2003 | 11018 | v | FFE Transportation Services | Inv.#: ,   ,   , &  | (1,184.22) | |
| 10/03/2003 | 11020 | v | JBJ Sales & Associates | Brokerage from 7/16/03-8/15/03 | (147.18) | |
| 10/03/2003 | 11021 | v | Litehouse Foods | Inv.#'s: 486760 & 488339 | (1,626.56) | |
| 10/03/2003 | 11023 | v | NOSVA | Acct.#: | (918.41) | |
| 10/03/2003 | 11017 | v | Premium Protien Products-Denison | Inv.#'s: 11085, 11090, 11129 & 11128 | (5,385.00) | |
| 10/03/2003 | | v | Pre-Paid Legal Services | | (75.00) | |
| 10/03/2003 | 11024 | v | Runco | Inv.#: 317415-0 | (74.87) | |
| 10/03/2003 | 11029 | v | United Parcel Service | Acct.#: | (243.65) | |
| 10/08/2003 | 11030 | v | Home Market Foods- | Final Pmt. on Inv 3030 & Partial Pmt. on 3160 | (4,075.00) | |
| 10/15/2003 | 11044 | v | Abbott Foods | For Hot Foods Concept Program with Kroger | (2,200.00) | |
| 10/15/2003 | 11031 | v | Acosta-MI | Brokerage Pmt. for 7/1/03-8/15/03 | (200.00) | |
| 10/15/2003 | 11032 | v | Acuity | Policy #: | (166.80) | |
| 10/15/2003 | 11033 | v | Advanta Business Cards | Acct.#: | (960.10) | |
| 10/15/2003 | 11034 | v | Ashland Cold Storage | Inv.#: 57641 | (187.00) | |
| 10/15/2003 | 11041 | v | FFE Transportation Services | Inv.#: 489422 & 489484 | (693.34) | |
| 10/15/2003 | 11037 | v | Litehouse Foods | Inv.#: 00156655 | (2,093.09) | |
| 10/15/2003 | 11038 | v | Peer Foods | Inv.#: 11146 | (1,000.00) | |
| 10/15/2003 | 11040 | v | Premium Protien Products-Denison | | (2,845.60) | |
| 10/15/2003 | 11042 | v | United Parcel Service | Acct.#: | (112.17) | |
| 10/24/2003 | 11051 | v | Advanta Business Cards | Inv.#: 1593116 | (500.00) | |
| 10/24/2003 | 11048 | v | FFE Transportation Services | | (360.79) | |

EXHIBIT I

# CHICAGOLAND BARBEQUE INC
## PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Payee | Sort | Description | Amount | Total |
|---|---|---|---|---|---|---|
| 10/24/2003 | 11050 | Litehouse Foods | V | Inv.#: 490659 ▓▓▓ | (700.00) | |
| 10/24/2003 | 11054 | NGSVA | V | Acct.#: ▓▓▓ | (953.01) | |
| 10/24/2003 | 11052 | Peer Foods | V | Inv.#: 00156555 | (500.00) | |
| 10/24/2003 | 11046 | Premium Protien Products-Denison | V | Inv.#: 10904 (Cancelled Ck-Wired Instead) | (4,224.42) | |
| 10/24/2003 | 11047 | Premium Protien Products-Denison | V | Inv.#: 11183 (Cancelled Ck-Wired Instead) | (3,124.00) | |
| 10/27/2003 | 206695 | Abbot Sysco | V | | 4,850.68 | |
| 10/27/2003 | 11055 | Home Market Foods- | V | Final Pmt. on 3160 & Partial Pmt. on 3186 | (3,050.00) | |
| 10/31/2003 | 11058 | Advanta Business Cards | V | | (500.00) | |
| 10/31/2003 | 11059 | Advantage Wams | V | Inv.#: cb118 Quarterly installment | (165.00) | |
| 10/31/2003 | 11056 | Litehouse Foods | V | Inv.#: 490659 | (873.70) | |
| 10/31/2003 | 11061 | Peer Foods | V | Inv.#: 00156555 | (500.00) | |
| 10/31/2003 | 11060 | Premium Protien Products-Denison | V | Inv.#: 11197 (Cancelled Ck-Wired Instead) | (4,042.10) | |
| 11/03/2003 | | Pre-Paid Legal Services | V | | (75.00) | |
| 11/04/2003 | 11071 | Home Market Foods- | V | Inv.#: 3186 & 3215 (Partial) | (5,100.00) | |
| 11/07/2003 | 11063 | Acosta-MI | V | Inv.#: CBBQ0050103 | (75.00) | |
| 11/07/2003 | 11066 | FFE Transportation Services | V | Inv.#: 1612384 | (339.55) | |
| 11/07/2003 | 11067 | Peer Foods | V | Inv.#: 00156555 | (500.00) | |
| 11/07/2003 | 11065 | Premium Protien Products-Denison | V | Inv.#: 77 | (2,252.60) | |
| 11/21/2003 | 11072 | Acosta-MI | V | 9/16/03-10/15/03 | (309.63) | |
| 11/21/2003 | 11073 | Acuity | V | Policy #: ▓▓▓ | (126.10) | |
| 11/21/2003 | 11051 | Advanta Business Cards | V | Acct.#: ▓▓▓ | (500.00) | |
| 11/21/2003 | 11075 | Ashland Cold Storage | V | Inv.#: 56256 | (96.00) | |
| 11/21/2003 | 11076 | Ashland Cold Storage | V | Inv.#: 56545 | (25.00) | |
| 11/21/2003 | 11081 | Gordon Food Service- | V | Inv.#: 0000026509 | (32.00) | |
| 11/21/2003 | 11082 | Gordon Food Service- | V | Inv.#: 0000026510 | (410.00) | |
| 11/21/2003 | 11083 | JBI Sales & Associates | V | Brokerage from 9/16/03-10/15/03 | (262.10) | |
| 11/21/2003 | 11086 | Peer Foods | V | Inv.#: 00156555 | (500.00) | |
| 11/21/2003 | 11079 | Premium Protien Products-Denison | V | Inv.#: 118 | (1,056.10) | |
| 11/25/2003 | 11091 | Acosta-MI | V | Brokerage Pmt. for 7/1/03-8/15/03 | (123.73) | |
| 11/25/2003 | 11096 | Peer Foods | V | Inv.#: 00156555 | (500.00) | |
| 12/03/2003 | 208469 | Abbot Sysco | V | ▓▓▓ | 2,742.75 | |
| 12/03/2003 | | Pre-Paid Legal Services | V | | (75.00) | |
| 12/05/2003 | 11092 | Advanta Business Cards | V | Acct.#: ▓▓▓ | (500.00) | |
| 12/05/2003 | 11101 | FFE Transportation Services | V | Inv.#: 1631829 | (254.75) | |
| 12/05/2003 | 11098 | Peer Foods | V | Inv.#: 00156555 | (557.87) | |
| 12/05/2003 | 11100 | Premium Protien Products-Denison | V | Inv.#: 152 | (1,540.60) | |
| 12/12/2003 | 11103 | Advanta Business Cards | V | Acct.#: ▓▓▓ | (500.00) | |
| 12/12/2003 | 11107 | Home Market Foods- | V | Final Pmt. on 3215, 3233 & Partial Pmt. on 3234 | (7,300.00) | |
| 12/12/2003 | 11105 | Peer Foods | V | Inv.#: 00162127 | (1,000.00) | |
| 12/23/2003 | 11108 | Acosta-MI | V | 10/16/03-11/15/03 | (243.56) | |
| 12/23/2003 | 11109 | Advanta Business Cards | V | Acct.#: ▓▓▓ | (1,000.00) | |
| 12/23/2003 | 11110 | Ashland Cold Storage | V | Inv.#: 58496 | (117.00) | |
| 12/23/2003 | 11113 | FFE Transportation Services | V | Inv.#: 1654588 | (373.83) | |
| 12/23/2003 | 11114 | FFE Transportation Services | V | Inv.#: 1659450 | (254.75) | |
| 12/23/2003 | 11120 | Peer Foods | V | Inv.#: 00162127 | (500.00) | |
| 12/23/2003 | 11121 | Premium Protien Products-Denison | V | Inv.#: 196 & 217 | (6,766.00) | |
| 12/31/2003 | 11124 | Acuity | V | Policy #: ▓▓▓ | (126.10) | |
| 12/31/2003 | 11125 | Advanta Business Cards | V | Acct.#: ▓▓▓ | (1,000.00) | |
| 12/31/2003 | 11126 | Ashland Cold Storage | V | Inv.#: 58605 | (100.00) | |
| 12/31/2003 | 11127 | FFE Transportation Services | V | Inv.#: 1665126 | (373.80) | |

EXHIBIT I

CHICAGOLAND BARBEQUE INC
PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Sort | Payee | Description | Amount | Total |
|------|---------------|------|-------|-------------|--------|-------|
| 12/31/2003 | 11132 | V | Peer Foods | Inv.#: 00161127 | (500.00) | (255,226.18) |
| 12/31/2003 | 11133 | V | Premium Protien Products-Denison | Inv.#: 118 | (1,789.50) | (8,194.51) |
| **2004** | | | | | (8,194.51) | |
| 01/09/2004 | 11137 | A | AT&T Wireless | Acct.#: | (120.32) | |
| 01/09/2004 | 11138 | A | Citicorp Vendor Finance, Inc. | Acct.#: | (156.96) | |
| 01/20/2004 | 11150 | A | Ford Credit | Acct.#: | (439.72) | |
| 01/27/2004 | 11159 | A | AIG | | (550.36) | |
| 02/10/2004 | 11170 | A | AT&T Wireless | Acct.#: | (116.50) | |
| 02/10/2004 | 11171 | A | Citicorp Vendor Finance, Inc. | Acct.#: | (174.47) | |
| 03/04/2004 | 11197 | A | Ford Credit | Acct.#: | (397.89) | |
| 03/12/2004 | 11205 | A | AT&T Wireless | Acct.#: | (116.50) | |
| 03/12/2004 | 11206 | A | Citicorp Vendor Finance, Inc. | Acct.#: | (156.96) | |
| 03/12/2004 | 11212 | A | SBC | 847 903-4291 | (146.25) | |
| 03/19/2004 | 11218 | A | Ford Credit | Acct.#: | (418.78) | |
| 04/02/2004 | 11225 | A | AVAYA Financial Services | Acct.#: | (134.95) | |
| 04/09/2004 | 11233 | A | Citicorp Vendor Finance, Inc. | Acct.#: | (174.47) | |
| 04/16/2004 | 11238 | A | Ford Credit | Acct.#: | (438.67) | |
| 04/23/2004 | 11242 | A | AT&T Wireless | Acct.#: | (116.50) | |
| 04/23/2004 | 11243 | A | AVAYA Financial Services | Acct.#: | (190.99) | |
| 05/14/2004 | 11252 | A | Citicorp Vendor Finance, Inc. | Acct.#: | (121.76) | |
| 05/14/2004 | 11253 | A | Citicorp Vendor Finance, Inc. | Acct.#: | (156.96) | |
| 05/25/2004 | 11261 | A | Ford Credit | Acct.#: | (418.78) | |
| 05/28/2004 | | A | SBC | Deposit | 7.24 | |
| 06/04/2004 | 11270 | A | Citicorp Vendor Finance, Inc. | Acct.#: | (174.47) | |
| 06/21/2004 | 11288 | A | Ford Credit | Acct.#: | (418.78) | |
| 07/02/2004 | 11293 | A | AT&T Wireless | Acct.#: | (123.46) | |
| 07/09/2004 | 11311 | A | Citicorp Vendor Finance, Inc. | Acct.#: | (156.96) | |
| 07/14/2004 | 11309 | A | AT&T Wireless | Acct.#: | (121.77) | |
| 07/16/2004 | 11319 | A | Ford Credit | Acct.#: | (439.72) | |
| 08/01/2004 | 11310 | A | AT&T Wireless | Acct.#: | (121.77) | |
| 08/04/2004 | 11332 | A | AT&T Wireless | Acct.#: | (2.13) | |
| 08/04/2004 | 11333 | A | Citicorp Vendor Finance, Inc. | Acct.#: | (156.96) | |
| 08/20/2004 | 11343 | A | Fed Ex | Inv.#: 1-918-20752 | (378.61) | |
| 08/20/2004 | 11344 | A | Ford Credit | Acct.#: | (418.78) | |
| 09/03/2004 | 11356 | A | AT&T Wireless | Acct.#: | (122.05) | |
| 09/03/2004 | 11357 | A | Citicorp Vendor Finance, Inc. | Acct.#: | (156.96) | |
| 09/17/2004 | 11376 | A | Ford Credit | Acct.#: | (418.78) | |
| 10/15/2004 | 11395 | A | AT&T Wireless | Acct.#: | (122.05) | |
| 10/15/2004 | 11396 | A | Citicorp Vendor Finance, Inc. | Acct.#: | (156.96) | |
| 10/15/2004 | 11397 | A | Ford Credit | Acct.#: | (418.78) | |
| 11/05/2004 | 11415 | A | AT&T Wireless | Acct.#: | (122.05) | |
| 11/05/2004 | 11416 | A | Citicorp Vendor Finance, Inc. | Acct.#: | (174.47) | |
| 11/23/2004 | 11423 | A | Ford Credit | Acct.#: | (418.78) | |
| 12/03/2004 | 11428 | A | AT&T Wireless | Acct.#: | (122.05) | |
| 12/10/2004 | 11440 | A | Citicorp Vendor Finance, Inc. | Acct.#: | (156.96) | |
| 12/17/2004 | 11441 | A | Ford Credit | Acct.#: | (439.72) | |
| 12/30/2004 | 11445 | A | Midland Insurance Agency | General Liability Ins. Policy | (1,566.00) | (11,449.52) |

EXHIBIT I

# CHICAGOLAND BARBEQUE INC
## PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Sort | Payee | Description | Amount | Total |
|---|---|---|---|---|---|---|
| 01/06/2004 | | BA | Private Bank & Trust Co., The | | (5,067.91) | |
| 01/06/2004 | | BA | Private Bank & Trust Co., The | | (837.46) | |
| 01/09/2004 | 11139 | BA | Bank of America | Balance Transfer | (500.00) | |
| 01/20/2004 | 11155 | BA | Bank of America | Please see attached. | (500.00) | |
| 01/22/2004 | | BA | Private Bank & Trust Co., The | Maintenance | (101.63) | |
| 01/29/2004 | | BA | Private Bank & Trust Co., The | Overdraft Fee | (30.00) | |
| 01/29/2004 | | BA | Bank of America | Funds Transfer | 3,000.00 | |
| 01/30/2004 | 11164 | BA | Bank of America | | (500.00) | |
| 01/30/2004 | | BA | Bank of America | Funds Transfer | 2,196.05 | |
| 01/30/2004 | | BA | Bank of America | Funds Transfer | 803.95 | |
| 02/05/2004 | | BA | Bank of America | | (837.46) | |
| 02/09/2004 | | BA | Private Bank & Trust Co., The | Funds Transfer | 8,000.00 | |
| 02/10/2004 | 11172 | BA | Bank of America | Please see attached. | (500.00) | |
| 02/10/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 02/12/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 02/13/2004 | | BA | Bank of America | Funds Transfer | 25,690.00 | |
| 02/17/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 02/17/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 02/18/2004 | | BA | Private Bank & Trust Co., The | O/D | (5,051.40) | |
| 02/23/2004 | 11186 | BA | Bank of America | | (500.00) | |
| 02/24/2004 | | BA | Private Bank & Trust Co., The | Maintenance Fee | (102.99) | |
| 02/25/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 02/26/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 02/27/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 02/27/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 03/04/2004 | 11199 | BA | Bank of America | O/D | (1,000.00) | |
| 03/06/2004 | | BA | Private Bank & Trust Co., The | Note #: | (783.44) | |
| 03/08/2004 | | BA | Private Bank & Trust Co., The | O/D | (4,931.51) | |
| 03/09/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 03/12/2004 | 11210 | BA | Bank of America | | (500.00) | |
| 03/17/2004 | | BA | Private Bank & Trust Co., The | Maintenance Fee | (118.97) | |
| 03/19/2004 | 11220 | BA | Bank of America | Balance Transfer | (500.00) | |
| 03/19/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 03/29/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 03/30/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 03/31/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 04/02/2004 | 11228 | BA | Bank of America | | (500.00) | |
| 04/06/2004 | | BA | Private Bank & Trust Co., The | Note #: | (837.46) | |
| 04/06/2004 | | BA | Private Bank & Trust Co., The | Note #: | (5,018.37) | |
| 04/22/2004 | | BA | Private Bank & Trust Co., The | Maintenance Fee | (99.47) | |
| 04/23/2004 | 11245 | BA | Bank of America | Acct.#: | (500.00) | |
| 05/06/2004 | | BA | Private Bank & Trust Co., The | Note #: | (4,948.09) | |
| 05/06/2004 | | BA | Private Bank & Trust Co., The | Note #: | (810.45) | |
| 05/25/2004 | 11264 | BA | Bank of America | Acct.#: | | |
| 05/25/2004 | 11267 | BA | Bank of America | | (500.00) | |
| 05/25/2004 | | BA | Private Bank & Trust Co., The | Maintenance Fee | (93.66) | |
| 06/04/2004 | 11274 | BA | Bank of America | Balance Transfer | (500.00) | |
| 06/06/2004 | | BA | Private Bank & Trust Co., The | Note #: | (24,985.88) | |
| 06/14/2004 | 11277 | BA | Bank of America | Acct.#: | (70.05) | |
| 06/14/2004 | 11278 | BA | Bank of America | Acct.#: | (35.65) | |

EXHIBIT 1

# CHICAGOLAND BARBEQUE INC
## PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Sort | Payee | Description | Amount | Total |
|---|---|---|---|---|---|---|
| 06/14/2004 | 11279 | BA | Bank of America | Acct.#: | (394.30) | |
| 06/21/2004 | 11290 | BA | Bank of America | Acct.#: | (500.00) | |
| 06/22/2004 | | BA | Private Bank & Trust Co., The | Note #: | (88.54) | |
| 06/22/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 06/23/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 06/24/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 06/28/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 06/28/2004 | | BA | Private Bank & Trust Co., The | O/D | (837.46) | |
| 07/02/2004 | 11299 | BA | Bank of America | Note #: | (500.00) | |
| 07/02/2004 | | BA | Bank of America | Acct.#: | (4,827.75) | |
| 07/06/2004 | | BA | Private Bank & Trust Co., The | Note #: | (19.00) | |
| 07/09/2004 | | BA | Bank of America | Acct.#: | (481.00) | |
| 07/09/2004 | 11316 | BA | Bank of America | Acct.#: | (100.41) | |
| 07/21/2004 | 11317 | BA | Private Bank & Trust Co., The | Note #: | (500.00) | |
| 07/22/2004 | | BA | Private Bank & Trust Co., The | Note #: | (4,853.30) | |
| 07/23/2004 | 11329 | BA | Bank of America | Acct.#: | (500.00) | |
| 08/02/2004 | | BA | Private Bank & Trust Co., The | Note #: | (250.00) | |
| 08/04/2004 | 11335 | BA | Bank of America | Acct.#: | (101.88) | |
| 08/06/2004 | 11338 | BA | Bank of America | Acct.#: | (119.97) | |
| 08/20/2004 | 11346 | BA | Bank of America | Acct.#: | (96.54) | |
| 08/20/2004 | 11347 | BA | Bank of America | Acct.#: | (500.00) | |
| 08/24/2004 | | BA | Private Bank & Trust Co., The | Acct.#: | (500.00) | |
| 08/27/2004 | 11353 | BA | Bank of America | Acct.#: | (4,836.78) | |
| 09/03/2004 | 11362 | BA | Bank of America | Note #: | (280.27) | |
| 09/06/2004 | | BA | Private Bank & Trust Co., The | Acct.#: | (284.70) | |
| 09/09/2004 | 11362 | BA | Bank of America | Acct.#: | (215.30) | |
| 09/10/2004 | 11366 | BA | Bank of America | Acct.#: | (500.00) | |
| 09/10/2004 | 11367 | BA | Bank of America | Maintenace Fee | (92.98) | |
| 09/17/2004 | 11379 | BA | Bank of America | O/D | (30.00) | |
| 09/22/2004 | | BA | Private Bank & Trust Co., The | Acct.#: | (250.00) | |
| 09/22/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 09/24/2004 | 11383 | BA | Bank of America | Note #: | (2,485.38) | |
| 09/24/2004 | | BA | Private Bank & Trust Co., The | Private Bank Double Charged | (2,485.38) | |
| 09/30/2004 | | BA | Private Bank & Trust Co., The | To Reverse Private Bank's Mistake | 2,485.38 | |
| 09/30/2004 | | BA | Private Bank & Trust Co., The | Renewal Charge for Loan | (1,000.00) | |
| 10/05/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 10/06/2004 | | BA | Private Bank & Trust Co., The | Note #: | (4,820.27) | |
| 10/06/2004 | | BA | Private Bank & Trust Co., The | Note #: | (810.45) | |
| 10/06/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 10/06/2004 | | BA | Private Bank & Trust Co., The | O/D | (60.00) | |
| 10/13/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 10/15/2004 | 11398 | BA | Bank of America | Please see attached. | (244.89) | |
| 10/26/2004 | 11405 | BA | Bank of America | Acct.#: | (250.00) | |
| 10/26/2004 | | BA | Private Bank & Trust Co., The | Maintenance Fee | (100.31) | |
| 10/29/2004 | 11410 | BA | Bank of America | Acct.#: | (19.00) | |
| 10/29/2004 | 11411 | BA | Bank of America | Acct.#: | (231.00) | |
| 10/29/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 10/29/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 11/01/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |

EXHIBIT I

# CHICAGOLAND BARBEQUE INC
## PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Sort | Payee | Description | Amount | Total |
|---|---|---|---|---|---|---|
| 11/04/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 11/05/2004 | 11418 | BA | Bank of America | Acct.#: ███████ | (500.00) | |
| 11/06/2004 | | BA | Private Bank & Trust Co., The | Note #: ███████ | (769.70) | |
| 11/12/2004 | 11420 | BA | Bank of America | Acct.#: ███████ | (152.66) | |
| 11/12/2004 | 11421 | BA | Bank of America | Acct.#: ███████ | (97.34) | |
| 11/22/2004 | | BA | Private Bank & Trust Co., The | Ln.#: ███████ Note#: | (5,504.55) | |
| 11/23/2004 | | BA | Private Bank & Trust Co., The | Maintenance Fee | (98.10) | |
| 11/30/2004 | | BA | Private Bank & Trust Co., The | Bank Error | (769.72) | |
| 11/30/2004 | | BA | Private Bank & Trust Co., The | To Correct Bank Error | 769.72 | |
| 11/30/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 12/01/2004 | | BA | Private Bank & Trust Co., The | Ln.#: ███████ Note#: | 445.66 | |
| 12/06/2004 | | BA | Private Bank & Trust Co., The | Ln.#: ███████ Note#: | (24,803.75) | |
| 12/06/2004 | | BA | Private Bank & Trust Co., The | Ln.#: ███████ Note#: | (823.44) | |
| 12/10/2004 | 11436 | BA | Bank of America | Acct.#: ███████ | (76.74) | |
| 12/10/2004 | 11437 | BA | Bank of America | Acct.#: ███████ | (138.74) | |
| 12/10/2004 | 11438 | BA | Bank of America | Acct.#: ███████ | (34.52) | |
| 12/15/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 12/16/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 12/16/2004 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 12/22/2004 | | BA | Private Bank & Trust Co., The | O/D | (96.10) | (86,893.31) |
| 01/13/2004 | 11145 | D | Darryl Checks | Maintenance Fee | (1,200.00) | |
| 02/12/2004 | 11177 | D | Darryl Checks | Car Allowance | (1,200.00) | |
| 02/13/2004 | 11179 | D | McGraw YMCA | Car Allowance | (250.00) | |
| 03/18/2004 | 11214 | D | Darryl Checks | Donation for the "Beat the Streets Wrestling Program" | (1,200.00) | |
| 03/29/2004 | 11222 | D | Midwest Youth Conference | March Car Allowance | (1,000.00) | |
| 04/07/2004 | 11232 | D | The Diamond Ladies Softball | Contribution to Youth Conference 2004 | (1,500.00) | |
| 05/24/2004 | 11256 | D | Darryl Checks | Donation | (1,200.00) | |
| 06/16/2004 | 11283 | D | A Safe Place | May Car Allowance | (459.63) | |
| 07/07/2004 | 11306 | D | Darryl Checks | Sponsorship for Holes | (500.00) | |
| 08/10/2004 | 11841 | D | Monroe Street Church of Christ | Due to Shareholders | (1,500.00) | |
| 09/10/2004 | 11369 | D | Darryl Checks | ███████ | 69.00 | |
| 10/15/2004 | 11394 | D | Central Pointe Church of Christ | Expenses (September) | (2,739.00) | |
| | | D | | Sponsorship for 2004 | (2,000.00) | (14,220.00) |
| 01/15/2004 | | E | Compupay (Paymaxx) | P/R Fees | (31.00) | |
| 01/15/2004 | | E | Compupay (Paymaxx) | P/R-D/D | (1,704.43) | |
| 01/15/2004 | | E | Compupay (Paymaxx) | P/R-Taxes | (453.84) | |
| 01/20/2004 | | E | Compupay (Paymaxx) | W-2's | (20.00) | |
| 01/30/2004 | | E | Compupay (Paymaxx) | P/R Fees | (32.00) | |
| 01/30/2004 | | E | Compupay (Paymaxx) | P/R | (1,704.42) | |
| 01/30/2004 | | E | Compupay (Paymaxx) | P/R Taxes | (459.63) | |
| 02/13/2004 | | E | Compupay (Paymaxx) | P/R Fees | (40.23) | |
| 02/13/2004 | | E | Compupay (Paymaxx) | D/D | (1,696.92) | |
| 02/13/2004 | | E | Compupay (Paymaxx) | P/R Taxes | (583.32) | |
| 02/27/2004 | | E | Compupay (Paymaxx) | P/R Fees | (33.00) | |
| 02/27/2004 | | E | Compupay (Paymaxx) | Payroll Taxes | (592.67) | |
| 02/27/2004 | | E | Compupay (Paymaxx) | P/R D/D | (1,696.92) | |
| 03/15/2004 | | E | Compupay (Paymaxx) | P/R Fees | (33.00) | |
| 03/15/2004 | | E | Compupay (Paymaxx) | P/R Fees | (1,696.93) | |
| 03/15/2004 | | E | Compupay (Paymaxx) | P/R Taxes | (600.07) | |
| 04/02/2004 | | E | Compupay (Paymaxx) | P/R D/D | (1,696.92) | |
| 04/02/2004 | | E | Compupay (Paymaxx) | P/R Taxes | (614.02) | |

EXHIBIT I

# CHICAGOLAND BARBEQUE INC
## PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Sort | Payee | Description | Amount | Total |
|------|---------------|------|-------|-------------|--------|-------|
| 04/02/2004 | | E | Company (Paymaxx) | P/R Fee | (33.00) | |
| 04/15/2004 | | E | Company (Paymaxx) | P/R Fee | (33.00) | |
| 04/15/2004 | | E | Company (Paymaxx) | D/D | (1,696.93) | |
| 04/15/2004 | | E | Company (Paymaxx) | P/R Taxes | (603.60) | |
| 04/30/2004 | | E | Company (Paymaxx) | P/R Fee | (32.00) | |
| 04/30/2004 | | E | Company (Paymaxx) | D/D | (1,345.45) | |
| 04/30/2004 | | E | Company (Paymaxx) | P/R Taxes | (414.59) | |
| 05/14/2004 | | E | Company (Paymaxx) | P/R Fee | (32.00) | |
| 05/14/2004 | | E | Company (Paymaxx) | D/D | (1,521.81) | |
| 05/14/2004 | | E | Company (Paymaxx) | P/R Taxes | (413.93) | |
| 05/28/2004 | | E | Company (Paymaxx) | P/R Fee | (44.37) | |
| 05/28/2004 | | E | Company (Paymaxx) | D/D | (1,521.83) | |
| 05/28/2004 | | E | Company (Paymaxx) | P/R Taxes | (421.30) | |
| 06/15/2004 | | E | Company (Paymaxx) | P/R Fee | (33.00) | |
| 06/15/2004 | | E | Company (Paymaxx) | D/D | (1,707.96) | |
| 06/28/2004 | | E | Company (Paymaxx) | P/R Taxes | (463.02) | |
| 06/28/2004 | | E | Company (Paymaxx) | P/R Fee | (33.00) | |
| 06/28/2004 | | E | Company (Paymaxx) | P/R Taxes | (483.39) | |
| 06/28/2004 | | E | Company (Paymaxx) | D/D | (1,707.95) | |
| 07/15/2004 | | E | Company (Paymaxx) | P/R Fee | (33.00) | |
| 07/15/2004 | | E | Company (Paymaxx) | D/D | (1,710.47) | |
| 07/15/2004 | | E | Company (Paymaxx) | P/R Taxes | (488.97) | |
| 07/20/2004 | | E | Company (Paymaxx) | P/R Taxes | (26.83) | |
| 07/30/2004 | | E | Company (Paymaxx) | P/R Fee | (33.00) | |
| 07/30/2004 | | E | Company (Paymaxx) | D/D | (1,710.47) | |
| 07/30/2004 | | E | Company (Paymaxx) | P/R Taxes | (459.42) | |
| 08/13/2004 | | E | Company (Paymaxx) | P/R Fee | (33.00) | |
| 08/13/2004 | | E | Company (Paymaxx) | D/D | (1,710.47) | |
| 08/13/2004 | | E | Company (Paymaxx) | P/R Taxes | (459.12) | |
| 08/27/2004 | 11351 | E | David Winzeler | Commissions for 1/1/04- 7/26/04 | (351.00) | |
| 08/31/2004 | | E | Company (Paymaxx) | P/R Fee | (40.36) | |
| 08/31/2004 | | E | Company (Paymaxx) | D/D | (1,710.46) | |
| 08/31/2004 | | E | Company (Paymaxx) | P/R Taxes | (486.86) | |
| 09/15/2004 | | E | Company (Paymaxx) | P/R Fee | (32.00) | |
| 09/15/2004 | | E | Company (Paymaxx) | D/D | (1,710.46) | |
| 09/15/2004 | | E | Company (Paymaxx) | P/R Taxes | (432.16) | |
| 09/30/2004 | | E | Company (Paymaxx) | P/R Fee | (32.00) | |
| 09/30/2004 | | E | Company (Paymaxx) | D/D | (1,534.10) | |
| 09/30/2004 | | E | Company (Paymaxx) | P/R Taxes | (428.36) | |
| 10/15/2004 | | E | Company (Paymaxx) | P/R Fee | (32.00) | |
| 10/15/2004 | | E | Company (Paymaxx) | D/D | (1,710.48) | |
| 10/15/2004 | | E | Company (Paymaxx) | P/R Taxes | (427.44) | |
| 10/29/2004 | | E | Company (Paymaxx) | P/R Fee | (32.00) | |
| 10/29/2004 | | E | Company (Paymaxx) | D/D | (1,710.45) | |
| 11/16/2004 | | E | Company (Paymaxx) | P/R Taxes | (423.66) | |
| 11/16/2004 | | E | Company (Paymaxx) | P/R Fee | (32.00) | |
| 11/16/2004 | | E | Company (Paymaxx) | P/R | (1,710.47) | |
| 11/16/2004 | | E | Company (Paymaxx) | | (423.63) | |
| 11/30/2004 | | E | Company (Paymaxx) | P/R Fee | (39.56) | |
| 11/30/2004 | | E | Company (Paymaxx) | D/D | (1,710.48) | |

EXHIBIT I

# CHICAGOLAND BARBEQUE INC
## PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Sort | Payee | Description | Amount | Total |
|---|---|---|---|---|---|---|
| 11/30/2004 | | E | Compupay (Paymaxx) | | (423.61) | |
| 12/15/2004 | | E | Compupay (Paymaxx) | P/R Fee | (32.00) | |
| 12/15/2004 | | E | Compupay (Paymaxx) | D/D | (1,710.46) | |
| 12/15/2004 | | E | Compupay (Paymaxx) | | (423.64) | |
| 12/31/2004 | | E | Compupay (Paymaxx) | P/R Fee | (35.00) | |
| 12/31/2004 | | E | Compupay (Paymaxx) | D/D | (1,710.45) | |
| 12/31/2004 | | E | Compupay (Paymaxx) | | (423.67) | |
| 12/31/2004 | | E | Compupay (Paymaxx) | P/R Fee | (32.00) | (52,696.96) |
| 01/09/2004 | 11140 | EI | Michael Dice | Expenses For July 2003 | (385.00) | |
| 01/20/2004 | 11156 | EI | Michael Dice | Expenses For June 2003 | (390.20) | |
| 01/30/2004 | 50066 | EI | Elizabeth Ryles | P/R | (31.95) | |
| 01/30/2004 | 11165 | EI | Michael Dice | Expenses For May 2003 | (391.80) | |
| 02/13/2004 | 50067 | EI | Elizabeth Ryles | P/R Manual Ck | (47.94) | |
| 02/27/2004 | 50069 | EI | Elizabeth Ryles | P/R Manual Ck | (95.24) | |
| 03/05/2004 | 11202 | EI | Michael Dice | | (17,800.00) | |
| 03/10/2004 | 11203 | EI | Matthew & Nicholia English | | (17,800.00) | |
| 03/15/2004 | 50072 | EI | Elizabeth Ryles | P/R Manual Ck | (95.26) | |
| 03/31/2004 | 50074 | EI | Elizabeth Ryles | P/R Manual Ck | (157.07) | |
| 04/02/2004 | 11226 | EI | Elizabeth Ryles | Expenses thru 3/15/03 | (35.00) | |
| 04/15/2004 | 50078 | EI | Elizabeth Ryles | P/R Manual Ck | (110.70) | |
| 05/28/2004 | 50080 | EI | Elizabeth Ryles | P/R Manual Ck | (63.91) | |
| 06/04/2004 | 11271 | EI | Elizabeth Ryles - | Expenses thru 5/4/03 | (35.00) | |
| 06/15/2004 | 50084 | EI | Elizabeth Ryles | P/R Manual Ck | (63.90) | |
| 06/15/2004 | 11286 | EI | Elizabeth Ryles | Expenses thru 5/4/03 | (47.93) | |
| 06/30/2004 | 50085 | EI | Elizabeth Ryles | P/R Manual Ck for 12/04 | (157.08) | |
| 07/15/2004 | 50090 | EI | Elizabeth Ryles | | (211.17) | |
| 07/23/2004 | 11323 | EI | Elizabeth Ryles | | (63.00) | |
| 07/30/2004 | 50093 | EI | Elizabeth Ryles | | (110.71) | |
| 08/13/2004 | 50094 | EI | Elizabeth Ryles | Manual Ck | (126.17) | |
| 08/31/2004 | 50095 | EI | Elizabeth Ryles | Manual Ck | (249.81) | |
| 09/10/2004 | 11364 | EI | Elizabeth Ryles | Expenses thru 8/23/04 | (29.99) | |
| 09/13/2004 | 11371 | EI | Michelle Dice | 2004 Scholarship Recipient | (1,500.00) | |
| 09/17/2004 | 11375 | EI | Elizabeth Ryles - | Expenses thru 8/31/04 | (48.66) | |
| 10/08/2004 | 11392 | EI | Elizabeth Ryles - | Expenses thru 9/16/04 | (35.00) | |
| 10/11/2004 | | EI | Elizabeth Ryles- | Manual Ck | 157.70 | |
| 12/27/2004 | 1723 | EI | Elizabeth Ryles- | 73995 | 435.00 | (39,489.79) |
| 02/13/2004 | 50068 | H | Mark A. Hulbert, Jr. | P/R Manual Ck | (341.04) | |
| 02/27/2004 | 50070 | H | Mark A. Hulbert, Jr. | P/R Manual Ck | (341.03) | |
| 03/15/2004 | 50071 | H | Mark A. Hulbert, Jr. | P/R Manual Ck | (341.04) | |
| 03/31/2004 | 50073 | H | Mark A. Hulbert, Jr. | P/R Manual Ck | (341.03) | |
| 04/15/2004 | 50077 | H | Mark A. Hulbert, Jr. | P/R Manual Ck | (341.04) | |
| 04/30/2004 | 50079 | H | Mark A. Hulbert, Jr. | P/R Manual Ck | (176.35) | |
| 09/30/2004 | 50097 | H | Mark A. Hulbert, Jr. | P/R Manual Ck | (176.35) | (2,057.88) |
| 02/11/2004 | 11176 | I | Carla Oglesby | | (17,800.00) | |
| 02/11/2004 | 11175 | I | Joshua Pondexter | | (21,000.00) | |
| 02/23/2004 | 11189 | I | White Oglesby | | (17,800.00) | |
| 02/26/2004 | 11191 | I | Trevor Aguel | | (17,800.00) | (61,900.00) |
| 05/28/2004 | | I | Kurt Erickson | Deposit | 5,000.00 | |
| 06/14/2004 | | I | Krista Harris | (For CFMC) Pmt. deposited directly to CBL | 5,000.00 | |
| 06/28/2004 | | I | Krista Harris | (For CFMC) Pmt. deposited directly to CBL | 2,500.00 | |

EXHIBIT I

## CHICAGOLAND BARBEQUE INC
### PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Sort | Payee | Description | Amount | Total |
|---|---|---|---|---|---|---|
| 01/16/2004 | | INS | Ohio National Life | | (188.58) | |
| 01/27/2004 | | INS | Pacific Life | | (1,399.21) | |
| 01/30/2004 | | INS | The First Rehab Life Ins. Co. of America | | (1,250.00) | |
| 01/31/2004 | 11160 | INS | Ohio National Life | 2 Mth. Coverage (Executive Benefit) | (56.05) | |
| 02/19/2004 | 11182 | INS | Ohio National Life | Payment for Policy #: ████ (Jan) | (188.58) | |
| 02/29/2004 | | INS | Ohio National Life | Payment for Policy #: ████ (Jan) | (56.05) | |
| 03/17/2004 | | INS | Ohio National Life | Payment for Policy #: ████ (Jan) | (188.58) | |
| 03/31/2004 | | INS | Ohio National Life | Payment for Policy #: ████ (Jan) | (56.05) | |
| 04/16/2004 | | INS | Ohio National Life | Payment for Policy #: ████ (Jan) | (188.58) | |
| 04/30/2004 | | INS | Ohio National Life | Payment for Policy #: ████ (Jan) | (56.05) | |
| 05/18/2004 | | INS | Ohio National Life | Life Ins. for DLC | (188.58) | |
| 05/31/2004 | | INS | Ohio National Life | Payment for Policy #: ████ (Jan) | (56.05) | |
| 06/17/2004 | | INS | Ohio National Life | | (188.58) | |
| 06/30/2004 | | INS | Ohio National Life | Payment for Policy #: ████ (Jan) | (56.05) | |
| 07/16/2004 | | INS | Ohio National Life | | (188.58) | |
| 07/31/2004 | | INS | Ohio National Life | Payment for Policy #: ████ (Jan) | (56.05) | |
| 08/18/2004 | | INS | Ohio National Life | | (188.58) | |
| 08/31/2004 | | INS | Ohio National Life | Payment for Policy #: ████ (Jun) | (56.05) | |
| 09/15/2004 | | INS | Ohio National Life | | (188.58) | |
| 09/30/2004 | | INS | Ohio National Life | Payment for Policy #: ████ (Jun) | (56.05) | |
| 10/18/2004 | | INS | Ohio National Life | Payment for Policy #: ████ (Jun) | (188.58) | |
| 10/31/2004 | | INS | Ohio National Life | Payment for Policy #: ████ (Jun) | (56.05) | |
| 11/16/2004 | | INS | Ohio National Life | Payment for Policy #: ████ (Jun) | (188.58) | |
| 11/30/2004 | | INS | Ohio National Life | Payment for Policy #: ████ (Jun) | (56.05) | |
| 12/16/2004 | | INS | Ohio National Life | Payment for Policy #: ████ (Jun) | (188.58) | |
| 12/31/2004 | | INS | Ohio National Life | Payment for Policy #: ████ (Jun) | (56.05) | (5,584.77) |
| 06/07/2004 | | M | | Purchase of 2,000 common A shares from Kurt & Ginny Erickson | 6,000.00 | 6,000.00 |
| 01/09/2004 | 11144 | P | Russel G. Winick & Associates, P.C. | VOID: Inv.#: 13194 (Ck was returned, they say we owe $0) | | |
| 02/10/2004 | 11174 | P | Russel G. Winick & Associates, P.C. | Inv.#: 14261 | (26.98) | |
| 02/26/2004 | 11190 | P | Taylor, Cheeks & Associates, Ltd. | Inv.#: 1026 | (250.00) | |
| 05/25/2004 | 11266 | P | Russel G. Winick & Associates, P.C. | Inv.#: 14428 | (104.00) | |
| 07/09/2004 | 11318 | P | Russel G. Winick & Associates, P.C. | Inv.#: 14528 | (42.00) | |
| 09/13/2004 | 11372 | P | Taylor, Cheeks & Associates, Ltd. | Fee for 2003 Tax Preparation (Inv.#: 1168) | (500.00) | |
| 09/20/2004 | 11381 | P | S.J. Kerr, Ltd | | (2,000.00) | |
| 12/03/2004 | 11429 | P | Russel G. Winick & Associates, P.C. | Inv.#: 14745 | (31.50) | |
| 12/28/2004 | 11444 | P | Russel G. Winick & Associates, P.C. | Inv.#: 14806 | (262.50) | (3,216.98) |
| 01/05/2004 | 59355 | R | Lipari Distributors | Inv.#'s: 73921 & 73922 | 8,343.11 | |
| 01/09/2004 | 11141 | R | Nash Finch Company- | 1st Pmt. to Reimburse for Ck #: 60464748 | (250.00) | |
| 01/12/2004 | 43710 | R | Service Foods, Inc. | Inv.#: 73926 | 2,980.02 | |
| 01/12/2004 | 1320592 | R | US Food Service-Glen Dale Hgts | | 3,080.62 | |
| 01/15/2004 | 03321214 | R | US Food Service-Detroit | Inv.#: 73911 | 822.66 | |
| 01/16/2004 | 03323913 | R | US Food Service-Detroit | | 507.87 | |
| 01/19/2004 | 03325651 | R | US Food Service-Detroit | Inv.#: 73928 | 4,170.18 | |
| 01/20/2004 | 11157 | R | Nash Finch Company- | 1st Pmt. to Reimburse for Ck #: ████ | (250.00) | |
| 01/30/2004 | 11166 | R | Nash Finch Company- | Reimbursement for Ck #: ████ | (250.00) | |
| 02/10/2004 | 11173 | R | Nash Finch Company- | To Reimburse for Ck #: ████ | (250.00) | |
| 02/20/2004 | | R | Lipari Distributors | VOID: P.O. #: 230056 | | |
| 02/23/2004 | 11187 | R | Nash Finch Company- | Pmt. to Reimburse for Ck #: ████ | (250.00) | |
| 02/26/2004 | 137194 | R | US Food Service-Glen Dale Hgts | Inv.#'s: 73931 & 73934 | 3,211.54 | |
| 03/04/2004 | 11198 | R | L&L Foods, Inc. | VOID: Inv.#: 245976 | - | |

EXHIBIT I

40

# CHICAGOLAND BARBEQUE INC
## PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Sort | Payee | Description | Amount | Total |
|---|---|---|---|---|---|---|
| 03/04/2004 | 11200 | R | Nash Finch Company- | 1st Pmt. to Reimburse for Ck #: ▬ | (500.00) | |
| 03/11/2004 | 050708 | R | L&L Foods Inc. | Inv #: 73936 | 2,412.34 | |
| 03/12/2004 | 11211 | R | Nash Finch Company- | 1st Pmt. to Reimburse for Ck #: ▬ | (250.00) | |
| 03/16/2004 | 048819 | R | Sutherlands Service Inc. | Inv.#: 73932 | 2,135.00 | |
| 03/18/2004 | 011208 | R | Lipari Distributors | Inv.#: 73933 | 5,855.91 | |
| 03/19/2004 | 11221 | R | Nash Finch Company- | 1st Pmt. to Reimburse for Ck #: ▬ | (250.00) | |
| 04/02/2004 | 11229 | R | Nash Finch Company- | 1st Pmt. to Reimburse for Ck #: ▬ | (250.00) | |
| 04/05/2004 | | R | Cognitive Mechanicls Consulting | | 14,613.90 | |
| 04/05/2004 | 1417472 | R | US Food Service-Glen Dale Hgts | Inv.#: 73938 | 5,077.86 | |
| 04/09/2004 | 11235 | R | Nash Finch Company- | To Reimburse for Ck #: ▬ | (250.00) | |
| 04/12/2004 | 012401 | R | Lipari Distributors | Inv.#: 73939 | 5,219.63 | |
| 04/16/2004 | 11239 | R | Nash Finch Company- | 1st Pmt. to Reimburse for Ck #: ▬ | (250.00) | |
| 04/19/2004 | 49660 | R | Sutherlands Service Inc. | Inv.#: 73944 | 2,441.00 | |
| 04/19/2004 | 03422065 | R | US Food Service-Detroit | Inv. #: 73941 | 4,024.08 | |
| 04/23/2004 | 11246 | R | Nash Finch Company- | Pmt. to Reimburse for Ck #: ▬ | (250.00) | |
| 04/30/2004 | 11249 | R | Nash Finch Company- | To Reimburse for Ck #: ▬ | (250.00) | |
| 05/14/2004 | 11255 | R | Nash Finch Company- | To Reimburse for Ck #: ▬ | (250.00) | |
| 05/24/2004 | 015249 | R | Lipari Distributors | | 3,974.49 | |
| 05/24/2004 | 1472116 | R | US Food Service-Glen Dale Hgts | | 2,902.27 | |
| 05/25/2004 | 11265 | R | Nash Finch Company- | 1st Pmt. to Reimburse for Ck #: ▬ | (195.43) | |
| 06/01/2004 | 015516 | R | Lipari Distributors | | 1,797.00 | |
| 06/01/2004 | 015770 | R | Lipari Distributors | | 1,946.75 | |
| 06/07/2004 | 1487512 | R | Sutherlands Service Inc. | | 3,360.00 | |
| 06/07/2004 | 1487512 | R | US Food Service-Glen Dale Hgts | | 3,283.78 | |
| 06/23/2004 | | R | Houston Rodgers | | 5,000.00 | |
| 06/29/2004 | 050875 | R | Sutherlands Service Inc. | | 2,835.00 | |
| 06/29/2004 | 0494347 | R | US Food Service-Detroit | | 2,161.85 | |
| 06/30/2004 | 017837 | R | Lipari Distributors | | 5,736.77 | |
| 07/12/2004 | 03506294 | R | US Food Service-Detroit | | 1,459.60 | |
| 07/15/2004 | 0351876 | R | US Food Service-Detroit | | 5,904.46 | |
| 07/16/2004 | 018790 | R | Lipari Distributors | | 3,361.41 | |
| 07/23/2004 | 019555 | R | Lipari Distributors | Deposit | 1,968.07 | |
| 07/23/2004 | 1539780 | R | US Food Service-Glen Dale Hgts | | 6,120.82 | |
| 08/05/2004 | 1555086 | R | US Food Service-Glen Dale Hgts | (1,000 Deduction taken ?? Cld for back-up info. | 2,234.60 | |
| 08/09/2004 | 73970 | R | US Food Service-Glen Dale Hgts | Inv.#: 73970 | 3,342.60 | |
| 08/13/2004 | 020985 | R | Lipari Distributors | Inv.#: 73972 | 1,797.00 | |
| 08/26/2004 | 1578417 | R | US Food Service-Detroit | ▬ | 8,087.16 | |
| 08/30/2004 | 03554923 | R | US Food Service-Detroit | ▬ | 5,590.65 | |
| 09/12/2004 | | R | Della | Deposit | 65.00 | |
| 09/13/2004 | 023103 | R | Lipari Distributors | Deposit | 5,454.28 | |
| 10/15/2004 | | R | Endeavor | Deposit | 442.50 | |
| 10/21/2004 | 025408 | R | Lipari Distributors | ▬ | 3,134.50 | |
| 11/01/2004 | 03615534 | R | US Food Service-Detroit | ▬ | 5,713.47 | |
| 11/04/2004 | 1665353 | R | US Food Service-Glen Dale Hgts | Inv #: 73987 | 3,171.23 | |
| 11/10/2004 | 026720 | R | Lipari Distributors | ▬ | 6,005.21 | |
| 11/15/2004 | 1674029 | R | US Food Service-Glen Dale Hgts | ▬ | 6,822.90 | |
| 12/10/2004 | 029317 | R | Lipari Distributors | Inv #: 73990 | 1,687.00 | |
| 12/17/2004 | 029530 | R | Lipari Distributors | ▬ | 4,265.13 | |
| 02/17/2004 | | RP | Chicagoland Foods Military Consortium | Pmt toward Sell of Military Acct. | 38,800.00 | |
| 02/26/2004 | | RP | | Deposit | 40,600.00 | |
| | | | | | | 170,575.79 |

EXHIBIT 1

# CHICAGOLAND BARBEQUE INC
## PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Sort | Payee | Description | Amount | Total |
|---|---|---|---|---|---|---|
| 03/10/2004 | | RP | Chicagoland Foods Military Consortium | Deposit | 35,600.00 | |
| 03/31/2004 | | RP | Chicagoland Foods Military Consortium | Deposit | 5,000.00 | |
| 06/14/2004 | | RP | Chicagoland Foods Military Consortium | Deposit was supposed to go to CPMC. | 37.00 | |
| 06/14/2004 | | RP | Chicagoland Foods Military Consortium | Deposit was supposed to go to CPMC. | 16,752.85 | |
| 06/17/2004 | | RP | Chicagoland Foods Military Consortium | Transfer | 2,204.00 | |
| 06/23/2004 | | RP | Chicagoland Foods Military Consortium | Transfer | 6,500.00 | |
| 06/24/2004 | | RP | Chicagoland Foods Military Consortium | Transfer | 1,000.00 | |
| 07/21/2004 | | RP | Chicagoland Foods Military Consortium | Transfer | 2,500.00 | |
| 07/26/2004 | | RP | Chicagoland Foods Military Consortium | Transfer | (2,500.00) | |
| 09/10/2004 | | RP | Chicagoland Barbecue, Inc. | Sysco Ck Deposited into Wrong Acct. | 11,960.40 | |
| 09/22/2004 | | RP | Chicagoland Foods Military Consortium | Deposit | 5,000.00 | |
| 09/24/2004 | | RP | Chicagoland Foods Military Consortium | Deposit | 5,000.00 | |
| 09/30/2004 | | RP | Chicagoland Foods Military Consortium | Deposit | 5,000.00 | |
| 10/06/2004 | | RP | Chicagoland Foods Military Consortium | Deposit | 5,000.00 | |
| 10/14/2004 | | RP | Chicagoland Foods Military Consortium | Deposit | 6,000.00 | |
| 11/02/2004 | | RP | Chicagoland Barbecue, Inc. | Deposit | 6,000.00 | |
| 11/09/2004 | | RP | Chicagoland Barbecue, Inc. | Deposit | 6,000.00 | |
| 12/01/2004 | | RP | Chicagoland Barbecue, Inc. | Deposit | 5,000.00 | |
| 12/06/2004 | | RP | Chicagoland Barbecue, Inc. | Deposit | 25,000.00 | |
| 12/17/2004 | | RP | Chicagoland Barbecue, Inc. | Deposit | 3,000.00 | 228,454.25 |
| 11/29/2004 | 11426 | T | IL Secretary of State | Annual report franchise tax & filing fees Corp File #: D | (446.31) | (446.31) |
| 01/05/2004 | 209525 | V | Abbott Sysco | Inv.#: 73924 | 2,630.48 | |
| 01/05/2004 | | V | Pre-Paid Legal Services | | (75.00) | |
| 01/07/2004 | 209828 | V | Abbott Sysco | | 2,742.75 | |
| 01/09/2004 | 11135 | V | Advanta Business Cards | Acct.#: | (500.00) | |
| 01/09/2004 | 11136 | V | Advantage Wams | Inv.#: cb119 (Quarterly Installment) | (165.00) | |
| 01/09/2004 | 11142 | V | Peer Foods | Inv.#: 00162127 | (500.00) | |
| 01/09/2004 | 11143 | V | Premium Protein Produces-Denison | Inv.#: 222 | (110.50) | |
| 01/20/2004 | 11146 | V | Acosta-MI | 11/16/03-12/15/03 | (637.09) | |
| 01/20/2004 | 11147 | V | Advanta Business Cards | Acct.#: | (1,000.00) | |
| 01/20/2004 | 11148 | V | Ashland Cold Storage | Inv.#: 59015 | (29.00) | |
| 01/20/2004 | 11149 | V | FFE Transportation Services | Inv.#: 1690357 | (334.40) | |
| 01/20/2004 | 11151 | V | Gordon Food Service- | Inv.#: 0000044088 | (160.00) | |
| 01/20/2004 | 11152 | V | Gordon Food Service- | Inv.#: 0000061996 | (100.00) | |
| 01/20/2004 | 11153 | V | JBJ Sales & Associates | Brokerage from 11/16-12/15 | (274.28) | |
| 01/20/2004 | 11154 | V | Litehouse Foods | Inv.#: 497153 | (500.00) | |
| 01/20/2004 | 11158 | V | Peer Foods | Inv.#: 00162127 | (687.50) | |
| 01/30/2004 | 11161 | V | Acosta-MI | Pmt. for P.O.#'s: 217789, 216893, 213099 & 212087 | (1,192.17) | |
| 01/30/2004 | 11162 | V | Advanta Business Cards | Acct.#: | (500.00) | |
| 01/30/2004 | 11163 | V | Litehouse Foods | Inv.#: 497153 | (1,362.52) | |
| 02/04/2004 | 11167 | V | Home Market Foods- | Final Pmt on Inv.#: 3234, 3282 & Partial Pmt. on 3324 | (6,700.00) | |
| 02/04/2004 | | V | Pre-Paid Legal Services | | (75.00) | |
| 02/09/2004 | 11168 | V | Home Market Foods- | Final Pmt. on 3324, Partial Pmt. on 3307 | (5,100.00) | |
| 02/10/2004 | 11169 | V | Advanta Business Cards | Acct.#: | (1,004.93) | |
| 02/23/2004 | 11183 | V | Advanta Business Cards | Acct.#: | (500.00) | |
| 02/23/2004 | 11184 | V | Ashland Cold Storage | Inv.#: 59493 | (44.00) | |
| 02/23/2004 | 11185 | V | Litehouse Foods | Inv.#'s: 497493 & 497494 | (133.50) | |
| 02/23/2004 | 11188 | V | United Parcel Service | Inv.#: 0000F371A2064 | (21.72) | |
| 02/27/2004 | | V | Premium Protien Produces-Denison | | (2,259.28) | |
| 03/03/2004 | 11193 | V | Pre-Paid Legal Services | Inv.#: 385 | (75.00) | |

EXHIBIT I

42

# CHICAGOLAND BARBEQUE INC
## PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Sort | Payee | Description | Amount | Total |
|---|---|---|---|---|---|---|
| 03/04/2004 | 11194 | V | Advanta Business Cards | Acct.#: | (500.00) | |
| 03/04/2004 | 11195 | V | Advantage Wams | Inv.#: cb120 (Quarterly Installment) | (135.00) | |
| 03/04/2004 | 11196 | V | FFE Transportation Services | Inv.#: 1734478 | (196.56) | |
| 03/04/2004 | 11201 | V | Premium Protien Products–Denison | Inv.#: 423 | (1,490.88) | |
| 03/11/2004 | 212120 | V | Abbott Sysco | Inv.#: 73930 | 1,997.52 | |
| 03/12/2004 | 11204 | V | Advanta Business Cards | Acct.#: | (500.00) | |
| 03/12/2004 | 11207 | V | FFE Transportation Services | Inv.#: 1737336 | (167.25) | |
| 03/12/2004 | 11208 | V | FFE Transportation Services | Inv.#: 1737335 | (193.38) | |
| 03/12/2004 | 11209 | V | FFE Transportation Services | Inv.#: 1737334 | (278.20) | |
| 03/16/2004 | 11213 | V | Home Market Foods– | (Inv. 3307 Final Pmt.) (Inv. 3367 Partial Pmt.) | (4,075.00) | |
| 03/19/2004 | 11215 | V | Advanta Business Cards | Acct.#: | (500.00) | |
| 03/19/2004 | 11216 | V | FFE Transportation Services | Inv.#: 1744546 | (378.25) | |
| 03/19/2004 | 11217 | V | FFE Transportation Services | Inv.#: 1744547 | (177.44) | |
| 03/19/2004 | 11219 | V | JBI Sales & Associates | Brokerage from 1/16-2/15 | (164.97) | |
| 03/29/2004 | 212666 | V | Abbott Sysco | Inv.#:73935 | 2,960.00 | |
| 04/02/2004 | 11223 | V | Advanta Business Cards | Acct.#: | (500.00) | |
| 04/02/2004 | 11224 | V | Advantage Wams | Inv.#: cb121 (Quarterly Installment) | (165.00) | |
| 04/02/2004 | 11227 | V | FFE Transportation Services | Inv.#: 1790552 & 1766063 | (638.02) | |
| 04/02/2004 | 11230 | V | Premium Protien Products–Denison | Inv.#: 492 & 513 | (4,616.70) | |
| 04/09/2004 | 11231 | V | Advanta Business Cards | Acct.#: | (500.00) | |
| 04/09/2004 | 11234 | V | FFE Transportation Services | Inv.#: 1773290 | (258.87) | |
| 04/09/2004 | 11236 | V | Premium Protien Products–Denison | Inv.#: 533 | (2,280.39) | |
| 04/14/2004 | 213537 | V | Abbott Sysco | Inv.#: 73937 | 2,710.00 | |
| 04/16/2004 | 11237 | V | Advanta Business Cards | Acct.#: | (500.00) | |
| 04/20/2004 | 11240 | V | Home Market Foods– | Inv.#: 3402 | (3,852.00) | |
| 04/23/2004 | 11241 | V | Advanta Business Cards | Acct.#: | (250.00) | |
| 04/23/2004 | 11244 | V | FFE Transportation Services | Inv.#: 1790535 | (324.89) | |
| 04/30/2004 | 11247 | V | Advanta Business Cards | Acct.#: | (250.00) | |
| 04/30/2004 | 11248 | V | Kwikwer Trucking | Inv.#: 033104-172 | (162.36) | |
| 05/11/2004 | 11250 | V | Premium Protien Products–Denison | Inv.#: 664 | (2,364.12) | |
| 05/14/2004 | 11251 | V | Advanta Business Cards | Acct.#: | (500.00) | |
| 05/14/2004 | 11254 | V | FFE Transportation Services | Brokerage Pmt. for 2/16-3/15 | (340.38) | |
| 05/25/2004 | 11257 | V | Acosta | Pmt. for P.O.#'s: 230056 & 400612 | (297.99) | |
| 05/25/2004 | 11258 | V | Acosta-MI | | (553.77) | |
| 05/25/2004 | 11259 | V | Advanta Business Cards | Acct.#: | (500.00) | |
| 05/25/2004 | 11260 | V | FFE Transportation Services | Inv.#: 1818513 | (261.58) | |
| 05/25/2004 | 11268 | V | Home Market Foods– | Final Pmt. on 3367, Inv. 3386, 3401 & Partial Pmt. on 3446 | (6,863.50) | |
| 05/25/2004 | 11262 | V | JBI Sales & Associates | Brokerage from 2/16-3/15 | (148.00) | |
| 05/25/2004 | 11263 | V | JBI Sales & Associates | Brokerage from 3/16-4/15 | (141.03) | |
| 05/25/2004 | | V | Pre-Paid Legal Services | | (75.00) | |
| 05/28/2004 | 215202 | V | Abbott Sysco | Inv.73946 & 73951 | 3,517.40 | |
| 06/03/2004 | 11269 | V | Pre-Paid Legal Services | | (75.00) | |
| 06/04/2004 | 11272 | V | Advanta Business Cards | Acct.#: | (500.00) | |
| 06/04/2004 | 11273 | V | FFE Transportation Services | Inv.#: 1819938 | (221.60) | |
| 06/04/2004 | 11275 | V | Litehouse Foods | Inv.#: 505377 | (1,041.56) | |
| 06/04/2004 | 11276 | V | Premium Protien Products–Denison | Inv.#: 747 | (2,790.40) | |
| 06/14/2004 | 11276 | V | Advanta Business Cards | Acct.#: | (500.00) | |
| 06/14/2004 | 11282 | V | Home Market Foods– | Inv.#: (3446 Final Pmt.), Inv.#: 3479 &. (Inv. #: 3520 Partial Pmt.) | (7,539.50) | |
| 06/14/2004 | 11280 | V | Litehouse Foods | Inv.#: 506334 & 506430 | (1,151.40) | |
| 06/14/2004 | 11281 | V | Premium Protien Products–Denison | Inv.#: 807 | (1,369.63) | |

EXHIBIT I

# CHICAGOLAND BARBEQUE INC
## PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Sort | Payee | Description | Amount | Total |
|---|---|---|---|---|---|---|
| 06/21/2004 | 11287 | V | Advanta Business Cards | Acct.#: | (500.00) | |
| 06/21/2004 | 11289 | V | H.P. Distributors | Inv.#: 611 | (387.50) | |
| 06/21/2004 | 11291 | V | Premium Protien Products-Denison | Inv.#: 824 | (2,436.62) | |
| 06/29/2004 | 216492 | V | Abbott Sysco | Inv.#: 73953 | 2,943.75 | |
| 07/01/2004 | 1407 | V | Windy City Thunderbolts | | 735.00 | |
| 07/02/2004 | 11285 | V | Acosta-MI | April 16-May 15 | (349.97) | |
| 07/02/2004 | 11292 | V | Advanta Business Cards | Acct.#: | (500.00) | |
| 07/02/2004 | 11294 | V | FFE Transportation Services | Inv.#:185900 | (266.27) | |
| 07/02/2004 | 11295 | V | FFE Transportation Services | Inv.#:1855901 | (385.01) | |
| 07/02/2004 | 11296 | V | FFB Transportation Services | Inv.#:185902 | (248.60) | |
| 07/02/2004 | 11298 | V | JBJ Sales & Associates | Brokerage from 4/16-5/15 | (215.35) | |
| 07/02/2004 | 11300 | V | Mullins Food Products | Inv.#: 0000F371A2064 | (716.04) | |
| 07/02/2004 | 11304 | V | United Parcel Service | Inv.#: 0000F371A2064 | (8.69) | |
| 07/02/2004 | 11305 | V | United Parcel Service | | (24.41) | |
| 07/06/2004 | | V | Pre-Paid Legal Services | | (75.00) | |
| 07/09/2004 | 11307 | V | Advanta Business Cards | Acct.#: | (250.00) | |
| 07/09/2004 | 11308 | V | Advantage Warns | Inv.#: cb121 (Quarterly Installment) | (165.00) | |
| 07/09/2004 | 11312 | V | FFE Transportation Services | Inv.#: 1871549 | (248.60) | |
| 07/12/2004 | 1477 | V | Windy City Thunderbolts | | 175.00 | |
| 07/16/2004 | 11320 | V | Premium Protien Products-Denison | | (8,460.73) | |
| 07/23/2004 | 11321 | V | Acosta-MI | 5/16-6/15 | (286.84) | |
| 07/23/2004 | 11322 | V | Advanta Business Cards | Acct.#: | (500.00) | |
| 07/23/2004 | 11324 | V | JBJ Sales & Associates | Brokerage from 5/16-6/15 | (151.43) | |
| 07/23/2004 | 11328 | V | Litehouse Foods | Inv.#: 510379 | (816.13) | |
| 08/03/2004 | 11330 | V | Premium Protien Products-Denison | Inv.#: 958 | (2,430.00) | |
| 08/03/2004 | | V | Pre-Paid Legal Services | | (75.00) | |
| 08/04/2004 | 217840 | V | Abbott Sysco | | 2,984.25 | |
| 08/04/2004 | 11331 | V | Advanta Business Cards | Acct.#: | (500.00) | |
| 08/04/2004 | 11334 | V | Litehouse Foods | Inv.#: 511364 | (1,117.07) | |
| 08/06/2004 | 11336 | V | Advanta Business Cards | Acct.#: | (250.00) | |
| 08/06/2004 | 11337 | V | Kwikmen Trucking | Inv.#: 071404-252 | (145.19) | |
| 08/13/2004 | 11339 | V | Birchwood Foods | Inv.#: 120446 | (2,800.00) | |
| 08/20/2004 | 11340 | V | Acosta-MI | Brokerage for 6/16-7/15 | (272.90) | |
| 08/20/2004 | 11341 | V | Advanta Business Cards | Acct.#: | (250.00) | |
| 08/20/2004 | 11342 | V | Ashland Cold Storage | Inv.#: 62152 | (21.00) | |
| 08/20/2004 | 11345 | V | JBJ Sales & Associates | Brokerage for 6/16-7/15 | (151.43) | |
| 08/24/2004 | 11348 | V | Premium Protien Products-Denison | Inv.#: 1039 | (5,929.02) | |
| 08/24/2004 | 11349 | V | Premium Protien Products-Denison | Inv.#: 1073 | (2,573.00) | |
| 08/25/2004 | 218546 | V | Abbott Sysco | | 2,955.65 | |
| 08/27/2004 | 11350 | V | Birchwood Foods | Inv.#: 121235 | (2,800.00) | |
| 08/27/2004 | 11352 | V | FFB Transportation Services | Inv.#: 1924770 | (439.16) | |
| 08/27/2004 | 11354 | V | Twirl Advertising & Design | Inv.#: 2004-19 | (2,185.00) | |
| 09/03/2004 | 11355 | V | Advanta Business Cards | Acct.#: | (500.00) | |
| 09/03/2004 | 11358 | V | Kwikmen Trucking | Inv.#: 080404-320 | (146.50) | |
| 09/03/2004 | 11359 | V | Kwikmen Trucking | Inv.#: 081804-86 | (147.80) | |
| 09/03/2004 | 11360 | V | Litehouse Foods | Inv.#: 511590 | (2,289.14) | |
| 09/06/2004 | 1773 | V | Windy City Thunderbolts | | 105.00 | |
| 09/07/2004 | 218985 | V | Abbott Sysco | Acct.#: | 3,010.20 | |
| 09/10/2004 | 11363 | V | Advanta Business Cards | Inv.#: 1940695 | (500.00) | |
| 09/10/2004 | 11365 | V | FFE Transportation Services | | (414.63) | |

EXHIBIT I

44

# CHICAGOLAND BARBEQUE INC
## PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Sort | Payee | Description | Amount | Total |
|---|---|---|---|---|---|---|
| 09/10/2004 | 13368 | V | Windy City Thunder Bolts | (Partial Pmt.) | (250.00) | |
| 09/17/2004 | 13373 | V | Acosta-MI | Brokerage for 7/16-8/15 | (53.91) | |
| 09/17/2004 | 13374 | V | Advanta Business Cards | Acct.#: | (250.00) | |
| 09/17/2004 | 13377 | V | JBI Sales & Associates | Brokerage for 7/16-8/15 | (310.79) | |
| 09/17/2004 | 13378 | V | Litehouse Foods | Inv.#: 511929 | (1,335.00) | |
| 09/17/2004 | 13380 | V | Windy City Thunder Bolts | | (250.00) | |
| 09/24/2004 | 13382 | V | Advanta Business Cards | Acct.#: | (250.00) | |
| 09/24/2004 | 13384 | V | Windy City Thunder Bolts | | (200.00) | |
| 09/30/2004 | 13385 | V | Hecky Powell | | (2,817.00) | |
| 10/01/2004 | 13386 | V | Advanta Business Cards | Acct.#: | (250.00) | |
| 10/01/2004 | 13387 | V | FFE Transportation Services | Inv.#: 1964065 | (288.49) | |
| 10/01/2004 | 13389 | V | Windy City Thunder Bolts | | (150.00) | |
| 10/05/2004 | 13390 | V | Premium Protlen Products-Denison | Inv.#'s: 1233 & 1232 | (5,708.46) | |
| 10/08/2004 | 220079 | V | Abbot Sysco | | 3,129.45 | |
| 10/08/2004 | 13391 | V | Advanta Business Cards | Acct.#: | (150.00) | |
| 10/08/2004 | 13393 | V | Windy City Thunder Bolts | (Final Pmt.) | (80.00) | |
| 10/15/2004 | 13399 | V | Twirl Advertising & Design | Inv.#: 2004-22 | (660.00) | |
| 10/26/2004 | 13400 | V | Advanta Business Cards | Acct.#: | (250.00) | |
| 10/26/2004 | 13401 | V | Birchwood Foods | Inv.#: 123794 | (3,532.50) | |
| 10/26/2004 | 13402 | V | FFE Transportation Services | Inv.#: 1978398 | (253.28) | |
| 10/26/2004 | 13403 | V | H.P. Distributors | Inv.#: 16 | (2,571.48) | |
| 10/26/2004 | 13404 | V | JBI Sales & Associates | Brokerage for 8/16-9/15 | (161.00) | |
| 10/29/2004 | 13406 | V | Acosta-MI | Brokerage for 8/16-9/15 | (277.64) | |
| 10/29/2004 | 13407 | V | Advanta Business Cards | Acct.#: | (99.59) | |
| 10/29/2004 | 13408 | V | Ashland Cold Storage | Inv.#: 81138 | (44.00) | |
| 10/29/2004 | 13409 | V | Birchwood Foods | Inv.#: 124495 | (2,802.50) | |
| 10/29/2004 | 13412 | V | Insight Food Service | | 615.14 | |
| 10/29/2004 | 13413 | V | Twirl Advertising & Design | Inv.#: 2004-22 (2nd Partial Payment) | (660.00) | |
| 11/02/2004 | | V | Merchant Service Fee | Credit Card / Web Fee | (9.95) | |
| 11/05/2004 | 11414 | V | Advanta Business Cards | Acct.#: | (36.19) | |
| 11/05/2004 | 11417 | V | Kwikmen Trucking | Inv.#: 102404-427 | (154.34) | |
| 11/05/2004 | 11419 | V | Premium Protlen Products-Denison | Inv.#: 1362 | (5,214.12) | |
| 11/10/2004 | 221572 | V | Abbot Sysco | | 3,343.30 | |
| 11/12/2004 | 11422 | V | Next Generation Logistics, Inc. | Inv.#: CLF135198 | (263.74) | |
| 11/23/2004 | 11424 | V | Litehouse Foods | Inv.#: 513772 | (967.88) | |
| 11/23/2004 | 11425 | V | Merchant Service Fee | VOID: Merchant #: | | |
| 12/02/2004 | | V | Merchant Service Fee | Credit Card / Web Fee | (25.00) | |
| 12/02/2004 | | V | Merchant Service Fee | Discover Network Settlement | (34.95) | |
| 12/03/2004 | 11427 | V | Acosta-MI | Brokerage for 9/16-10/15 | (162.55) | |
| 12/10/2004 | 11431 | V | Advanta Business Cards | Acct.#: | (19.97) | |
| 12/10/2004 | 11432 | V | Birchwood Foods | Inv.#: 126922 | (1,925.00) | |
| 12/10/2004 | 11434 | V | Hecky's | Inv.#: 71 | (440.00) | |
| 12/10/2004 | 11435 | V | Kwikmen Trucking | Inv.#: 112404-340 | (155.65) | |
| 12/10/2004 | 11439 | V | Premium Protlen Products-Denison | Inv.#: 1457 | (2,549.61) | |
| 12/13/2004 | 222908 | V | Abbot Sysco | | 1,821.51 | |
| 12/28/2004 | 11442 | V | Acosta-MI | Brokerage for 10/16-11/15 | (305.18) | |
| 12/28/2004 | 11443 | V | Next Generation Logistics, Inc. | Inv.#: CLF139498 | (195.72) | |
| 12/30/2004 | 11446 | V | Premium Protlen Products-Denison | Inv.#: 1538 | (2,649.30) | |
| 12/31/2004 | | V | Merchant Service Fee | Credit Card / Web Fee | (34.95) | |
| | | | | | | (119,113.16) |

EXHIBIT 1

# CHICAGOLAND BARBEQUE INC
## PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Sort | Payee | Description | Amount | Total |
|---|---|---|---|---|---|---|
| **2005** | | | | | 7,961.36 | 7,961.36 |
| 01/07/2005 | 11447 | A | Citicorp Vendor Finance, Inc. | Acct.#: ■■■ | (156.96) | |
| 01/14/2005 | 11450 | A | Cingular Wireless | Acct.#: ■■■ | (122.05) | |
| 01/21/2005 | 11457 | A | Ford Credit | Acct.#: ■■■ | (418.78) | |
| 02/04/2005 | 11462 | A | AT&T Wireless | Acct.#: ■■■ | (122.39) | |
| 02/04/2005 | 11466 | A | Citicorp Vendor Finance, Inc. | Acct.#: ■■■ | (156.96) | |
| 02/04/2005 | 11469 | A | Lloyd's Credit | Acct.#: ■■■ | (548.45) | |
| 02/07/2005 | 11471 | A | Midland Insurance Agency | General Liability Ins. Policy | (2,000.00) | |
| 02/15/2005 | 11473 | A | Ford Credit | Acct.#: ■■■ | (418.78) | |
| 03/01/2005 | 11482 | A | Lloyd's Credit | Acct.#: ■■■ | (548.45) | |
| 03/11/2005 | 11487 | A | AT&T Wireless | Acct.#: ■■■ | (122.39) | |
| 03/11/2005 | 11488 | A | Citicorp Vendor Finance, Inc. | Acct.#: ■■■ | (156.96) | |
| 03/11/2005 | 11490 | A | Ford Credit | Acct.#: ■■■ | (439.72) | |
| 04/01/2005 | 11504 | A | Lloyd's Credit | Acct.#: ■■■ | (548.45) | |
| 04/08/2005 | 11512 | A | Cingular Wireless | Acct.#: ■■■ | (122.39) | |
| 04/08/2005 | 11513 | A | Citicorp Vendor Finance, Inc. | Acct.#: ■■■ | (156.96) | |
| 04/18/2005 | 11517 | A | Ford Credit | Acct.#: ■■■ | (418.78) | |
| 04/29/2005 | 11532 | A | Lloyd's Credit | Acct.#: ■■■ | (548.45) | |
| 05/09/2005 | 11536 | A | Cingular Wireless | Acct.#: ■■■ | (122.51) | |
| 05/09/2005 | 11537 | A | Citicorp Vendor Finance, Inc. | Acct.#: ■■■ | (156.96) | |
| 05/13/2005 | | A | Midland Insurance Agency | Deposit | 1,169.00 | |
| 05/16/2005 | 11549 | A | Ford Credit | Acct.#: ■■■ | (418.78) | |
| 06/03/2005 | 11573 | A | Cingular Wireless | Acct.#: ■■■ | (122.49) | |
| 06/03/2005 | 11574 | A | Citicorp Vendor Finance, Inc. | Acct.#: ■■■ | (156.96) | |
| 06/03/2005 | 11576 | A | Lloyd's Credit | Acct.#: ■■■ | (548.45) | |
| 06/14/2005 | 11586 | A | Ford Credit | Acct.#: ■■■ | (418.78) | |
| 06/27/2005 | 11593 | A | Ford Credit | Acct.#: ■■■ (Pay Off) | (434.34) | |
| 07/12/2005 | 11605 | A | Cingular Wireless | Acct.#: ■■■ | (122.49) | |
| 07/12/2005 | 11603 | A | Citicorp Vendor Finance, Inc. | VOID: Acct.#: ■■■ (CK was lost in the mail re-issue date 9/29/0 | - | |
| 07/12/2005 | 11606 | A | Lloyd's Credit | Acct.#: ■■■ | (548.45) | |
| 08/03/2005 | 11627 | A | Cingular Wireless | Acct.#: ■■■ | (122.19) | |
| 08/03/2005 | 11632 | A | Lloyd's Credit | Acct.#: ■■■ | (575.87) | |
| 08/16/2005 | 11640 | A | Citicorp Vendor Finance, Inc. | Acct.#: ■■■ | (174.47) | |
| 08/16/2005 | 11644 | A | Quill | Inv.#: 8511412 | (76.66) | |
| 08/30/2005 | 11661 | A | Lloyd's Credit | Acct.#: ■■■ | (548.45) | |
| 09/09/2005 | 11669 | A | Cingular Wireless | Acct.#: ■■■ | (122.19) | |
| 09/09/2005 | 11670 | A | Citicorp Vendor Finance, Inc. | Acct.#: ■■■ | (156.96) | |
| 09/29/2005 | 11683 | A | Citicorp Vendor Finance, Inc. | Acct.#: ■■■ | (156.96) | |
| 09/30/2005 | 11687 | A | Lloyd's Credit | Acct.#: ■■■ | (548.45) | |
| 10/10/2005 | 11692 | A | Cingular Wireless | Acct.#: ■■■ | (122.19) | |
| 10/10/2005 | 11693 | A | Citicorp Vendor Finance, Inc. | Acct.#: ■■■ | (156.96) | |
| 11/08/2005 | 11714 | A | Citicorp Vendor Finance, Inc. | Acct.#: ■■■ | (156.96) | |
| 12/05/2005 | 11737 | A | Citicorp Vendor Finance, Inc. | Acct.#: ■■■ | (156.96) | |
| 12/09/2005 | | A | SBC | | 134.65 | |
| 01/06/2005 | | BA | Private Bank & Trust Co., The | Ln.#: ■■■ Note#: ■■■ | (890.28) | |
| 01/06/2005 | | BA | Private Bank & Trust Co., The | Ln.#: ■■■ Note#: ■■■ | (4,776.83) | |
| 01/07/2005 | 11449 | BA | Bank of America | Acct.#: ■■■ | (250.00) | |
| 01/07/2005 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| | | | | | | (11,808.75) |

EXHIBIT I

## CHICAGOLAND BARBEQUE INC
## PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Sort | Payee | Description | Amount | Total |
|---|---|---|---|---|---|---|
| 01/14/2005 | 11452 | BA | Bank of America | Acct.#: ▮▮▮ | (250.00) | |
| 01/14/2005 | | BA | | Funds Transfer | 220.77 | |
| 01/18/2005 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 01/19/2005 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 01/21/2005 | 11459 | BA | Bank of America | Acct.#: ▮▮▮ | (20.00) | |
| 01/25/2005 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 01/25/2005 | | BA | Private Bank & Trust Co., The | Maintenance Fee | (96.02) | |
| 01/28/2005 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 01/31/2005 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 02/01/2005 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 02/01/2005 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 02/01/2005 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 02/04/2005 | 11470 | BA | Bank of America | Acct.#: ▮▮▮ | (248.09) | |
| 02/06/2005 | | BA | Private Bank & Trust Co., The | Acct.#: ▮▮▮ (Note: ▮▮▮) | (897.82) | |
| 02/06/2005 | | BA | Private Bank & Trust Co., The | Acct.#: ▮▮▮ (Note: ▮▮▮) | (4,774.04) | |
| 02/11/2005 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 02/14/2005 | | BA | Private Bank & Trust Co., The | Deposit | 3,000.00 | |
| 02/15/2005 | 11474 | BA | Bank of America | Acct.#: ▮▮▮ | (250.00) | |
| 02/15/2005 | | BA | Private Bank & Trust Co., The | Deposit | 5,000.00 | |
| 02/18/2005 | 11478 | BA | Bank of America | Acct.#: ▮▮▮ | (250.00) | |
| 02/23/2005 | | BA | Private Bank & Trust Co., The | Maintenance Fee | (177.78) | |
| 03/04/2005 | 11485 | BA | Bank of America | Acct.#: ▮▮▮ | (250.00) | |
| 03/06/2005 | | BA | Private Bank & Trust Co., The | Acct.#: ▮▮▮ (Note: ▮▮▮) | (848.00) | |
| 03/06/2005 | | BA | Private Bank & Trust Co., The | Acct.#: ▮▮▮ (Note: ▮▮▮) | (4,674.71) | |
| 03/11/2005 | 11491 | BA | Bank of America | Acct.#: ▮▮▮ | (250.00) | |
| 03/11/2005 | | BA | Private Bank & Trust Co., The | Deposit | 60.00 | |
| 03/11/2005 | | BA | Private Bank & Trust Co., The | Deposit | 60.00 | |
| 03/18/2005 | 11496 | BA | Bank of America | Acct.#: ▮▮▮ (Note: ▮▮▮) | (230.00) | |
| 03/22/2005 | | BA | Private Bank & Trust Co., The | Maintenance Fee | (231.47) | |
| 03/25/2005 | 11501 | BA | Bank of America | Acct.#: ▮▮▮ | (250.00) | |
| 04/01/2005 | 11505 | BA | Bank of America | Acct.#: ▮▮▮ | (250.00) | |
| 04/06/2005 | | BA | Private Bank & Trust Co., The | Acct.#: ▮▮▮ (Note: ▮▮▮) | (951.11) | |
| 04/06/2005 | | BA | Private Bank & Trust Co., The | Acct.#: ▮▮▮ (Note: ▮▮▮) | (4,818.94) | |
| 04/18/2005 | 11518 | BA | Bank of America | Acct.#: ▮▮▮ | (118.19) | |
| 04/18/2005 | 11519 | BA | Bank of America | Acct.#: ▮▮▮ | (131.81) | |
| 04/25/2005 | 11524 | BA | Bank of America | Acct.#: ▮▮▮ | (250.00) | |
| 04/26/2005 | | BA | Private Bank & Trust Co., The | Acct.#: ▮▮▮ (Note: ▮▮▮) | (145.77) | |
| 04/29/2005 | 11533 | BA | Bank of America | Acct.#: ▮▮▮ | (250.00) | |
| 05/06/2005 | | BA | Private Bank & Trust Co., The | Acct.#: ▮▮▮ (Note: ▮▮▮) | (4,779.15) | |
| 05/06/2005 | | BA | Private Bank & Trust Co., The | Acct.#: ▮▮▮ (Note: ▮▮▮) | (938.36) | |
| 05/09/2005 | 11540 | BA | Bank of America | Acct.#: ▮▮▮ | (250.00) | |
| 05/16/2005 | 11551 | BA | Bank of America | Acct.#: ▮▮▮ | (250.00) | |
| 05/20/2005 | 11555 | BA | Bank of America | Acct.#: ▮▮▮ | (250.00) | |
| 05/24/2005 | | BA | Private Bank & Trust Co., The | Maintenance Fee | (141.37) | |
| 05/27/2005 | 11563 | BA | Bank of America | Acct.#: ▮▮▮ | (40.90) | |
| 05/27/2005 | 11564 | BA | Bank of America | Acct.#: ▮▮▮ | (209.10) | |
| 06/03/2005 | 11577 | BA | Bank of America | Acct.#: ▮▮▮ | (143.71) | |
| 06/06/2005 | | BA | Private Bank & Trust Co., The | O/D | (30.00) | |
| 06/22/2005 | | BA | Private Bank & Trust Co., The | Maintenance Fee | (185.68) | |
| 06/29/2005 | 11595 | BA | Bank of America | Acct.#: ▮▮▮ | (250.00) | |

**EXHIBIT 1**

CHICAGOLAND BARBEQUE INC
PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Sort | Payee | Description | Amount | Total |
|---|---|---|---|---|---|---|
| 07/12/2005 | 11607 | BA | Bank of America | Acct.#: ▓▓▓▓ | (203.44) | |
| 07/12/2005 | 11608 | BA | Bank of America | Acct.#: ▓▓▓▓ | (46.56) | |
| 07/26/2005 | | BA | Private Bank & Trust Co., The | Maintenance Fee | (195.34) | |
| 07/31/2005 | | BA | Private Bank & Trust Co., The | | (4,812.53) | |
| 07/31/2005 | | BA | Private Bank & Trust Co., The | VOID: Maintenance Fee | | |
| 08/03/2005 | 11633 | BA | Bank of America | Acct.#: ▓▓▓▓ | (246.94) | |
| 08/03/2005 | 11628 | BA | Bank of America | Acct.#: ▓▓▓▓ | (253.06) | |
| 08/08/2005 | | BA | Private Bank & Trust Co., The | Deposit | 4,812.53 | |
| 08/08/2005 | | BA | Private Bank & Trust Co., The | | (4,906.42) | |
| 08/23/2005 | | BA | Private Bank & Trust Co., The | | (185.23) | |
| 09/02/2005 | 11667 | BA | Bank of America | Acct.#: ▓▓▓▓ | (276.93) | |
| 09/16/2005 | | BA | Private Bank & Trust Co., The | Maintenance Fee | (272.89) | |
| 09/22/2005 | | BA | Private Bank & Trust Co., The | Maintenance Fee | (28.44) | |
| 10/17/2005 | 11700 | BA | Bank of America | Acct.#: ▓▓▓▓ | (250.00) | |
| 10/24/2005 | 11704 | BA | Bank of America | Acct.#: ▓▓▓▓ | (193.70) | |
| 10/24/2005 | 11705 | BA | Bank of America | Acct.#: ▓▓▓▓ | (306.30) | |
| 10/25/2005 | | BA | Private Bank & Trust Co., The | Maintenance Fee | (105.26) | |
| 11/08/2005 | 11717 | BA | Bank of America | Acct.#: ▓▓▓▓ | (172.93) | |
| 11/08/2005 | 11718 | BA | Bank of America | Acct.#: ▓▓▓▓ | (77.07) | |
| 11/11/2005 | 11726 | BA | Bank of America | Acct.#: ▓▓▓▓ | (250.00) | |
| 11/16/2005 | | BA | Private Bank & Trust Co., The | Maintenance Fee | (21.49) | |
| 12/12/2005 | 11745 | BA | Bank of America | Acct.#: ▓▓▓▓ | (238.35) | |
| 12/12/2005 | 11749 | BA | Bank of America | Acct.#: ▓▓▓▓ | (11.65) | |
| 12/22/2005 | | BA | Private Bank & Trust Co., The | | (88.23) | |
| 12/31/2005 | | BA | Private Bank & Trust Co., The | Maintenance Fee | 272.89 | (34,035.70) |
| 01/23/2005 | 11454 | D | Monroe Street Church of Christ | | (1,000.00) | |
| 03/25/2005 | 11502 | D | Rockford Professional Baseball, LLC | March 2005 | (200.00) | |
| 04/25/2005 | 11526 | D | Rockford Professional Baseball, LLC | April 2005 | (200.00) | |
| 04/29/2005 | 11528 | D | Diamonds Ladies Softball | | (2,000.00) | |
| 05/11/2005 | 11545 | D | Maine East Athletics Boosters | | (250.00) | |
| 05/26/2005 | 11558 | D | Ogden Lincoln Mercury | Donation | (509.75) | |
| 05/27/2005 | 11565 | D | Rockford Professional Baseball, LLC | May 2005 | (200.00) | |
| 06/03/2005 | 11578 | D | Rockford Professional Baseball, LLC | June 2005 | (150.00) | |
| 06/09/2005 | 11579 | D | Midwest Youth Conference | Contribution to Youth Conference 2005 | (1,000.00) | |
| 06/13/2005 | 11581 | D | Darryl Checks | Car Allowance (April) | (1,200.00) | |
| 06/20/2005 | 11589 | D | A Safe Place | Sponsorship for Holes | (500.00) | |
| 08/02/2005 | 11626 | D | Darryl Checks | Car Allowance (July) | (1,200.00) | |
| 08/16/2005 | 11647 | D | Tatyana Lampkin | | (1,500.00) | |
| 10/20/2005 | 11701 | D | Midwest Lectureship | | (1,500.00) | |
| 12/31/2005 | 11786 | D | Darryl Checks | 2005 Chicagoland Barbecue Scholarship | (6,296.00) | (17,705.75) |
| 01/14/2005 | | E | Compupay (Paymaxx) | Due to Shareholders ($3900) Int. Exp. ($2396) | (32.00) | |
| 01/14/2005 | | E | Compupay (Paymaxx) | P/R Fee | (1,711.09) | |
| 01/14/2005 | | E | Compupay (Paymaxx) | D/D | (459.06) | |
| 01/24/2005 | | E | Compupay (Paymaxx) | W-2's | (24.50) | |
| 01/31/2005 | | E | Compupay (Paymaxx) | | (32.00) | |
| 01/31/2005 | | E | Compupay (Paymaxx) | P/R Fee | (1,711.08) | |
| 01/31/2005 | | E | Compupay (Paymaxx) | D/D | (459.06) | |
| 02/15/2005 | | E | Compupay (Paymaxx) | P/R Taxes | (32.00) | |
| 02/15/2005 | | E | Compupay (Paymaxx) | P/R Fee | (1,708.58) | |
| 02/15/2005 | | E | Compupay (Paymaxx) | D/D | | |
| 02/15/2005 | | E | Compupay (Paymaxx) | P/R Taxes | (461.58) | |

EXHIBIT 1

48

# CHICAGOLAND BARBEQUE INC
## PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Sort | Payer | | Description | Amount | Total |
|---|---|---|---|---|---|---|---|
| 02/28/2005 | | E | Compupay (Paymaxx) | P/R Fee | | (42.50) | |
| 02/28/2005 | | E | Compupay (Paymaxx) | D/D | | (1,708.58) | |
| 02/28/2005 | | E | Compupay (Paymaxx) | P/R Taxes | | (461.58) | |
| 03/15/2005 | | E | Compupay (Paymaxx) | P/R Fee | | (32.00) | |
| 03/15/2005 | | E | Compupay (Paymaxx) | D/D | | (1,708.60) | |
| 03/15/2005 | | E | Compupay (Paymaxx) | P/R Taxes | | (461.52) | |
| 03/31/2005 | | E | Compupay (Paymaxx) | P/R Fee | | (32.00) | |
| 03/31/2005 | | E | Compupay (Paymaxx) | D/D | | (1,708.57) | |
| 03/31/2005 | | E | Compupay (Paymaxx) | P/R Taxes | | (461.60) | |
| 04/15/2005 | | E | Compupay (Paymaxx) | P/R Fee | | (32.00) | |
| 04/15/2005 | | E | Compupay (Paymaxx) | D/D | | (1,708.58) | |
| 04/15/2005 | | E | Compupay (Paymaxx) | P/R Taxes | | (461.58) | |
| 04/29/2005 | | E | Compupay (Paymaxx) | P/R Fee | | (32.00) | |
| 04/29/2005 | | E | Compupay (Paymaxx) | D/D | | (1,708.59) | |
| 04/29/2005 | | E | Compupay (Paymaxx) | P/R Taxes | | (461.54) | |
| 05/13/2005 | | E | Compupay (Paymaxx) | P/R Fee | | (33.00) | |
| 05/13/2005 | | E | Compupay (Paymaxx) | D/D | | (1,708.59) | |
| 05/13/2005 | | E | Compupay (Paymaxx) | P/R Taxes | | (650.72) | |
| 05/13/2005 | 50098 | E | Shalonda Magness | Manual Ck | | (496.15) | |
| 05/31/2005 | | E | Compupay (Paymaxx) | P/R Fee | | (40.70) | |
| 05/31/2005 | | E | Compupay (Paymaxx) | D/D | | (2,204.72) | |
| 05/31/2005 | | E | Compupay (Paymaxx) | P/R Taxes | | (650.76) | |
| 06/15/2005 | | E | Compupay (Paymaxx) | P/R Fee | | (33.00) | |
| 06/15/2005 | | E | Compupay (Paymaxx) | D/D | | (2,028.52) | |
| 06/15/2005 | | E | Compupay (Paymaxx) | P/R Taxes | | (575.66) | |
| 06/30/2005 | | E | Compupay (Paymaxx) | P/R Fee | | (33.00) | |
| 06/30/2005 | | E | Compupay (Paymaxx) | D/D | | (2,028.53) | |
| 07/15/2005 | | E | Compupay (Paymaxx) | P/R Taxes | | (567.65) | |
| 07/15/2005 | | E | Compupay (Paymaxx) | P/R Fee | | (33.00) | |
| 07/15/2005 | | E | Compupay (Paymaxx) | D/D | | (2,028.53) | |
| 07/15/2005 | | E | Compupay (Paymaxx) | P/R Taxes | | (565.66) | |
| 07/25/2005 | 11624 | E | Shalonda Magness | | Expenses thru 7/20/05 | (32.54) | |
| 07/29/2005 | | E | Compupay (Paymaxx) | P/R Fee | | (33.00) | |
| 07/29/2005 | | E | Compupay (Paymaxx) | D/D | | (2,028.52) | |
| 07/29/2005 | | E | Compupay (Paymaxx) | P/R Taxes | | (565.70) | |
| 08/15/2005 | | E | Compupay (Paymaxx) | P/R Fee | | (33.00) | |
| 08/15/2005 | | E | Compupay (Paymaxx) | D/D | | (2,028.53) | |
| 08/15/2005 | | E | Compupay (Paymaxx) | P/R Taxes | | (565.65) | |
| 08/31/2005 | | E | Compupay (Paymaxx) | P/R Fee | | (40.75) | |
| 08/31/2005 | | E | Compupay (Paymaxx) | D/D | | (2,028.53) | |
| 09/15/2005 | | E | Compupay (Paymaxx) | P/R Taxes | | (566.66) | |
| 09/15/2005 | | E | Compupay (Paymaxx) | P/R Fee | | (33.00) | |
| 09/15/2005 | | E | Compupay (Paymaxx) | D/D | | (2,028.54) | |
| 09/30/2005 | | E | Compupay (Paymaxx) | P/R Taxes | | (560.62) | |
| 09/30/2005 | | E | Compupay (Paymaxx) | P/R Fee | | (33.00) | |
| 09/30/2005 | | E | Compupay (Paymaxx) | D/D | | (2,028.90) | |
| 10/14/2005 | | E | Compupay (Paymaxx) | P/R Taxes | | (548.38) | |
| 10/14/2005 | | E | Compupay (Paymaxx) | P/R Fee | | (33.00) | |
| 10/14/2005 | | E | Compupay (Paymaxx) | D/D | | (2,028.53) | |
| 10/14/2005 | | E | Compupay (Paymaxx) | P/R Taxes | | (548.32) | |

EXHIBIT I

# CHICAGOLAND BARBEQUE INC
## PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Sort | Payee | Description | Amount | Total |
|---|---|---|---|---|---|---|
| 10/31/2005 | | E | Compupay (Paymaxx) | P/R Fee | (40.91) | |
| 10/31/2005 | | E | Compupay (Paymaxx) | D/D | (2,028.52) | |
| 10/31/2005 | | E | Compupay (Paymaxx) | P/R Taxes | (544.33) | |
| 11/11/2005 | 11723 | E | Ron Hemmelgarn | Expenses thru 10/24/05 | (535.67) | |
| 11/15/2005 | | E | Compupay (Paymaxx) | P/R Fee | (33.00) | |
| 11/15/2005 | | E | Compupay (Paymaxx) | D/D | (2,028.53) | |
| 11/15/2005 | | E | Compupay (Paymaxx) | Payroll Taxes | (543.32) | |
| 11/30/2005 | | E | Compupay (Paymaxx) | P/R Fee | (33.00) | |
| 11/30/2005 | | E | Compupay (Paymaxx) | D/D | (2,028.50) | |
| 11/30/2005 | | E | Compupay (Paymaxx) | P/R Taxes | (543.38) | |
| 12/15/2005 | | E | Compupay (Paymaxx) | P/R Fee | (33.00) | |
| 12/15/2005 | | E | Compupay (Paymaxx) | D/D | (2,028.53) | |
| 12/15/2005 | | E | Compupay (Paymaxx) | P/R Taxes | (543.31) | |
| 12/20/2005 | | E | Compupay (Paymaxx) | Tax Filing Fee | (35.00) | |
| 12/30/2005 | | E | Compupay (Paymaxx) | P/R Fee | (33.00) | |
| 12/30/2005 | | E | Compupay (Paymaxx) | D/D | (2,028.53) | |
| 12/30/2005 | | E | Compupay (Paymaxx) | P/R Taxes | (543.32) | (60,154.68) |
| 01/07/2005 | 11448 | EI | Elizabeth Ryles - | Expenses thru 12/20/04 | (30.00) | |
| 02/18/2005 | 11479 | EI | Michael Dice | Expenses For Jan 2005 | (153.62) | |
| 03/18/2005 | 11497 | EI | Michael Dice | Expenses For Feb 2005 | (51.97) | |
| 03/18/2005 | 11498 | EI | Michael Dice | Car Repair Expense | (250.41) | |
| 04/18/2005 | 11520 | EI | Michael Dice | Expenses For March 2005 | (63.32) | |
| 05/09/2005 | 11541 | EI | Michael Dice | Expenses For March 2005 | (238.28) | |
| 06/29/2005 | 11596 | EI | Michael Dice | Expenses For May 2005 | (210.78) | |
| 07/08/2005 | 1556 | EI | Elizabeth Ryles- | | 116.12 | |
| 07/18/2005 | 11618 | EI | Michael Dice | Expenses For June 2005 | (155.67) | |
| 09/09/2005 | 11672 | EI | Michael Dice | Expenses For July 2005 | (184.43) | |
| 09/19/2005 | 11679 | EI | Michael Dice | Expenses For Aug 2005 | (174.71) | |
| 10/06/2005 | | EI | Elizabeth Ryles | Deposit | 44.22 | |
| 10/07/2005 | 11689 | EI | Michael Dice | | (600.00) | |
| 10/24/2005 | | EI | Michael Dice | Expenses for Sept. | (124.72) | |
| 11/08/2005 | 11706 | EI | Elizabeth Ryles | 1 Pkd Pk | 22.10 | |
| 11/11/2005 | 11722 | EI | Michael Dice | Expenses for Oct. | (195.21) | |
| 11/22/2005 | 11732 | EI | Michael Dice | Car Allowance for Oct. 2005 | (150.00) | |
| 11/22/2005 | 11733 | EI | Michael Dice | Car Allowance for Nov. | (150.00) | |
| 12/12/2005 | 11746 | EI | Michael Dice | Expenses for Nov. | (121.84) | (3,215.84) |
| 01/19/2005 | | INS | Ohio National Life | | (188.58) | |
| 01/31/2005 | | INS | Ohio National Life | Payment for Policy #: ▮▮▮▮ (Jan) | (56.05) | |
| 02/16/2005 | | INS | Ohio National Life | Payment for Policy #: ▮▮▮▮ (Jan) | (188.58) | |
| 02/28/2005 | | INS | Ohio National Life | Payment for Policy #: ▮▮▮▮ (Jan) | (56.05) | |
| 03/16/2005 | | INS | Ohio National Life | | (188.58) | |
| 03/31/2005 | | INS | Ohio National Life | Payment for Policy #: ▮▮▮▮ (Jan) | (56.05) | |
| 04/18/2005 | | INS | Ohio National Life | | (188.58) | |
| 04/30/2005 | | INS | Ohio National Life | Payment for Policy #: ▮▮▮▮ (Jan) | (56.05) | |
| 05/18/2005 | | INS | Ohio National Life | | (188.58) | |
| 05/31/2005 | | INS | Ohio National Life | Payment for Policy #: ▮▮▮▮ (Jan) | (56.05) | |
| 06/16/2005 | | INS | Ohio National Life | | (188.58) | |
| 06/29/2005 | | INS | Ohio National Life | Payment for Policy #: ▮▮▮▮ | (56.05) | |
| 07/18/2005 | | INS | Ohio National Life | | (188.58) | |
| 07/31/2005 | | INS | Ohio National Life | Payment for Policy #: ▮▮▮▮ | (56.05) | |

EXHIBIT I

50

## CHICAGOLAND BARBEQUE INC
## PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Payee | Sort | Description | Amount | Total |
|---|---|---|---|---|---|---|
| 08/18/2005 | | Ohio National Life | INS | Payment for Policy #: ⬛⬛⬛ (Jan) | (188.58) | |
| 08/31/2005 | | Ohio National Life | INS | | (56.05) | |
| 09/18/2005 | | Ohio National Life | INS | Payment for Policy #: ⬛⬛⬛ (Jan) | (188.58) | |
| 09/30/2005 | | Ohio National Life | INS | | (56.05) | |
| 10/18/2005 | | Ohio National Life | INS | Payment for Policy #: ⬛⬛⬛ (Jan) | (188.58) | |
| 10/31/2005 | | Ohio National Life | INS | | (56.05) | |
| 11/18/2005 | | Ohio National Life | INS | Payment for Policy #: ⬛⬛⬛ (Jan) | (188.58) | |
| 11/30/2005 | | Ohio National Life | INS | | (56.05) | |
| 12/18/2005 | | Ohio National Life | INS | Payment for Policy #: ⬛⬛⬛ (Jan) | (188.58) | |
| 12/31/2005 | | Ohio National Life | INS | | (56.05) | (2,935.56) |
| 01/15/2005 | 11464 | Russel G. Winick & Associates, P.C. | P | Inv.#: 14861 | (893.00) | |
| 01/17/2005 | 11453 | Taylor, Checks & Associates, Ltd. | P | Fee for 1099 | (31.50) | |
| 02/18/2005 | 11480 | Russel G. Winick & Associates, P.C. | P | Inv.#: 14934 | (836.00) | |
| 04/01/2005 | 11506 | Russel G. Winick & Associates, P.C. | P | Inv.#: 15003 | (115.00) | |
| 04/25/2005 | 11527 | Russel G. Winick & Associates, P.C. | P | Inv.#: 15064 | (55.05) | |
| 05/27/2005 | 11566 | Russel G. Winick & Associates, P.C. | P | Inv.#: 15114 | (506.50) | |
| 05/31/2005 | 11570 | S.J. Kerr, Ltd. | P | Advance Payment (2004) | (1,000.00) | |
| 06/15/2005 | 11588 | Taylor, Checks & Associates, Ltd. | P | | (500.00) | |
| 06/29/2005 | 11598 | Russel G. Winick & Associates, P.C. | P | Inv.#: 14 | (640.26) | |
| 07/12/2005 | 11611 | Russel G. Winick & Associates, P.C. | P | Inv.#: 15166 | (250.00) | |
| 08/16/2005 | 11646 | Russel G. Winick & Associates, P.C. | P | Inv.#: 15166 | (522.94) | |
| 08/22/2005 | 11655 | Russel G. Winick & Associates, P.C. | P | Inv.#: 15222 (Partial Pmt.) | (250.00) | |
| 08/30/2005 | 11663 | Russel G. Winick & Associates, P.C. | P | Inv.#: 15222 | (194.00) | |
| 09/02/2005 | 11668 | Russel G. Winick & Associates, P.C. | P | Inv.#: 15288 | (250.00) | |
| 09/23/2005 | 11682 | Russel G. Winick & Associates, P.C. | P | Inv.#: 15288 (Partial Pmt.) | (250.00) | |
| 09/30/2005 | 11688 | Russel G. Winick & Associates, P.C. | P | Inv.#: 15288 | (250.00) | |
| 10/10/2005 | 11694 | Russel G. Winick & Associates, P.C. | P | Inv.#: 15288 (Partial Pmt.) | (280.76) | |
| 10/24/2005 | 11707 | Russel G. Winick & Associates, P.C. | P | Inv.#: 15345 (Partial Pmt.) | (500.00) | |
| 10/28/2005 | 11711 | Russel G. Winick & Associates, P.C. | P | Inv.#: 15345 (Partial Pmt.) | (250.00) | |
| 11/08/2005 | 11716 | Russel G. Winick & Associates, P.C. | P | Inv.#: 15345 | (250.62) | |
| 11/11/2005 | 11724 | Russel G. Winick & Associates, P.C. | P | Inv.#: 15416 | (250.00) | |
| 12/05/2005 | 11739 | Russel G. Winick & Associates, P.C. | P | Inv.#: 15416 (Partial Pmt) | (250.00) | |
| 12/09/2005 | 11740 | S.J. Kerr, Ltd. | P | 2004 Financial Statements | (1,000.00) | |
| 12/12/2005 | 11750 | Russel G. Winick & Associates, P.C. | P | Inv.#: 15416 (Partial Pmt.) | (250.00) | |
| 12/16/2005 | 11766 | Russel G. Winick & Associates, P.C. | P | Inv.#: 15416 | (250.00) | (10,020.58) |
| 01/11/2006 | 030546 | Lipari Distributors | R | ⬛⬛⬛ | 1,857.00 | |
| 02/02/2005 | 1779431 | US Food Service-Glen Dale Hgts | R | ⬛⬛⬛ | 3,014.61 | |
| 02/08/2005 | 03708578 | US Food Service-Detroit | R | ⬛⬛⬛ | 4,923.69 | |
| 02/18/2005 | 032691 | Lipari Distributors | R | ⬛⬛⬛ | 6,096.19 | |
| 03/02/2005 | 20814 | Park Shore Market | R | ⬛⬛⬛ | 178.67 | |
| 03/18/2005 | 1835887 | US Food Service-Glen Dale Hgts | R | ⬛⬛⬛ | 1,861.17 | |
| 04/15/2005 | 1869971 | US Food Service-Glen Dale Hgts | R | ⬛⬛⬛ | 3,027.05 | |
| 05/04/2005 | 037470 | Lipari Distributors | R | ⬛⬛⬛ | 505.48 | |
| 05/12/2005 | 037946 | Lipari Distributors | R | ⬛⬛⬛ | 3,745.98 | |
| 05/18/2005 | 21134 | Park Shore Market | R | ⬛⬛⬛ & ⬛ | 177.95 | |
| 05/20/2005 | 1914729 | US Food Service-Glen Dale Hgts | R | ⬛⬛⬛ | 2,243.86 | |
| 06/08/2005 | 209866617 | Brunwick Zone | R | ⬛⬛⬛ | 453.00 | |
| 06/13/2005 | 040179 | Lipari Distributors | R | ⬛⬛⬛ | 4,943.70 | |
| 06/13/2005 | 005423 | The Original Sandwich Factory | R | ⬛⬛⬛ | 603.75 | |
| 06/17/2005 | 704811 | Spartan Stores, Inc. | R | ⬛⬛⬛ | 3,890.00 | |

EXHIBIT I

**CHICAGOLAND BARBEQUE INC**
**PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER**

| Date | Transaction # | Sort | Payee | Description | Amount | Total |
|---|---|---|---|---|---|---|
| 06/23/2005 | 1960361 | R | US Food Service-Glen Dale Hgts | 329 & 331 | 8,705.37 | |
| 07/06/2005 | 03846088 | R | US Food Service-Detroit | ▉▉▉ | 4,563.78 | |
| 07/11/2005 | 21372 | R | Park Shore Market | | 142.36 | |
| 07/11/2005 | 709581 | R | Spartan Stores, Inc. | | 3,465.00 | |
| 07/22/2005 | 042924 | R | Lipari Distributors | | 5,179.15 | |
| 07/28/2005 | 2023123 | R | US Food Service-Glen Dale Hgts | Inv.#: 74339 & 74344 | 5,018.70 | |
| 08/02/2005 | 2010238 | R | US Food Service-Glen Dale Hgts | | 3,063.06 | |
| 08/04/2005 | 30709 | R | Rockford Speedway | | 182.16 | |
| 08/23/2005 | 721131 | R | Spartan Stores, Inc. | | 1,607.50 | |
| 08/31/2005 | 2053171 | R | US Food Service-Glen Dale Hgts | Inv.#: 74351 | 6,759.00 | |
| 09/28/2005 | | R | Spartan Stores, Inc. | | (945.00) | |
| 10/10/2005 | 11690 | R | Norman Foods | | (2,031.90) | |
| 10/14/2005 | 048817 | R | Lipari Distributors | Pmt. Inv. for 6/18/02-10/15/02 | 5,342.05 | |
| 10/17/2005 | 733288 | R | Spartan Stores, Inc. | Inv.#: 74359 | 7,177.50 | |
| 10/17/2005 | 43715 | R | US Food Service-Detroit | Inv.#: 74358 | 3,385.76 | |
| 11/04/2005 | | R | Leslie D. Nwoke | 1 Case of Pld Pk | 25.00 | |
| 11/08/2005 | | R | Stella Webb | 2 Pld Pk | 70.00 | |
| 11/08/2005 | 2148399 | R | Spartan Stores, Inc. | Inv.#: 74362 | 4,825.00 | |
| 11/08/2005 | 2148399 | R | US Food Service-Glen Dale Hgts | | 3,085.00 | |
| 11/08/2005 | | R | US Food Service-Glen Dale Hgts | | 2,871.22 | |
| 11/18/2005 | 740177 | R | Spartan Stores, Inc. | Inv.#: 74363 | 7,622.00 | |
| 12/02/2005 | 91705 | R | US Food Service-Glen Dale Hgts | Inv.#: 74350 | 105.59 | |
| 12/06/2005 | 98260 | R | US Food Service-Glen Dale Hgts | Inv.#: 74367 | 3,505.80 | |
| 12/15/2005 | | R | | 1 Cs of Pld Pk (Marvin Meyer) | 35.00 | |
| 12/16/2005 | 11763 | R | L&L Foods, Inc. | Inv.#: 320619 | (41.90) | |
| 12/16/2005 | 746285 | R | Spartan Stores, Inc. | Inv.#: 74370 | 1,775.00 | |
| 12/23/2005 | 053486 | R | Lipari Distributors | Inv.#: 74365 | 5,457.00 | |
| 01/12/2005 | | RP | Chicagoland Foods Military Consortium | Deposit | 5,000.00 | 118,471.30 |
| 01/19/2005 | | RP | Chicagoland Foods Military Consortium | Deposit | 500.00 | |
| 01/21/2005 | | RP | Chicagoland Foods Military Consortium | Deposit | 1,000.00 | |
| 01/26/2005 | | RP | Chicagoland Foods Military Consortium | Deposit | 1,000.00 | |
| 02/01/2005 | | RP | Chicagoland Foods Military Consortium | Deposit | 7,000.00 | |
| 03/08/2005 | | RP | Chicagoland Foods Military Consortium | Deposit | 10,000.00 | |
| 03/21/2005 | | RP | Chicagoland Foods Military Consortium | Deposit | 5,000.00 | |
| 03/30/2005 | | RP | Chicagoland Foods Military Consortium | Deposit | 500.00 | |
| 04/06/2005 | | RP | Chicagoland Foods Military Consortium | Deposit | 5,000.00 | |
| 04/12/2005 | | RP | Chicagoland Foods Military Consortium | Deposit | 2,000.00 | |
| 04/13/2005 | | RP | Chicagoland Foods Military Consortium | Deposit | 6,000.00 | |
| 04/20/2005 | | RP | Chicagoland Foods Military Consortium | Deposit | 5,000.00 | |
| 04/25/2005 | | RP | Chicagoland Foods Military Consortium | Deposit | 2,000.00 | |
| 04/29/2005 | | RP | Chicagoland Foods Military Consortium | Deposit | 4,000.00 | |
| 05/04/2005 | | RP | Chicagoland Foods Military Consortium | Deposit | 3,000.00 | |
| 05/05/2005 | | RP | Chicagoland Foods Military Consortium | Deposit | 2,000.00 | |
| 05/16/2005 | | RP | Chicagoland Foods Military Consortium | Deposit | 5,000.00 | |
| 05/20/2005 | | RP | Chicagoland Foods Military Consortium | Deposit | 2,000.00 | |
| 05/27/2005 | | RP | Chicagoland Foods Military Consortium | Deposit | 1,000.00 | |
| 06/02/2005 | | RP | Chicagoland Foods Military Consortium | Deposit | 7,000.00 | |
| 06/09/2005 | | RP | Chicagoland Foods Military Consortium | Deposit | 7,000.00 | |
| 06/20/2005 | | RP | Chicagoland Foods Military Consortium | Deposit | 6,000.00 | |
| 06/30/2005 | | RP | Chicagoland Foods Military Consortium | Deposited to CBI Should have been CFMC | 2,650.00 | |

**EXHIBIT I**

CHICAGOLAND BARBEQUE INC
PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Sort | Payee | Description | Amount | Total |
|---|---|---|---|---|---|---|
| 07/14/2005 | 1074 | RP | DKL Enterprises, Inc. | ▮ | 32,171.91 | |
| 07/15/2005 | 1614 | RP | Chicagoland Foods Military Consortium | Transfer | (19,000.00) | |
| 08/30/2005 | | RP | Chicagoland Foods Military Consortium | Deposit | 5,000.00 | |
| 08/31/2005 | | RP | Chicagoland Foods Military Consortium | Transfer | 3,000.00 | |
| 09/08/2005 | | RP | Chicagoland Foods Military Consortium | Transfer | 5,000.00 | |
| 09/16/2005 | | RP | Chicagoland Foods Military Consortium | Transfer | 2,000.00 | |
| 09/22/2005 | | RP | Chicagoland Foods Military Consortium | Transfer | 2,000.00 | |
| 09/28/2005 | | RP | Chicagoland Foods Military Consortium | Deposit | 1,000.00 | |
| 09/30/2005 | | RP | Chicagoland Foods Military Consortium | Transfer | 3,000.00 | |
| 10/07/2005 | | RP | Chicagoland Foods Military Consortium | Deposit | 10,000.00 | |
| 10/14/2005 | | RP | Chicagoland Foods Military Consortium | Transfer | 2,000.00 | |
| 12/08/2005 | | RP | DKL Enterprises, Inc. | Inv.#: 74369 | 3,176.46 | |
| 12/16/2005 | | RP | Chicagoland Foods Military Consortium | Transfer | 2,000.00 | |
| 12/20/2005 | | RP | Chicagoland Foods Military Consortium | Transfer | 2,000.00 | |
| 12/27/2005 | 1226 | RP | DKL Enterprises, Inc. | Inv.#: 74364 & 74365 | 5,370.00 | 148,368.37 |
| 11/21/2005 | 1243 | T | IL Secretary of State | Annual report franchise tax & filing fees Corp File #: ▮ | (428.31) | (428.31) |
| 11/21/2005 | 223888 | V | Abbott Sysco | ▮ | 2,096.15 | |
| 01/14/2005 | 11451 | V | Kwikwan Trucking | Inv.#:122204-400 | (154.34) | |
| 01/15/2005 | 11463 | V | Acosta-MI | Brokerage for 11/16-12/15 | (360.02) | |
| 01/21/2005 | 11455 | V | Ashland Cold Storage | Inv.#: 95637 | (77.80) | |
| 01/21/2005 | 11456 | V | Birchwood Foods | Inv.#: 129399 | (3,500.00) | |
| 01/21/2005 | 11458 | V | JBI Sales & Associates | Brokerage for 10/16-11/15 | (174.21) | |
| 01/31/2005 | | V | Merchant Service Fee | Credit Card /Web Fee | (34.95) | |
| 02/01/2005 | 11461 | V | Advanta Business Cards | Acct.#: | (175.00) | |
| 02/04/2005 | 11467 | V | Advanta Business Cards | Acct.#: | (250.00) | |
| 02/04/2005 | 11468 | V | Drake Packaging Solutions | Inv.#: 3902 | (628.20) | |
| 02/04/2005 | 11472 | V | Litehouse Foods | Inv.#: 520335 | (1,274.72) | |
| 02/15/2005 | 11475 | V | Advanta Business Cards | Acct.#: | (250.00) | |
| 02/18/2005 | 11476 | V | JBI Sales & Associates | Brokerage for 11/16-12/15 | (122.33) | |
| 02/18/2005 | 11477 | V | Advanta Business Cards | Brokerage for 12/16-1/15 | (120.78) | |
| 02/18/2005 | 11481 | V | JBI Sales & Associates | Inv.#: 02359 | (26.00) | |
| 03/01/2005 | 11483 | V | Next Generation Logistics, Inc. | Inv.#: 5946253 & ▮ | (382.85) | |
| 03/04/2005 | 11484 | V | Curly's Foods Inc. | Inv.#: 5946253 | (3,867.50) | |
| 03/11/2005 | 11486 | V | Advanta Business Cards | Acct.#: | (250.00) | |
| 03/11/2005 | 11489 | V | Drake Packaging Solutions | Inv.#: 3863 | (1,107.88) | |
| 03/14/2005 | 226283 | V | Abbott Sysco | | 1,822.27 | |
| 03/14/2005 | | V | Merchant Service Fee | Credit Card /Web Fee | (39.95) | |
| 03/14/2005 | 11492 | V | VC's Food Center and Pharmacy | Inv.#: 242135 | (500.00) | |
| 03/18/2005 | 11493 | V | Acosta | Brokerage for 1/16-2/15 | (950.00) | |
| 03/18/2005 | 11494 | V | Acosta-MI | Acct.#: | (304.81) | |
| 03/25/2005 | 11495 | V | Advanta Business Cards | Acct.#: | (250.00) | |
| 03/25/2005 | 11499 | V | Advanta Business Cards | Inv.#: 07706 | (250.00) | |
| 04/01/2005 | 11500 | V | Ashland Cold Storage | Acct.#: | (9.00) | |
| 04/04/2005 | 11503 | V | Advanta Business Cards | Credit Card /Web Fee | (250.00) | |
| 04/04/2005 | | V | Merchant Service Fee | Acct.#: | (39.95) | |
| 04/08/2005 | 11515 | V | Advanta Business Cards | Inv.#: 5972732 | (250.00) | |
| 04/08/2005 | 11508 | V | Curly's Foods Inc. | Inv.#: 525619 | (2,077.40) | |
| 04/08/2005 | 11510 | V | Litehouse Foods | Inv.#: 1803 | (2,431.32) | |
| 04/08/2005 | 11509 | V | Premium Protein Products-Denison | | (2,592.91) | |

EXHIBIT 1

## CHICAGOLAND BARBEQUE INC
### PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Sort | Payee | Description | Amount | Total |
|---|---|---|---|---|---|---|
| 04/08/2005 | 11507 | V | VG's Food Center and Pharmacy | Ron Hemmelgarn | (250.00) | |
| 04/15/2005 | 11514 | V | Graphics Art Consulting | Acct.#: | (1,250.00) | |
| 04/18/2005 | 11511 | V | Advanta Business Cards | Inv.#: 134862 | (250.00) | |
| 04/18/2005 | 11516 | V | Birchwood Foods | | (3,700.00) | |
| 04/18/2005 | 11521 | V | JBJ Sales & Associates | Brokerage for 3/16-3/15 | (117.69) | |
| 04/25/2005 | 11522 | V | Advanta Business Cards | Acct.#: | (250.00) | |
| 04/25/2005 | 11523 | V | Curfy's Foods Inc. | Inv.#: 5977205 | (3,315.00) | |
| 04/25/2005 | 11525 | V | Next Generation Logistics, Inc. | Inv.#: CLF162608 | (225.45) | |
| 04/26/2005 | 227722 | V | Abbott Sysco | | 2,228.40 | |
| 04/29/2005 | 11530 | V | Advanta Business Cards | Acct.#: | (250.00) | |
| 04/29/2005 | 11529 | V | Graphics Art Consulting | Ron Hemmelgarn | (1,250.00) | |
| 04/29/2005 | | V | Merchant Service Fee | Credit Card /Web Fee | (39.95) | |
| 05/09/2005 | 11535 | V | Advanta Business Cards | Acct.#: | (250.00) | |
| 05/09/2005 | 11538 | V | FFE Transportation Services | Inv.#: 2197754 | (317.67) | |
| 05/09/2005 | 11543 | V | IL School Food Service Assciation | 55th Annual Conference (Exhibit Space) 1/2 Booth | (395.00) | |
| 05/09/2005 | 11539 | V | Kwikwen Trucking | Inv.#: 050222-23 | (151.73) | |
| 05/09/2005 | 11542 | V | Next Generation Logistics, Inc. | Inv.#: CLF162847 | (148.00) | |
| 05/13/2005 | 11547 | V | Graphics Art Consulting | Ron Hemmelgarn | (625.00) | |
| 05/16/2005 | 11548 | V | FFE Transportation Services | Inv.#: 2207064 | (357.65) | |
| 05/16/2005 | 11550 | V | JBJ Sales & Associates | Brokerage for 4/16-4/15 | (111.42) | |
| 05/20/2005 | 11552 | V | Acosta-MI | Brokerage for 3/16-4/15 | (290.93) | |
| 05/20/2005 | 11553 | V | Advanta Business Cards | Acct.#: | (250.00) | |
| 05/20/2005 | 11557 | V | Ashland Cold Storage | Inv.#: 17549 | (64.00) | |
| 05/20/2005 | 11554 | V | IL School Food Service Assriation | Tues., June 14th - Buffet | (34.00) | |
| 05/20/2005 | 11556 | V | Premium Protien Products-Denison | Inv.#: 1912 | (2,568.72) | |
| 05/24/2005 | 11546 | V | IL School Food Service Assrition | Additional Badge Request (Shalonda Magness) | (45.00) | |
| 05/27/2005 | | V | Advanta Business Cards | Deposit | 14,051.00 | |
| 05/27/2005 | 11559 | V | Birchwood Foods | Inv.#: 137401 | (3,155.00) | |
| 05/27/2005 | 11560 | V | Curfy's Foods Inc. | Inv.#: 5312654 | (10,895.30) | |
| 05/27/2005 | 11561 | V | Kwikwen Trucking | Inv.#: 050506-39 | (89.67) | |
| 05/27/2005 | 11562 | V | Liebhose Foods | Inv.#: 527006 | (2,505.00) | |
| 05/27/2005 | 11568 | V | VG's Food Center and Pharmacy | | (250.00) | |
| 05/27/2005 | 11567 | V | Windy City Thunder Bolts | 1st Installment per Contract | (250.00) | |
| 05/31/2005 | 11569 | V | Graphics Art Consulting | Ron Hemmelgarn | (625.00) | |
| 06/03/2005 | 11571 | V | Advanta Business Cards | Acct.#: | (250.00) | |
| 06/03/2005 | 11572 | V | Birchwood Foods | Inv.#: 137601 | (4,375.00) | |
| 06/03/2005 | 11575 | V | Kwikwen Trucking | Inv.#: 050317-06 | (163.40) | |
| 06/03/2005 | | V | Merchant Service Fee | Credit Card /Web Fee | (39.95) | |
| 06/14/2005 | 11583 | V | Advanta Business Cards | Acct.#: | (250.00) | |
| 06/14/2005 | 11584 | V | Birchwood Foods | Inv.#: 138117 | (4,550.00) | |
| 06/14/2005 | 11585 | V | FFE Transportation Services | Inv.#: 2234292 | (395.36) | |
| 06/15/2005 | 11587 | V | Graphics Art Consulting | Ron Hemmelgarn | (625.00) | |
| 06/20/2005 | 11590 | V | Advanta Business Cards | Acct.#: | (250.00) | |
| 06/20/2005 | 11591 | V | Ashland Cold Storage | Inv.#: 22569 | (75.00) | |
| 06/20/2005 | 11592 | V | FFE Transportation Services | Inv.#: 2241876 | (396.19) | |
| 06/29/2005 | 11594 | V | Advanta Business Cards | Acct.#: | (1,000.00) | |
| 06/29/2005 | 11597 | V | Next Generation Logistics, Inc. | Inv.#: CLF174512 | (266.50) | |
| 06/29/2005 | 11599 | V | Windy City Thunder Bolts | 2nd Installment per Contract | (230.00) | |
| 06/30/2005 | 11600 | V | Graphics Art Consulting | Ron Hemmelgarn | (625.00) | |
| 06/30/2005 | | V | Merchant Service Fee | Credit Card /Web Fee | (39.95) | |

EXHIBIT I

# CHICAGOLAND BARBEQUE INC
## PRIVATE BANK - OPERATING ACCOUNT PER GENERAL LEDGER

| Date | Transaction # | Sort | Payee | Description | Amount | Total |
|------|--------------|------|-------|-------------|--------|-------|
| 07/08/2005 | 230261 | ✓ | Abbott Sysco | Acct.#: | 2,542.15 | |
| 07/12/2005 | 11604 | ✓ | Advanta Business Cards | Acct.#: | (1,000.00) | |
| 07/12/2005 | 11601 | ✓ | Curly's Foods Inc. | Inv.#: 5335714 | (9,878.70) | |
| 07/12/2005 | 11602 | ✓ | FFE Transportation Services | Inv.#: 2254812 | (499.60) | |
| 07/12/2005 | 11609 | ✓ | Mullins Food Products | Inv.#: 90053128 | (4,184.90) | |
| 07/12/2005 | 11612 | ✓ | Next Generation Logistics, Inc. | Inv.#: CLF170289 | (263.74) | |
| 07/15/2005 | 11613 | ✓ | Graphics Art Consulting | Ron Hemmelgarn | (625.00) | |
| 07/18/2005 | 11615 | ✓ | Acosta-MI | Brokerage for 4/16-6/15 | (253.49) | |
| 07/18/2005 | 11616 | ✓ | Ashland Cold Storage | Inv.#: 27767 | (209.00) | |
| 07/18/2005 | 11617 | ✓ | JBI Sales & Associates | Brokerage for 5/16-6/15 | (148.64) | |
| 07/18/2005 | 11619 | ✓ | Next Generation Logistics, Inc. | Inv.#: CLF176159 | (322.00) | |
| 07/18/2005 | 11520 | ✓ | Premium Proslen Products-Denison | Inv.#: 2041 | (4,717.40) | |
| 07/25/2005 | 230949 | ✓ | Abbot Sysco | Acct.#: | 3,511.60 | |
| 07/25/2005 | 11621 | ✓ | Advanta Business Cards | Acct.#: | (1,000.00) | |
| 07/25/2005 | 11622 | ✓ | IL School Nutrition Association | Prorated Fee (Extended Renewal thru 9/1/05) | (25.00) | |
| 07/25/2005 | 11623 | ✓ | Next Generation Logistics, Inc. | Inv.#: | (359.54) | |
| 07/29/2005 | 11625 | ✓ | Graphics Art Consulting | Ron Hemmelgarn | (625.00) | |
| 07/29/2005 | | | Merchant Service Fee | Credit Card /Web Fee | (39.95) | |
| 08/03/2005 | 11634 | | Acosta-MI | August Spartan Food Show | (175.00) | |
| 08/03/2005 | 11635 | ✓ | Advanta Business Cards | Acct.#: | (1,000.00) | |
| 08/03/2005 | 11631 | ✓ | Hertz | Agreement #: | (151.17) | |
| 08/03/2005 | 11630 | ✓ | Home Market Foods- | Inv.#: 3520 (Partial Pmt.) | (500.00) | |
| 08/03/2005 | 11629 | ✓ | Next Generation Logistics, Inc. | Inv.#'s: CLF78331, CLF178954 & CLF180964 | (844.91) | |
| 08/15/2005 | 11637 | ✓ | Graphics Art Consulting | Ron Hemmelgarn | (625.00) | |
| 08/16/2005 | 11638 | ✓ | Acosta-MI | Brokerage for 6/16/05-7/15/05 | (238.80) | |
| 08/16/2005 | 11639 | ✓ | Advanta Business Cards | Acct.#: | (500.00) | |
| 08/16/2005 | 11641 | ✓ | Drake Packaging Solutions | Inv.#: 3999 | (358.29) | |
| 08/16/2005 | 11642 | ✓ | FFE Transportation Services | Inv.#: 2293099 | (804.92) | |
| 08/16/2005 | 11645 | ✓ | Home Market Foods- | VOID: Inv.#: 3520 (CK was returned 9/8/05 as Undeliverable). Ck'd [1] | | |
| 08/16/2005 | 11643 | ✓ | JBI Sales & Associates | Brokerage for 6/16-7/15 | (185.86) | |
| 08/16/2005 | 11648 | ✓ | Windy City Thunder Bolts | 3rd Installment per Contract | (250.00) | |
| 08/22/2005 | 11649 | ✓ | Acosta-MI | Brokerage for 4/1/05-7/15/05 | (643.38) | |
| 08/22/2005 | 11650 | ✓ | Advanta Business Cards | Acct.#: | (250.00) | |
| 08/22/2005 | 11651 | ✓ | Ashland Cold Storage | Inv.#: 34057 | (31.00) | |
| 08/22/2005 | 11652 | ✓ | Birdhwood Foods | Inv.#: 142745 | (3,620.00) | |
| 08/22/2005 | 11654 | ✓ | Home Market Foods- | Inv.#: 3520 (Partial Pmt.) | (250.00) | |
| 08/22/2005 | 11653 | ✓ | Next Generation Logistics, Inc. | Inv.#'s:CLF183027 & CLF 185299 | (942.84) | |
| 08/29/2005 | 11656 | ✓ | Acosta-MI | Brokerage for 6/16/05-7/15/05 | (45.00) | |
| 08/30/2005 | 11657 | ✓ | Advanta Business Cards | Acct.#: | (250.00) | |
| 08/30/2005 | 11658 | ✓ | Curly's Foods Inc. | Inv.#: 5382250 | (4,420.00) | |
| 08/30/2005 | 11659 | ✓ | Drake Packaging Solutions | Inv.#: 4009 | (830.52) | |
| 08/30/2005 | 11660 | ✓ | FFE Transportation Services | Inv.#: 2317815 | (472.05) | |
| 08/30/2005 | 11662 | ✓ | Home Market Foods- | Inv.#: 3520 | (250.00) | |
| 08/31/2005 | 11664 | ✓ | Graphics Art Consulting | Ron Hemmelgarn | (625.00) | |
| 08/31/2005 | | | Merchant Service Fee | Credit Card /Web Fee | (39.95) | |
| 09/02/2005 | 11665 | ✓ | Advanta Business Cards | Acct.#: | (250.00) | |
| 09/02/2005 | 11666 | ✓ | Lifehouse Foods | Inv.#: 534474 | (1,000.00) | |
| 09/09/2005 | 11671 | ✓ | Lifehouse Foods | Inv.#: 534474 (Partial Pmt.) | (500.00) | |
| 09/15/2005 | 11673 | ✓ | Home Market Foods- | Inv.#: 3520 (Partial Pmt.) | (250.00) | |
| 09/15/2005 | 11674 | ✓ | Graphics Art Consulting | Ron Hemmelgarn | (625.00) | |

EXHIBIT I